UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Adam Lee, Kimberly Einiger, Howard Roscoe, and Anastasia Danilova, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Samsung Electronics America, Inc.,<br><br>Defendant. | Case No: 4:21-cv-01321<br><br>FIRST   AMENDED   CLASS   ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Adam Lee, Kimberly Einiger, Howard Roscoe, and Anastasia Danilova (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, bring this action for damages and equitable relief against Samsung Electronics America, Inc. ("Defendant" or "Samsung").

I.      **Nature of this Action**

1.      Plaintiffs bring this class action against Defendant for the harm it caused consumers in connection with its design, manufacture, advertising, sale and the performance of Samsung-branded kitchen appliances with a "black stainless steel" finish (the "Black Stainless Steel Appliances").

2.      Defendant heavily promotes its Black Stainless Steel Appliances as a premium kitchen product with a superior aesthetic.

3.      Defendant features the "black stainless steel" finish on approximately 30 of its

1

refrigerators,[1] 26 of its ovens,[2] 5 of its gas cooktops,[3] 2 of its electric cooktops,[4] 1 of its induction cooktops,[5] 5 of its range hoods,[6] 6 of its microwaves,[7] and 6 of its dishwashers.[8]

4.      Defendant sells the Black Stainless Steel Appliances with a "black stainless steel" finish that it advertises as a premium, durable, luxury finish, while concealing and omitting that the finish is a thin plastic coating—rather than a sturdy metal finish—and that the finish is prone to peel, chip, flake, discolor, and prematurely degrade through the ordinary use of the Black Stainless Steel Appliances.

5.      Notably, consumers do not complain about a peeling, chipping, flaking, discoloring, or prematurely degrading finish on Defendant's otherwise-identical appliances without the "black stainless steel" finish, such as the "stainless steel," "black," or "white" finishes.

---

[1]      *See*                              https://www.samsung.com/us/home-appliances/refrigerators/all-refrigerators/?shop=Buy+Online&color=Fingerprint+Resistant+Black+Stainless+Steel      (last visited July 14, 2021).

[2]      *See*                              https://www.samsung.com/us/home-appliances/ranges/all-ranges/?shop=Buy+Online&color=Fingerprint+Resistant+Black+Stainless+Steel      (last visited July 14, 2021).

[3]      *See*      https://www.samsung.com/us/home-appliances/cooktops-and-hoods/gas-cooktops/ (last visited July 14, 2021).

[4]      *See*              https://www.samsung.com/us/home-appliances/cooktops-and-hoods/electric-cooktops/ (last visited July 14, 2021).

[5]      *See*              https://www.samsung.com/us/home-appliances/cooktops-and-hoods/induction-cooktops/ (last visited July 14, 2021).

[6]      *See*      https://www.samsung.com/us/home-appliances/cooktops-and-hoods/hoods/      (last visited July 14, 2021).

[7]      *See*      https://www.samsung.com/us/home-appliances/microwaves/all-microwaves/      (last visited July 14, 2021).

[8]      *See*                              https://www.samsung.com/us/home-appliances/dishwashers/all-dishwashers/?shop=Buy+Online&color=Fingerprint+Resistant+Black+Stainless+Steel      (last visited July 14, 2021).

6.     The Black Stainless Steel Appliances are defectively designed in that the exterior finish of the appliances will peel, chip, flake, discolor, bubble, and prematurely degrade during the course of the ordinary and expected use of the appliances.

7.     For example, Mr. Lee's oven, a Black Stainless Steel Appliance, experienced the following peeling, flaking, and premature degradation of the "black stainless steel" finish after only a few years of use:



8.     This defect has obvious aesthetic ramifications to the Black Stainless Steel Appliance, and, as a byproduct of this degradation, Mr. Lee's oven frequently peeled and flaked small pieces of the plastic "black stainless steel" finish off the appliance entirely:



9.      Similarly, Ms. Einiger's stove, a Black Stainless Steel Appliance, experienced the following discoloration and premature degradation of the "black stainless steel" finish *after her first week of owning the stove*:



10.     And, approximately three months later, the discoloration and premature degradation of the "black stainless steel" finish escalated:



11.     Notably, the same discoloration marks on the "black stainless steel" finish of Ms. Einiger's stove can be observed in the vicinity of the "LO" label and above the element identifier.

12.     Similarly, Mr. Roscoe experienced peeling, flaking, discoloring, or premature degradation of the "black stainless steel" finish after only a few months of ownership and use of his oven and refrigerator, both Black Stainless Steel Appliances.

13.     Lastly, Ms. Danilova likewise experienced peeling, flaking, discoloring, or premature of the "black stainless steel" finish after only a few years of use of her refrigerator and dishwasher, both Black Stainless Steel Appliances.

14.     As a result, Plaintiffs are concerned by both the severe deterioration in the aesthetic appeal of their Black Stainless Steel Appliances, and by the potential ingestion of flakes of the "black stainless steel" finish.

15.     Owners of Black Stainless Steel Appliances risk, through regular use, having the defect contaminate the food cooked, stored, or cleaned in the appliances, and potentially cause related harm resulting from the ingestion of the "black stainless steel" finish particles.

16.     Given that gas ovens and gas ranges have expected lifespans well in excess of ten years,[9] and that Plaintiffs' Black Stainless Steel Appliances have expected lifespans of at least nine years, the severe deterioration in the "black stainless steel" finish significantly reduces the value of Plaintiffs' Black Stainless Steel Appliances and significantly accelerates their depreciation beyond reasonable consumer expectations.

17.     Defendant is aware of the defect.

18.     Based on publicly available information, Defendant has known of the defect for several years, by way of consumer complaints dating back to the inception of the finish.

19.     Defendant did not, and does not, disclose or provide any information to Plaintiffs or other consumers regarding the defective quality and durability of the "black stainless steel" finish.

20.     Defendant failed to warn members of Plaintiffs' proposed classes of the defect, and Defendant withheld that information from Plaintiffs and similarly situated purchasers of Black Stainless Steel Appliances.

---

[9]     *See, e.g.*, https://www.nachi.org/life-expectancy.htm (last visited July 14, 2021) (noting that gas ovens have a life expectancy of 10-18 years, gas ranges have a life expectancy of 15-17 years, refrigerators have a life expectancy of 9-13 years, and both microwaves and dishwashers have a life expectancy of 9 years).

6

21.     As a result of the defect, the Black Stainless Steel Appliances do not satisfy several of the key purposes for which they were purchased, e.g.: (1) cooking food, refrigerating food, or cleaning dishes without damaging the Black Stainless Steel Appliances' exterior; (2) maintaining the Black Stainless Steel Appliances' signature aesthetics; and (3) cooking or refrigerating food without the risk that plastic flakes will be dislodged from the appliance's exterior and expose users to having the plastic particles around, or on, their food contained in or on the Black Stainless Steel Appliances.

22.     Plaintiffs purchased the defective Black Stainless Steel Appliances—that Defendant designed, marketed, manufactured, distributed and sold—based on their reasonable expectation that the Black Stainless Steel Appliances would work and be reliable as advertised and impliedly warranted, and without knowledge of the defect.

23.     Through the ordinary or directed use of the Black Stainless Steel Appliances, Plaintiffs have—as have consumers throughout the country—experienced peeling, chipping, flaking, discoloration, and premature degradation of the "black stainless steel" finish.

24.     Plaintiffs would not have purchased the Black Stainless Steel Appliances or paid a premium purchase price for the "black stainless steel" finish if they knew that the finish was simply a plastic coating that was prone to peeling, chipping, flaking, discoloration, and premature degradation.

25.     Absent Defendant's actions and failure to warn of the defect, and had Plaintiffs known of the defective nature of the Black Stainless Steel Appliances, Plaintiffs would not have purchased or paid the premium purchase price for the Black Stainless Steel Appliances, and would not have used the Black Stainless Steel Appliances in their homes.

## II.      Jurisdiction and Venue

26.      This Court has original jurisdiction under 28 U.S.C. §1332(d) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this is a class action of more than 100 potential class members in which Mr. Lee is a citizen of Texas, Ms. Einiger is a citizen of Nevada, Mr. Roscoe is a citizen of South Carolina, and Ms. Danilova is a citizen of Massachusetts, while Defendant is a citizen of New Jersey.

27.      The Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

28.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this action occurred in this district, in that Defendant's misrepresentations and omissions were connected to Defendant's actions in this district, and Mr. Lee purchased the Black Stainless Steel Appliances in this district. Additionally, Defendant and its affiliated entities conduct substantial business within the State of Texas, including a $17 billion dollar major manufacturing plant[10] and major corporate office.[11]

## III.     Parties

29.      Mr. Lee is a natural person who at relevant times resided in Katy, Texas.

30.      Ms. Einiger is a natural person who at relevant times resided in Las Vegas, Nevada.

31.      Mr. Roscoe is a natural person who at relevant times resided in Chester, South Carolina.

32.      Ms. Danilova is a natural person who at relevant times resided in Swampscott, Massachusetts.

---

[10]      https://www.samsung.com/us/sas/company/history (last visited July 19, 2021).

[11]      https://www.sra.samsung.com/locations/ (last visited July 19, 2021).

33.     Defendant is a New York corporation that maintains its principal place of business in Ridgefield Park, New Jersey.

34.     Defendant manufacturers and markets consumer goods under the Samsung brand name, including household cooking appliances such as ovens, electric and gas cooktops, dishwashers, microwaves, and clothes washers and dryers.

35.     Defendant is a subsidiary of Samsung Electronics ("Samsung Electronics"), which is in turn a subsidiary of the Samsung Group, a Korean multinational conglomerate.

**IV.     Factual Allegations**

**A.     Mr. Lee's experience with the Black Stainless Steel Appliances.**

36.     In early 2016, as part of a broader kitchen remodel, Mr. Lee began researching kitchen appliances and found that he was drawn to Samsung's appliances, based in part upon Mr. Lee's prior favorable experience with Samsung products.

37.     Specifically, Mr. Lee selected the following Samsung appliances:

- a Model Number ME21H706MQ6/AA microwave, purchased in or around February 2016, for approximately $450 from Fry's Electronics;

- a Model Number DW80J7TTUG/AA dishwasher, purchased in or around September 2016, for approximately $1,000 from Conn's HomePlus; and

- a Model Number NX58J5600SG/AA gas range, purchased on or about April 17, 2017, for $1,178.32 from Home Depot.

38.     Mr. Lee purchased these Samsung appliances from authorized sellers of Black Stainless Steel Appliances.[12]

---

[12]     https://www.samsung.com/us/peaceofmind/authorized_resellers_HA.html (last visited July 19, 2021).

39.     When considering which specific products and color schemes to purchase, Mr. Lee decided to pay a premium for each of his appliances for the "black stainless steel" finish, which Samsung advertised as a "premium design,"[13] and which Samsung stated was a "premium-looking finish that is simultaneously practical."[14]

40.     Specifically, Mr. Lee believes that he paid between $100 and $200 *extra* for each of his Black Stainless Steel Appliances, compared to the otherwise-identical appliances without the "black stainless steel" finish.

41.     However, after approximately three years of use, in mid-2020, Mr. Lee discovered that the "black stainless steel" finish on his appliances was peeling off, flaking, and prematurely degrading, *see infra* ¶¶ 7-8, prompting him to research whether his experience was an aberration or a widespread issue.

42.     Mr. Lee then discovered that consumers across the country describe similar peeling, flaking, and premature degradation of the "black stainless steel" finish:

| Complaint | Source |
|---|---|
| i purchased brand new Samsung black stainless stove, dishwasher, refrigerator and microwave from Lowes with the extended warranty. All of them has the black stainless peeling off. They are all spotty and horrible to look at. i paid over $7500 for this poorly made product. when i called and email samsung like many other consumers they said it cosmetic and nothing they can do about it. i call lowes and they said Samsung consider it cosmetic. NO where in samsung guide or did a lowes sales person tell me the the black stainless is a cheap paint that would peel of they market it as STAINLESS! What they did say was it as fingerprint resistant. i guess they consider when you touch it that the paint peeling off on your finger makes in fingerprint resistant. Then l went on samsung consumer page and there are tons of other people claiming the same thing so to me that is a poorly made product | https://us.community.samsung.com/t5/Kitchen-and-Family-Hub/black-stainless-peeling/td-p/1615635 (last visited March 16, 2021). |

---

[13]     https://www.samsung.com/us/ranges/ (last visited March 17, 2021).

[14]     https://www.consumerreports.org/kitchen-appliances/the-appeal-of-black-stainless-appliances/ (last visited March 17, 2021).

| | |
|---|---|
| and a SAMSUNG SCAM they will not do anything about. i purchased black stainless and now my new remodel kitchen is ruined. i will never purchase or recommend samsung again. | |
| I have exactly the same problem and would be glad to join a lawsuit as well. | *Id.* |
| I also bought an entire kitchen of Samsung's black stainless-steel appliances and have the same peeling problem. I have contacted Samsung on more than one occasion only to be left to feel discouraged by Samsung's admittance of how terrible my issue is due to their defective product but there is nothing they can do. I spent thousands of dollars and the kitchen appliances I replaced were more cosmetically pleasing. I feel so scammed. | *Id.* |
| I have a $3300 black stainless refrigerator purchased 10-31-2017 that began peeling after just 16 months. The peeling is now quite severe, affecting all 4 doors, and has resulted in extensive rust in places where the finish has peeled. Despite Samsung's claims, the finish is not "purely cosmetic"; its function is to protect the unit from damage due to rust, and it has FAILED in this function. Eventually it will rust through the surface of the door and compromise the ability of the refrigerator to insulate and keep food cold.<br><br>This problem with the finish clearly constitutes a manufacturing defect. Samsung knows this is a problem for all of their black stainless appliances; the finish is a film so thin they cannot possibly have expected it to last. It is completely irresponsible to manufacture it in this way.<br><br>Even if one were to accept Samsung's contention that the finish is "purely cosmetic," this is not a sufficient reason for Samsung to evade responsibility for manufacturing and selling a defective product. The cosmetic features of appliances are a major selling point of great importance to consumers. Appliances are explicitly marketed and sold as objects that are supposed to improve the appearance of your kitchen. The peeling finish is directly contradictory to that function.<br><br>Moreover, the marketing of these appliances is deceptive and arguably fraudulent. They are marketed as stainless steel, but are clearly "fake stainless," as demonstrated by their vulnerability to rust. | *Id.* |
| omg..my stove and microwave is also peeling. I paid so much for them. Samsung won't do anything to replace them.... I regret so bad buying Samsung...My kitchen looks horrible also, | https://us.community.sams ung.com/t5/Kitchen-and-Family-Hub/black-stainless-peeling/td- |

| | |
|---|---|
| | p/1615635 (last visited March 16, 2021). |
| Why is my black stainless steel finish peeling after 18 months? Followed manual cleaning instructions. Looks horrid and neither Best Buy/Geek Squad /Samsung consider this a warranty issue as it is cosmetic! Really? It seems to be a defect in workmanship | https://www.bestbuy.com/site/questions/samsung-flex-duo-5-9-cu-ft-self-cleaning-freestanding-fingerprint-resistant-double-oven-electric-convection-range-black-stainless-steel/9542089/question/15e6097e-fb39-3c12-a6c5-8411088f4ca4 (last visited March 16, 2021). |
| This is a defective product overall.. I have a 1300 Samsung Black Stainless slide in stove... it has completely peeled and the top has cracked. DEFECTIVE PRODUCT!! | *Id.* |
| I am also having this problem and was told it is not covered under warranty. This company should replace these doors. No one would purchase these items knowing they would peel. Not happy at all. | *Id.* |
| Yes yes...., my black stainless steel range starting to peel from under the handle. Barely used !!! This is a rip-off!! | *Id.* |
| Same issue here - I will never spend another dollar in best buy or on samsung products again. Hard lesson learned after replacing refrigerator, stove, dishwasher and microwave with black stainless steel samsung garbage. $thousands wasted. | *Id.* |
| We purchased Samsung black stainless steel oven and microwave. The appliances are now 18 months old and the door has started to flake --- leaving a silver finish in spots. It is unsightly and ruins my kitchen. If you don't want a very costly mistake, you should not purchase Samsung. The finish is a disaster! | https://www.houzz.com/discussions/4633662/poll-black-stainless-steel-appliances-yes-or-no (last visited March 16, 2021). |
| I bought all my kitchen appliances in Black (coating) Stainless steel (BSS). Don't do it! I just found flaking around the range. I called and they said it is out of warranty and it is ot considered a mechanical defect. So 18 month old appliances look horrible. Samsung does not stand behind their products. | *Id.* |
| Within 9 months the black stainless is peeling off from routine water/sponge cleaning. Samsung will not help, calls it "cosmetic damage."<br>We did not damage anything! This is defective! Internet search shows this is common. We are furious--we outfitted our entire kitchen with this appliance line. | https://www.samsung.com/us/home-appliances/ranges/gas/nx58j5600sg-gas-range-with-convection-black-stainless-steel-nx58j5600sg-aa/ (last visited March 16, 2021). |
| The Black Stainless Steel Parts of the stove also is a just a wrapping, FYI it DOES CHIP AND PEEL OFF, to reveal the normal Stainless-Steel underneath so be very careful. Overall I wouldnt have purchased | *Id.* |

| | |
|---|---|
| this product from a company that cant stand behind its mistakes in design.<br>I made the mistake of buying ALL my Kitchen Appliances from them :( | |
| Black stainless finish flakes off gas knobs have all broken off. Even the middle burner which we have never used. | *Id.* |
| the black stainless oven face will peel, leaving hideous stripes that samsung will do nothing about. this has been an issue for years according to forum on samsung.com | *Id.* |
| purchased in 11/17. had to replace the oven door & a burner knob as finish was peeling. the back panel is scratched and peeling because of the design. three knobs are also have peeling. | *Id.* |
| very disappointed with the peeling black stainless coating. i have many samsung products in my 2 houses,but this is the first range from samsung.<br>would not recommend for this reason | *Id.* |
| i would not recommend the black stainless steel. the black is a film that peels off. also, the grates rust. samsung takes no responsibility for this appliance. | *Id.* |
| black stainless finish peeled off oven door after 6 months. "cosmetic" issues not covered by warranty. | *Id.* |
| this is by far the worst range ''ve ever owned. within the first year the thermocouple for one of the oven burners stopped working. i live in a remote area and samsung would not send anybody to fix it so i ended up doing it myself. year 2, all 5 of the plastic knobs broke and the black stainless finish starting peeling off various parts of the oven. samsung customer service was not at all helpful, and told me i had to spend $113/knob on samsungparts.com as i was out of warranty. that would add up to the cost of the stove! bottom line is this is a very cheaply made and over priced product. what makes it worse is samsungs unwillingness to assist and admit their shortcomings and poor quality. do not buy! | *Id.* |
| I bought my Gas range and Refridgerator in Sept of 2018. 2 years later the paint is peeling off the range and fridge and also one of the range knobs has broken off. I am very dissapointed in samsung with these products. They are doing nothing to help or assist saying that this is a cosmetic issue and they cannot resolve, also i advised that i personally know someone that is having the same peeling issue as me and her range is only 6 months. These products are the 5.8 cubic ft. Freestanding Gas Range with convection in Black stainless steel, and 22 cubic ft, French Door Refrigerator in Black Stainless steel. Do not buy these products they are deffective and samsung pro care or what ever you want to call them are not helpfull what so ever. they state that oone because ithe are out of warrenty there is nothing they can do and that this is all cosmetic. i will be writting all the way up to corporate to resolve this issue because just like me i know that | https://us.community.sams ung.com/t5/Kitchen-and-Family-Hub/Peeling-Paint-from-Fridge-and-Gas-Range/m-p/1564729 (last visited March 16, 2021). |

| | |
|---|---|
| there must plenty others out there going thru the same issue. | |
| Me too! This cannot be a fluke! It is something they must address. Who wants to buy a stove- that should last at least 15 years- with paint rubbing off. Not happy.<br>they need to address. I belong to several FB groups that would definitely want to know this. | *Id.* |
| I agree. I have the same gas range and it is peeling awful all over, had my kitchen redone and now I have an eyesore for a stove....<br>Very disappointed in the product. | *Id.* |
| I'm also having the same problem on my gas range. I also have a Samsung Black Stainless microwave, and French Door Refrigerator (With all the constant Ice maker problems). I'm hoping the peeling problem doesn't start on those. I spent a lot of money on these appliances a couple years ago, and had intended them to last a long time. I will never buy a Samsung product again and will advise everyone I know to also avoid their products as there seems to be no resolution from Samsung on these issues. These products are faulty | *Id.* |
| We purchased this Samsung product on 08/13/2021. I have to say, I love Samsung and most of their products. This electric range is definitely a disappointment. Not worth the value. After 6 months of use, it looks like a 10 year old stove, the black coating is starting to peel off and, be aware, the warranty does not cover this. I've been on the phone with Samsung costumer service over an hour and a half just so they can tell me that there is nothing they will do. If thinking about buying this item, think twice and invest your $$ somewhere else. | https://www.homedepot.com/p/Samsung-30-in-6-3-cu-ft-Slide-In-Electric-Range-with-Self-Cleaning-Oven-in-Black-Stainless-Steel-NE63T8111SG/313697671 (last visited March 16, 2021). |

43.    Consumers across the country also shared similar photos of the "black stainless

steel" finish peeling and prematurely degrading on their appliances in a materially identical manner

to Mr. Lee's:[15]

---

[15]    https://www.samsung.com/us/home-appliances/ranges/gas/nx58j5600sg-gas-range-with-convection-black-stainless-steel-nx58j5600sg-aa/ (last visited July 14, 2021).

















44.     Some of these customers even experience rusting of the exposed metal after the "black stainless steel" finish peels off:[16]



---

[16]     https://us.community.samsung.com/t5/Kitchen-and-Family-Hub/Black-stainless-peeling/td-p/1556310 (last visited March 17, 2021).

45.     Shortly thereafter, Mr. Lee contacted Defendant's customer service line to seek assistance with the defective "black stainless steel" finish on his Black Stainless Steel Appliances, but was told—in dismissive fashion—that because the defect is "cosmetic," Defendant would offer no repairs, replacements, or compensation of any kind.

46.     On February 3, 2021, Mr. Lee initiated written requests to Defendant for review of its warranty coverage and a review of Mr. Lee's defective Black Stainless Steel Appliances.

47.     Defendant did not respond to Mr. Lee's February 3, 2021 requests.

**B.      Ms. Einiger's experience with the Black Stainless Steel Appliances.**

48.     In June of 2020, Ms. Einiger began researching kitchen appliances and found that she was drawn to Samsung's appliances, based in large part upon their unique "black stainless steel" finish and her belief that Samsung was a reliable brand.

49.     Specifically, Ms. Einiger selected the following Samsung appliances:

- a Model Number RF28JBEDBSG/AA refrigerator, on or about June 26, 2020, for approximately $3,000 from Home Depot; and

- a Model Number NA36N7755TG/AA gas range, purchased on or about June 26, 2020, for $1,299.00 from AJ Madison.

50.     Ms. Einiger purchased these Samsung appliances from an authorized seller of Black Stainless Steel Appliances.[17]

51.     When considering which specific products and color schemes to purchase, Ms. Einiger decided to pay a premium for each of her appliances for the "black stainless steel" finish,

---

[17]     https://www.samsung.com/us/peaceofmind/authorized_resellers_HA.html (last visited July 19, 2021).

which Samsung advertised as a "premium design,"[18] and which Samsung stated was a "premium-looking finish that is simultaneously practical."[19]

52. Specifically, Ms. Einiger believes that she paid several hundred dollars *extra* for each of her Black Stainless Steel Appliances, compared to the otherwise-identical appliances without the "black stainless steel" finish.

53. However, *after her first time using her gas range*, Ms. Einiger discovered that the "black stainless steel" finish on her gas range was discoloring and prematurely degrading, *see infra* ¶ 9, which continuously worsened in the weeks and months that followed. *See id.* at ¶¶ 10-11.

54. Additionally, in mid-2021, Ms. Einiger's Black Stainless Steel refrigerator began exhibiting the same discoloring and premature degradation of the "black stainless steel" finish on her refrigerator:

---

[18]     https://www.samsung.com/us/ranges/ (last visited July 19, 2021).

[19]     https://www.consumerreports.org/kitchen-appliances/the-appeal-of-black-stainless-appliances/ (last visited July 19, 2021).



55.     On March 25, 2021, Ms. Einiger contacted Defendant's customer service to seek assistance with the defective "black stainless steel" finish on her Black Stainless Steel Appliances—including sending written requests—for review of Defendant's warranty coverage and a review of Ms. Einiger's defective Black Stainless Steel Appliances.

56.     On March 29, 2021, a Samsung representative inspected the defective finish on Ms. Einiger's Black Stainless Steel Appliances and concluded that, because the discoloration and premature degradation of the "black stainless steel" finish was a "cosmetic issue," Defendant would not repair, replace, compensate, or otherwise assist Ms. Einiger.

### C.      Mr. Roscoe's experience with the Black Stainless Steel Appliances.

57.      In May 2020, as part of a broader kitchen remodel, Mr. Roscoe began researching kitchen appliances and found that he was drawn to Samsung's appliances, based in part upon Mr. Roscoe's prior favorable experience with Samsung products.

58.      Specifically, Mr. Roscoe selected the following Samsung appliances:

- a Model Number RF28R7551SG/AA refrigerator, purchased on or about May 9, 2020 for approximately $1,520 from Best Buy;

- a Model Number NE58KR850WG oven, purchased on or about May 19, 2020 for approximately $1,749.99 from Best Buy; and

- a Model Number ME21K7010DG microwave, purchased on or about May 27, 2020, for approximately $239 from Best Buy.

59.      Mr. Roscoe purchased these Samsung appliances from an authorized seller of Black Stainless Steel Appliances.[20]

60.      When considering which specific products and color schemes to purchase, Mr. Roscoe decided to pay a premium for each of his appliances for the "black stainless steel" finish, which Samsung advertised as a "premium design,"[21] and which Samsung stated was a "premium-looking finish that is simultaneously practical."[22]

61.      Specifically, Mr. Roscoe believes that he paid up-to several hundred dollars *extra* for each of his Black Stainless Steel Appliances, compared to the otherwise-identical appliances

---

[20]      https://www.samsung.com/us/peaceofmind/authorized_resellers_HA.html (last visited July 19, 2021).

[21]      https://www.samsung.com/us/ranges/ (last visited July 19, 2021).

[22]      https://www.consumerreports.org/kitchen-appliances/the-appeal-of-black-stainless-appliances/ (last visited July 19, 2021).

without the "black stainless steel" finish.

62.     However, within months of use, in late 2020, Mr. Roscoe discovered that the "black stainless steel" finish on his appliances was peeling off, flaking, and prematurely degrading:



63.     In or about January 2021, Mr. Roscoe contacted Defendant's customer service line to seek assistance with the defective "black stainless steel" finish on his Black Stainless Steel Appliances, but he was told—in dismissive fashion—that because the defect is "cosmetic," Defendant would offer no repairs, replacements, or compensation of any kind.

**D.     Ms. Danilova's experience with the Black Stainless Steel Appliances.**

64.     In October 2016, as part of a broader kitchen remodel, Ms. Danilova began researching kitchen appliances and found that she was drawn to Samsung's appliances, based in large part upon their aesthetic appearance and Ms. Danilova's prior favorable experience with Samsung products.

65.     Specifically, in relevant part, Ms. Danilova selected the following Samsung appliances from Best Buy:

- a Model Number DW80K7050UG dishwasher, purchased on or about August , 2016, for approximately $650 from Best Buy; and

- a Model Number RF28JBEDBSG/AA refrigerator, purchased on or about August , 2016, for approximately $2,087 from Best Buy.

66.     Ms. Danilova purchased these Samsung appliances from an authorized seller of Black Stainless Steel Appliances.[23]

67.     While deciding which specific products and color schemes to purchase, Ms. Danilova decided to pay a premium for each of her appliances for the "black stainless steel" finish, which Samsung advertised as a "premium design,"[24] and which Samsung stated was a "premium-looking finish that is simultaneously practical."[25]

68.     Specifically, Ms. Danilova believes that she paid between $100 and $200 *extra* for each of her Black Stainless Steel Appliances, compared to the otherwise-identical appliances without the "black stainless steel" finish.

69.     However, after about four years of use, in mid-2021, Ms. Danilova discovered that the "black stainless steel" finish on her appliances was peeling off, flaking, and prematurely degrading:

---

[23]     https://www.samsung.com/us/peaceofmind/authorized_resellers_HA.html (last visited July 19, 2021).

[24]     https://www.samsung.com/us/ranges/ (last visited July 19, 2021).

[25]     https://www.consumerreports.org/kitchen-appliances/the-appeal-of-black-stainless-appliances/ (last visited July 19, 2021).





**E.     Samsung ignored—and continues to ignore—the defect, despite its knowledge of widespread consumer complaints.**

70.     Samsung has broadly ignored the dozens of consumer complaints materially identical to Plaintiffs' concerns.

71.     When Defendant does respond to consumer complaints concerning the peeling, chipping, flaking, discoloration, or premature degradation of the "black stainless steel" finish, Defendant repeatedly, and confusingly, suggests that issues with the defective "black stainless steel" finish can potentially be resolved by cleaning it:



72.     The link provided by Defendant, http://bit.ly/2rMiQPw, suggests that disgruntled consumers experiencing the defect may either (1) clean the surface of the Black Stainless Steel Appliances; (2) confirm that the peeling finish is not an intended aesthetic design; or (3) request "out-of-warranty service for repair of cosmetic damage."

73.     However, as Plaintiffs' experienced and as uniformly confirmed by consumer complaints above, Defendant  disavows any warranty coverage or responsibility for the defect in the Black Stainless Steel Appliances, and uniformly maintains that, because it considers the defect

to be a purely cosmetic issue, it is not obligated to provide any relief to consumers.

74.      Meanwhile, Defendant advertises the Black Stainless Steel Appliances with full knowledge and understanding that they are not sold as advertised, and otherwise fails to warn consumers of the known defect.

75.      In fact, while Defendant advertises its premium "black stainless steel" finish while omitting that the color is little more than a plastic foil covering, other manufacturers of black stainless steel appliances apply the black stainless steel color during the manufacturing of the stainless steel itself.[26]

76.      Defendant fails to inform consumers in its advertising at the time of purchase, that even if consumers operate the Black Stainless Steel Appliances as instructed, the black stainless steel" finish will peel, chip, flake, discolor, and prematurely degrade during normal operation, causing the risk that peeled plastic finish will contaminate food around the Black Stainless Steel Appliances.

77.       Defendant was obligated to disclose the defect because Defendant had exclusive knowledge of the material facts not known to Plaintiffs, since only Defendant had exclusive access to the aggregate data from its retailers, its own tests, and complaints from its customers.

78.      Defendant, upon information and belief, concealed and suppressed the material facts from Plaintiffs by failing to warn of the defect at the time of purchase, made worse by its refusal to repair, replace, or compensate consumers for the defective finish in response to Plaintiffs' and other consumers' complaints.

79.      As a result of Defendant's concealment of the defect, owners of Black Stainless

---

[26]      *See, e.g.*, https://blog.bellinghamelectric.com/blog/bosch-black-stainless-steel-features-pros-cons (last visited July 14, 2021).

Steel Appliances were not provided material information before deciding which brand, and which exterior finish, of kitchen appliances to buy.

80.     Defendant failed to adequately design and/or manufacture the Black Stainless Steel Appliances to ensure that they were and are free from the defect that causes peeling, chipping, flaking, discoloration, and premature degradation of the "black stainless steel" finish.

81.     At the time Defendant began selling the Black Stainless Steel Appliances in the United States, Defendant knew, or was reckless in not knowing, that they: (a) contained a defect in the Black Stainless Steel Appliances' design, parts, materials and workmanship; and (b) were not of merchantable quality.

82.     Despite notice of the defect in the Black Stainless Steel Appliances, and the reasonable expectations of consumers created by Defendant's marketing of its Black Stainless Steel Appliances, Defendant engaged—and continues to engage—in a wrongful course of conduct by:

- designing, manufacturing and selling the Black Stainless Steel Appliances with a defect causing peeling, chipping, flaking, bubbling, discoloration, and premature degradation of the "black stainless steel" finish;

- failing to disclose that the Black Stainless Steel Appliances will suffer from peeling, chipping, flaking, bubbling, discoloration, and premature degradation of the "black stainless steel" finish;

- failing to warn purchasers of the Black Stainless Steel Appliances' inherent defect;

- concealing material information about the Black Stainless Steel Appliances, including information about the defect;

- manufacturing, distributing, and selling the Black Stainless Steel Appliances

28

to consumers when Defendant was on notice that the Black Stainless Steel Appliances could not be used, in normal operation, without the "black stainless steel" finish peeling, chipping, flaking, bubbling, discoloring, and prematurely degrading, and potentially contaminating food products;

- failing to implement a recall or repair program to adequately announce to Plaintiffs and class members the presence of the defect, and failing to provide to Plaintiffs and class members an effective solution to correct the defect in the Black Stainless Steel Appliances;

- failing to correct and eliminate the defect in materials and workmanship that cause peeling, chipping, flaking, bubbling, discoloration, and premature degradation of the "black stainless steel" finish; and

- failing to disclose that ordinary, or recommended, use of the Black Stainless Steel Appliances will cause peeling, chipping, flaking, bubbling, discoloration, and premature degradation of the "black stainless steel" finish, causing the Black Stainless Steel Appliances to be not fully functional.

83. Plaintiffs and the members of the classes described below would not have purchased the Black Stainless Steel Appliances at the prices they paid, or would not have purchased the Black Stainless Steel Appliances at all, absent Defendant's advertising, failure to disclose the defect, and concealment of material information about the defect.

84. This is especially true given that Defendant charges consumers a premium in excess of $100 specifically for the Black Stainless Steel Appliances, compared to otherwise identical

appliances without the "black stainless steel" finish:[27]






85.    And this holds true for other Black Stainless Steel Appliances:[28]




---

28       https://www.samsung.com/us/home-appliances/refrigerators/4-door-flex/23-cu-ft-capacity-counter-depth-4-door-flex-refrigerator-with-flexzone-stainless-steel-rf23j9011sr-aa/ (last visited March 16, 2021).





86.     As a result, Defendant charges a premium specifically for the "black stainless steel" finish, even though that finish did not, and does not, provide any improvements to the Black Stainless Steel Appliances other than their aesthetic appeal.

87.     Plaintiffs paid more for the Black Stainless Steel Appliances than they otherwise would have paid had they not been misled by the deceptive conduct complained of herein, so Plaintiffs lost money as a result of Defendant's actions because they did not receive what they paid for.

## V.     Class Action Allegations

88.     Mr. Lee brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

> *National Class*: All persons and entities throughout the United States who purchased one or more Samsung-branded appliances featuring a "black stainless steel" finish.

> *Texas Class*: All persons and entities in Texas who purchased one or more Samsung-branded appliances featuring a "black stainless steel" finish.

89.    Ms. Einiger brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

*National Class*: All persons and entities throughout the United States who purchased one or more Samsung-branded appliances featuring a "black stainless steel" finish.

*Nevada Class*: All persons and entities in Nevada who purchased one or more Samsung-branded appliances featuring a "black stainless steel" finish.

90.    Mr. Roscoe brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

*National Class*: All persons and entities throughout the United States who purchased one or more Samsung-branded appliances featuring a "black stainless steel" finish.

*South Carolina Class*: All persons and entities in South Carolina who purchased one or more Samsung-branded appliances featuring a "black stainless steel" finish.

91.    Ms. Danilova brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

*National Class*: All persons and entities throughout the United States who purchased one or more Samsung-branded appliances featuring a "black stainless steel" finish.

*Massachusetts Class*: All persons and entities in Massachusetts who purchased one or more Samsung-branded appliances featuring a "black stainless steel" finish.

92.    The Texas Class, Nevada Class, South Carolina Class, and Massachusetts Class are collectively referred to as the "State Classes."

93.    Excluded from the classes are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

94.    Upon information and belief, the members of the classes are so numerous that

joinder of all of them is impracticable.

95.     The exact number of the members of the classes is unknown to Plaintiffs at this time, and can be determined only through appropriate discovery.

96.     The classes are ascertainable because the classes are defined by reference to objective criteria.

97.     In addition, the members of the classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendant and by third parties.

98.     Plaintiffs' claims are typical of the claims of the members of the classes.

99.     As it did for all members of the National Class, Defendant sold appliances with a "black stainless steel" finish while concealing and omitting that the finish was a thin plastic coating—rather than a colored metal finish—and that the finish was prone to premature peeling and degradation.

100.    As it did for all members of the Texas Class, Defendant sold appliances in Texas with a "black stainless steel" finish while concealing and omitting that the finish was a thin plastic coating—rather than a colored metal finish—and that the finish was prone to premature peeling and degradation.

101.    As it did for all members of the Nevada Class, Defendant sold appliances in Nevada with a "black stainless steel" finish while concealing and omitting that the finish was a thin plastic coating—rather than a colored metal finish—and that the finish was prone to premature peeling and degradation.

102.    As it did for all members of the South Carolina Class, Defendant sold appliances in South Carolina with a "black stainless steel" finish while concealing and omitting that the finish

was a thin plastic coating—rather than a colored metal finish—and that the finish was prone to premature peeling and degradation.

103.    As it did for all members of the Massachusetts Class, Defendant sold appliances in Massachusetts with a "black stainless steel" finish while concealing and omitting that the finish was a thin plastic coating—rather than a colored metal finish—and that the finish was prone to premature peeling and degradation.

104.    Plaintiffs' claims, and the claims of the members of the classes, originate from the same conduct, practice, and procedure on the part of Defendant.

105.    Plaintiffs' claims are based on the same theories as are the claims of the members of the classes.

106.    Plaintiffs suffered the same injuries as the members of the classes.

107.    Plaintiffs will fairly and adequately protect the interests of the members of the classes.

108.    Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

109.    Plaintiffs will vigorously pursue the claims of the members of the classes.

110.    Plaintiffs have retained counsel experienced and competent in class action litigation.

111.    Plaintiffs' counsel will vigorously pursue this matter.

112.    Plaintiffs' counsel will assert, protect, and otherwise represent the members of the classes.

113.    The questions of law and fact common to the members of the classes predominate over questions that may affect only individual members of the classes.

114.   Issues of law and fact common to all members of the classes are:

a.   whether Defendant omitted material information about the quality of the Black Stainless Steel Appliances or otherwise failed to disclose to class members or warn them of the hidden or concealed defect of the Black Stainless Steel Appliances, although such defect was fully known to Defendant;

b.   whether Defendant misled class members into believing that the Black Stainless Steel Appliances operated as advertised and were free from defects;

c.   whether Defendant knew or should have known that the Black Stainless Steel Appliances contained a defect that caused the "black stainless steel" finish to chip, crack, peel, flake, or otherwise prematurely degrade;

d.   whether Defendant fraudulently concealed the defect in the Black Stainless Steel Appliances;

e.   whether Defendant breached its implied warranties to Class members concerning the Black Stainless Steel Appliances;

f.   whether Plaintiffs and members of the classes are entitled to compensatory relief;

g.   whether Plaintiffs and members of the classes have sustained damages, and, if so, what is the proper measure of damages;

h.   the availability of statutory relief; and

i.   the availability of attorneys' fees and costs.

115.   A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

116.   If brought and prosecuted individually, the claims of the members of the classes would require proof of the same material and substantive facts.

117.    The pursuit of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes, and could substantially impair or impede their ability to protect their interests.

118.    The pursuit of separate actions by individual members of the classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

119.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the classes.

120.    The damages suffered by each individual member of the classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the classes to redress the wrongs done to them.

121.    The pursuit of Plaintiffs' claims, and the claims of the members of the classes, in one forum will achieve efficiency and promote judicial economy.

122.    There will be little difficulty in the management of this action as a class action.

123.    Defendant has acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate.

**COUNT I**
**FRAUDULENT CONCEALMENT**
**(On behalf of the National Class)**

124.    Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-123.

125.    Plaintiffs brings this claim on behalf of themselves and the National Class, or, in the alternative, on behalf of the State Classes.

126.    At all times during the course of dealing between Defendant or its agents and Plaintiffs and class members, Defendant concealed the defect in the Black Stainless Steel Appliances.

127.    Defendant had a duty to disclose the defect.

128.    Specifically, Defendant had a duty to disclose the existence of the defect and material facts regarding the peeling, chipping, flaking, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and expected use of the Black Stainless Steel Appliances.

129.    Defendant knew, or was reckless in not knowing, of the defect and that it was bound to disclose the defect.

130.    Defendant fraudulently concealed, and/or intentionally omitted, that the Black Stainless Steel Appliances were defective in design and manufacturing in that the "black stainless steel" finish would routinely peel, chip, flake, discolor, and prematurely degrade, rendering the appliances unfit for the purposes for which they are purchased, namely: (1) cooking food, refrigerating food, or cleaning dishes without damaging the Black Stainless Steel Appliances' exterior; (2) maintaining the Black Stainless Steel Appliances' signature aesthetics; and (3) cooking or refrigerating food without the risk that plastic flakes or pieces will be dislodged from the appliance's exterior and expose users to having the plastic particles around or on food contained in or on the Black Stainless Steel Appliances.

131.    Defendant fraudulently concealed and/or intentionally omitted the fact that it was aware of consumer complaints regarding the defect.

132.    Despite its knowledge of widespread consumer complaints, Defendant did—and still does—nothing to remedy the defective "black stainless steel" finish.

133.     Defendant failed to discharge its duty to disclose by staying silent about the known defect.

134.     Defendant's concealment and omissions of material facts concerning the defect was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and class members into purchase and use of the Black Stainless Steel Appliances, and to cause them to purchase and/or use Black Stainless Steel Appliances solely for Defendant's financial gain.

135.     Defendant knew that, other than reading anecdotal complaints from other consumers, Plaintiffs and class members had no way to determine the truth behind Defendant's concealment and omissions, before or at the time of purchase, including the material omissions of facts surrounding the defect as alleged above.

136.     Plaintiffs and class members reasonably relied on facts that Defendant negligently, fraudulently or purposefully did not reveal to consumers, or that were actively concealed and/or omitted by Defendant.

137.     Plaintiffs and class members reasonably relied on Defendant's silence regarding the defect and related facts that Defendant negligently, fraudulently or purposefully concealed or omitted.

138.     As a result of the foregoing acts and omissions, Plaintiffs and class members suffered, or are at the risk of suffering, injuries and/or financial damage.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301 *et seq.***
**(On behalf of the National Class)**

139.     Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-123.

140.     Plaintiffs bring this claim on behalf of themselves and the National Class, or, in the alternative, on behalf of the State Classes.

141.     Plaintiffs and the class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301.

142.     Defendant is a "supplier" and "warrantor" within the meaning of § 2301.

143.     The Black Stainless Steel Appliances are "consumer products" within the meaning of § 2301.

144.     Defendant made implied warranties arising under state law regarding the Black Stainless Steel Appliances within the meaning of § 2301(7).

145.     Defendant's warranties were the basis of the bargain of the contract between Plaintiffs and Defendant for the sale of the Black Stainless Steel Appliances to Plaintiffs.

146.     Defendant has been afforded a reasonable opportunity to cure its breach of warranties.

147.     The amount in controversy of Plaintiffs' and the class members' individual claims meets or exceeds the sum of $25.

148.     The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

149.     Further, Defendant breached these implied warranties because the Black Stainless Steel Appliances do not perform as Defendant represented or they are not fit for their intended use, and Defendant did not and refused to repair the Black Stainless Steel Appliances' defects; Defendant provided the Black Stainless Steel Appliances in a non-merchantable condition, such that the "black stainless steel" finish would routinely peel, chip, flake, bubble, discolor, and prematurely degrade, rendering the appliances unfit for the purposes for which they are purchased,

40

namely: (1) cooking food, refrigerating food, or cleaning dishes without damaging the Black Stainless Steel Appliances' exterior; (2) maintaining the Black Stainless Steel Appliances' signature aesthetics; and (3) cooking or refrigerating food without the risk that plastic flakes or pieces will be dislodged from the appliance's exterior and expose users to having the plastic particles around or on food contained in the Black Stainless Steel Appliances.

150.    Defendant violated the MMWA by failing to comply with the implied warranties it made to the class by, among other things: (a) selling Black Stainless Steel Appliances devices that were defective in workmanship, material, or design; and (b) refusing to repair or refund the Black Stainless Steel Appliances after it was revealed that they were unable to perform as warranted.

151.    Resorting to any informal dispute settlement procedure and/or affording Defendant another opportunity to cure these breaches of warranties is unnecessary and/or futile.

152.    Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Defendant has failed to remedy the problems associated with the Black Stainless Steel Appliances, and, as such, has indicated it has no desire to participate in such a process at this time.

153.    Any requirement—whether under the MMWA or otherwise—that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

154.    As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs and the members of the class sustained damages and other losses in an amount to be determined at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of the National Class)**

155.    Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-123.

156.    Plaintiffs bring this claim on behalf of themselves and the National Class, or, in the alternative, on behalf of the State Classes.

157.    Defendant was and is, at all relevant times, a manufacturer and seller of Samsung Black Stainless Steel Appliances.

158.    Plaintiffs paid for their Black Stainless Steel Appliances for the purpose of cooking food or refrigerating food in a high-end kitchen without the risk of peeling and premature degradation of its finish.

159.    In fact, Plaintiffs paid a premium for the "black stainless steel" finish, in comparison to the other finishes available for Samsung appliances.

160.    Plaintiffs did not receive Black Stainless Steel Appliances that can be operated without the risk of peeling and premature degradation of its finish, including, for example, the potential exposure and contamination of food cooked therein.

161.    Rather, Defendant sold the defective Black Stainless Steel Appliances to Plaintiffs and class members and benefited financially from the sale of such appliances.

162.    These unlawful acts caused Plaintiffs and class members to suffer injury, lose money and otherwise be deprived of the benefit of fully functioning Black Stainless Steel Appliances.

163.    Defendant has received and retained unjust benefits from Plaintiffs and the class members.

164.    It is inequitable and unconscionable for Defendant to retain these benefits.

165.    Defendant knowingly accepted the unjust benefits of its unjust and unfair conduct.

166.    As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the class members, in an amount to be proven at trial.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Tex. Bus. & Com. Code § 2.314**
**(On behalf of the Texas Class)**

167.    Mr. Lee repeats and re-alleges each and every factual allegation contained in paragraphs 1-123.

168.    At the time of sale, on each purchase and installation date, and currently, Defendant has been or is in the business of manufacturing and selling the Black Stainless Steel Appliances.

169.    Defendant was at all relevant times a "merchant" with respect to household appliances under Tex. Bus. & Com. Code § 2.104(1), and a "seller" of household appliances under § 2.103(a)(4).

170.    The Black Stainless Steel Appliances were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code § 2.105(a).

171.    A warranty that the Black Stainless Steel Appliances were in merchantable condition and fit for the ordinary purpose for which kitchen appliances are used is implied by law pursuant to Tex. Bus. & Com. Code § 2.314.

172.    Defendant impliedly warranted to Mr. Lee and Texas Class members that the Black Stainless Steel Appliances were of merchantable quality and fit for the ordinary purposes for which they are used.

173.    Defendant knowingly and/or recklessly sold a defective product without informing consumers about the defect.

43

174.     Defendant possessed actual superior knowledge of the problems with its Black Stainless Steel Appliances based on, among other things, Mr. Lee's and Texas Class members' complaints and/or calls to customer service, and reviews and complaints posted on the internet.

175.     Mr. Lee's Black Stainless Steel Appliances became unfit for the ordinary purpose for which they are used—including, but not limited to, cooking food and maintaining Samsung's signature aesthetics—because of chipping, flaking, discoloring, and premature degradation of the "black stainless steel" finish.

176.     Mr. Lee paid a premium specifically for the "black stainless steel" finish.

177.     Mr. Lee was the intended third-party beneficiary of the implied warranty made by Defendant, because Defendant knew that the retailers to whom it sold the Black Stainless Steel Appliances were not going to own the Black Stainless Steel Appliances any longer than it took to sell them to Mr. Lee, and Defendant intended that any implied warranties that applied to the Black Stainless Steel Appliances were for the benefit of Mr. Lee and Texas Class members.

178.     Defendant knew Mr. Lee and Texas Class members were, and intended that they be, the ultimate beneficiaries of Defendant's implied warranties, as they are the owners of the Black Stainless Steel Appliances.

179.     Defendant, who manufactures and markets the Black Stainless Steel Appliances, knew that Mr. Lee and Texas Class members were the end users of the Black Stainless Steel Appliances when Defendant entered into any and all sales contracts and subcontracts for the Black Stainless Steel Appliances, and Defendant's intent was to benefit Mr. Lee and Texas Class members arises by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the Black Stainless Steel Appliances entered into by Defendant.

180.    As a proximate result of Defendant's breach of implied warranty, Mr. Lee and Texas Class members have sustained damages and other losses in an amount to be determined at trial.

181.    As a result, Mr. Lee and the Texas Class members are entitled to recover damages and attorneys' fees,  costs, rescission, and other relief as is provided by statute or deemed appropriate by the Court.

**COUNT V**
**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**Tex. Bus. & Com. Code § 17.01 *et seq.***
**(On behalf of the Texas Class)**

182.    Mr. Lee repeats and re-alleges each and every factual allegation contained in paragraphs 1-123.

183.    Mr. Lee brings this claim on behalf of himself and the Texas Class.

184.    The Black Stainless Steel Appliances are "goods" as defined by the Texas Deceptive Trade Practices Act ("Texas DTPA") § 17.45(1) because they are a tangible chattel purchased for use.

185.    Mr. Lee and each member of the Texas Class are "consumers" as defined by the Texas DTPA § 17.45(4).

186.    Defendant is a "person" as defined under Texas DTPA § 17.45(3).

187.    Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Texas DTPA § 17.46(a).

188.    The Texas DTPA prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce, and any unconscionable action or course of action. *Id.* at § 17.46.

189.    Specifically, the following are considered violations of the Texas DTPA:

a.   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. *Id.* at § 17.46(7).

b.   Advertising goods or services with intent not to sell them as advertised. *Id.* at § 17.46(9).

c.   The failure to disclose information concerning goods or services known at the time of the transaction and was used to induce the consumer into a transaction whom otherwise would not have entered had the information been disclosed. *Id.* at § 17.46(24).

190.   Samsung heavily promotes its Black Stainless Steel Appliances as premium kitchen products with a superior aesthetic to conventional appliances, which feature "black stainless steel" as a premium, durable, luxury metal finish.

191.   Mr. Lee relied on these representations of quality and premium design in deciding to purchase the Black Stainless Steel Appliances, and in doing so, paid a significant premium for the "black stainless steel" finish.

192.   However, the Black Stainless Steel Appliances are fundamentally defective because they are prone to peeling, chipping, flaking, discoloring, or otherwise prematurely degrading, ruining the aesthetic appeal of the products, while also risking contamination of food products.

193.   Defendant concealed and omitted that the "black stainless steel" finish is a thin plastic coating—rather than a sturdy metal finish—and that the finish was prone to peel, chip, flake, and prematurely degrade through the ordinary use of the Black Stainless Steel Appliances.

194.   Defendant intended that Mr. Lee and the members of the Texas Class would rely upon Defendant's misrepresentations and failures to disclose the true nature of the Black Stainless Steel Appliances' propensity to experience peeling, chipping, flaking, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and expected use of the Black Stainless Steel Appliances.

195.    Defendant knew of the risk of peeling, chipping, flaking, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and expected use of the Black Stainless Steel Appliances, yet it continued to sell, market, and distribute them to members of the Texas Class while concealing the true nature of the Black Stainless Steel Appliances' functionality.

196.    Defendant thus violated the provisions of the Texas DTPA by, at a minimum: (1) representing that the Black Stainless Steel Appliances have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Black Stainless Steel Appliances are of a particular standard, quality, and grade when they are not; (3) advertising the Black Stainless Steel Appliances with the intent not to sell them as advertised; (4) failing to disclose information concerning the Black Stainless Steel Appliances with the intent to induce consumers to purchase the Black Stainless Steel Appliances.

197.    Defendant intentionally and knowingly misrepresented material facts regarding the Black Stainless Steel Appliances with intent to mislead Mr. Lee and the Texas Class.

198.    Defendant knew or should have known that its conduct violated the Texas DTPA.

199.    The reliability of the "black stainless steel" finish and aesthetic appeal of the Black Stainless Steel Appliances were material to Mr. Lee and the Texas Class, as Mr. Lee and the Texas Class members paid a premium specifically for the "black stainless steel" finish.

200.    Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Texas DTPA in the course of its business.

201.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Mr. Lee and the members of the Texas Class have suffered actual damages in the form of the full or partial retail price paid for the Black Stainless Steel Appliances.

202.    Had Mr. Lee known that the Black Stainless Steel Appliances are prone to peeling, chipping, flaking, discoloring, or otherwise prematurely degrading, ruining the aesthetic appeal of the products, while also risking contamination of food products, he would not have purchased the Black Stainless Steel Appliances.

203.    As such, Mr. Lee and the members of the Texas Class are entitled to recover actual damages and attorneys' fees pursuant to Texas DTPA § 17.50.

204.    On April 26, 2021, Mr. Lee sent a letter complying with Tex. Bus. & Com. Code § 17.505(a) to Defendant, and on June 23, 2021, Mr. Lee sent an amended demand and notice letter to Defendant.

205.    Because Defendant failed to remedy its unlawful conduct within the requisite time period, Mr. Lee seeks all damages and relief to which he and the Texas Class are entitled.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**N.R.S. § 104.2314**
**(On behalf of the Nevada Class)**

206.    Ms. Einiger repeats and re-alleges each and every factual allegation contained in paragraphs 1-123.

207.    At the time of sale, on each purchase and installation date, and currently, Defendant has been or is in the business of manufacturing and selling the Black Stainless Steel Appliances.

208.    Defendant was at all relevant times a "merchant" with respect to household appliances under N.R.S. § 104.2104(1), and a "seller" of household appliances under § 140A.2103(1)(h).

209.    The Black Stainless Steel Appliances were at all relevant times "goods" within the meaning of N.R.S. § 104.2105(1).

210.    A warranty that the Black Stainless Steel Appliances were in merchantable

48

condition and fit for the ordinary purpose for which kitchen appliances are used is implied by law pursuant to N.R.S. § 104.2314.

211.    Defendant impliedly warranted to Ms. Einiger and  Nevada Class members that the Black Stainless Steel Appliances were of merchantable quality and fit for the ordinary purposes for which they are used.

212.    Defendant knowingly and/or recklessly sold a defective product  without informing consumers about the defect.

213.    Defendant possessed actual superior knowledge of the problems with its Black Stainless Steel Appliances based on, among other things, Ms. Einiger's and Nevada Class members' complaints and/or calls to customer service, and reviews and complaints posted on the internet.

214.    Ms. Einiger's Black Stainless Steel Appliances became unfit for the ordinary purpose for which they are used—including, but not limited to, cooking food and maintaining Samsung's signature aesthetics—because of chipping, flaking, discoloring, bubbling, and premature degradation of the "black stainless steel" finish.

215.    Ms. Einiger paid a premium specifically for the "black stainless steel" finish.

216.    Ms. Einiger was the intended third-party beneficiary of the implied warranty made by Defendant, because Defendant knew that the retailers to whom it sold the Black Stainless Steel Appliances were not going to own the Black Stainless Steel Appliances any longer than it took to sell them to Ms. Einiger, and Defendant intended that any implied warranties that applied to the Black Stainless Steel Appliances were for the benefit of Ms. Einiger and Nevada Class members.

217.    Defendant knew Ms. Einiger and Nevada Class members were, and intended that they be, the ultimate beneficiaries of Defendant's implied warranties, as they are the owners of the

Black Stainless Steel Appliances.

218.    Defendant, who manufactures and markets the Black Stainless Steel Appliances, knew that Ms. Einiger and Nevada Class members were the end users of the Black Stainless Steel Appliances when Defendant entered into any and all sales contracts and subcontracts for the Black Stainless Steel Appliances, and Defendant's intent to benefit Ms. Einiger and Nevada Class members arises by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the Black Stainless Steel Appliances entered into by Defendant.

219.    As a proximate result of Defendant's breach of implied warranty, Ms. Einiger and Nevada Class members have sustained damages and other losses in an amount to be determined at trial.

220.    As a result, Ms. Einiger and the Nevada Class members are entitled to recover damages and attorneys' fees, costs, rescission, and other relief as is provided by statute or deemed appropriate by the Court.

**COUNT VII**
**VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**N.R.S. § 598.0903, *et seq.***
**(On behalf of the Nevada Class)**

221.    Ms. Einiger repeats and re-alleges each and every factual allegation contained in paragraphs 1-123.

222.    Ms. Einiger brings this claim on behalf of herself and the Nevada Class.

223.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA") prohibits deceptive trade practices.

224.    The Nevada DTPA at § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person:

a. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith. *Id.* at § 598.0915(5).

b. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model. *Id.* at (7).

c. Advertises goods or services with intent not to sell or lease them as advertised. *Id.* at (9).

d. Knowingly makes any other false representation in a transaction. *Id.* at (15).

225.    Samsung heavily promotes its Black Stainless Steel Appliances as premium kitchen products with a superior aesthetic to conventional appliances, which feature "black stainless steel" as a premium, durable, luxury metal finish.

226.    Ms. Einiger relied on these representations of quality and premium design in deciding to purchase the Black Stainless Steel Appliances, and in doing so, paid a significant premium for the "black stainless steel" finish.

227.    However, the Black Stainless Steel Appliances are fundamentally defective because they are prone to peeling, chipping, flaking, bubbling, discoloring, or otherwise prematurely degrading, ruining the aesthetic appeal of the products, while also risking contamination of food products.

228.    Defendant concealed and omitted that the "black stainless steel" finish is a thin plastic coating—rather than a sturdy metal finish—and that the finish was prone to peel, chip, flake, bubble, and prematurely degrade through the ordinary use of the Black Stainless Steel Appliances.

229.    Defendant intended that Ms. Einiger and the members of the Nevada Class would rely upon Defendant's misrepresentations and failures to disclose the true nature of the Black

Stainless Steel Appliances' propensity to experience peeling, chipping, flaking, bubbling, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and expected use of the Black Stainless Steel Appliances.

230.     Defendant knew of the risk of peeling, chipping, flaking, bubbling, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and expected use of the Black Stainless Steel Appliances, yet it continued to sell, market, and distribute them to members of the Nevada Class while concealing the true nature of the Black Stainless Steel Appliances' functionality.

231.     Defendant thus violated the provisions of the Nevada DTPA by, at a minimum: (1) representing that the Black Stainless Steel Appliances have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Black Stainless Steel Appliances are of a particular standard, quality, and grade when they are not; (3) advertising the Black Stainless Steel Appliances with the intent not to sell them as advertised; (4) failing to disclose information concerning the Black Stainless Steel Appliances with the intent to induce consumers to purchase the Black Stainless Steel Appliances.

232.     Defendant intentionally and knowingly misrepresented material facts regarding the Black Stainless Steel Appliances with intent to mislead Ms. Einiger and the Nevada Class.

233.     Defendant knew or should have known that its conduct violated the Nevada DTPA.

234.     The reliability of the "black stainless steel" finish and aesthetic appeal of the Black Stainless Steel Appliances were material to Ms. Einiger and the Nevada Class, as Ms. Einiger and the Nevada Class members paid a premium specifically for the "black stainless steel" finish.

235.     Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Nevada DTPA in the course of its business.

236.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Ms. Einiger and the members of the Nevada Class have suffered actual damages in the form of the full or partial retail price paid for the Black Stainless Steel Appliances.

237.    Had Ms. Einiger known that the Black Stainless Steel Appliances are prone to peeling, chipping, flaking, bubbling, discoloring, or otherwise prematurely degrading, ruining the aesthetic appeal of the products, while also risking contamination of food products, she would not have purchased the Black Stainless Steel Appliances.

238.    Accordingly, Ms. Einiger and the members of the Nevada Class seek their actual damages, punitive damages, an order enjoining Defendant's deceptive acts or practices, attorney's fees and costs, and all other appropriate and available remedies under the Nevada DTPA. N.R.S. § 41.600.

**COUNT VIII**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**S.C. Code § 36-2-314**
**(On behalf of the South Carolina Class)**

239.    Mr. Roscoe repeats and re-alleges each and every factual allegation contained in paragraphs 1-123.

240.    At the time of sale, on each purchase and installation date, and currently, Defendant has been or is in the business of manufacturing and selling the Black Stainless Steel Appliances.

241.    Defendant was at all relevant times a "merchant" with respect to household appliances under S.C. Code § 36-2-104(1), and a "seller" of household appliances under § 36-2-103(1)(d).

242.    The Black Stainless Steel Appliances were at all relevant times "goods" within the meaning of § 36-2-105(1).

243.    A warranty that the Black Stainless Steel Appliances were in merchantable

condition and fit for the ordinary purpose for which kitchen appliances are used is implied by law pursuant to S.C. Code §§ 36-2-314.

244.    Defendant impliedly warranted to Mr. Roscoe and  South Carolina Class members that the Black Stainless Steel Appliances were of merchantable quality and fit for the ordinary purposes for which they are used.

245.    Defendant knowingly and/or recklessly sold a defective product  without informing consumers about the defect.

246.    Defendant possessed actual superior knowledge of the problems with its Black Stainless Steel Appliances based on, among other things, Mr. Roscoe's and South Carolina Class members' complaints and/or calls to customer service, and reviews and complaints posted on the internet.

247.    Mr. Roscoe's Black Stainless Steel Appliances became unfit for the ordinary purpose for which they are used—including, but not limited to, cooking food and maintaining Samsung's signature aesthetics—because of chipping, flaking, discoloring, and premature degradation of the "black stainless steel" finish.

248.    Mr. Roscoe paid a premium specifically for the "black stainless steel" finish.

249.    Mr. Roscoe was the intended third-party beneficiary of the implied warranty made by Defendant, because Defendant knew that the retailers to whom it sold the Black Stainless Steel Appliances were not going to own the Black Stainless Steel Appliances any longer than it took to sell them to Mr. Roscoe, and Defendant intended that any implied warranties that applied to the Black Stainless Steel Appliances were for the benefit of Mr. Roscoe and South Carolina Class members.

250.    Defendant knew Mr. Roscoe and South Carolina Class members were, and intended

54

that they be, the ultimate beneficiaries of Defendant's implied warranties, as they are the owners of the Black Stainless Steel Appliances.

251.    Defendant, who manufactures and markets the Black Stainless Steel Appliances, knew that Mr. Roscoe and South Carolina Class members were the end users of the Black Stainless Steel Appliances when Defendant entered into any and all sales contracts and subcontracts for the Black Stainless Steel Appliances, and Defendant's intent to benefit Mr. Roscoe and South Carolina Class members arises by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the Black Stainless Steel Appliances entered into by Defendant.

252.    As a proximate result of Defendant's breach of implied warranty, Mr. Roscoe and South Carolina Class members have sustained damages and other losses in an amount to be determined at trial.

253.    As a result, Mr. Roscoe and the South Carolina Class members are entitled to recover damages and attorneys' fees, costs, rescission, and other relief as is provided by statute or deemed appropriate by the Court.

## COUNT IX
## VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### S.C. Code § 39-5-10 *et seq*.
### (On behalf of the South Carolina Class)

254.    Mr. Roscoe repeats and re-alleges each and every factual allegation contained in paragraphs 1-123.

255.    Mr. Roscoe brings this claim on behalf of himself and the South Carolina Class.

256.    Mr. Roscoe, Defendant, and the members of the South Carolina Class are "persons" as defined under S.C. Code § 39-5-10(a).

257.    Defendant is engaged in "trade" or "commerce" within the meaning of S.C. Code

§ 39-5-10(b).

258.   The South Carolina Unfair Trade Practices Act ("UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a).

259.   Samsung heavily promotes its Black Stainless Steel Appliances as premium kitchen products with a superior aesthetic to conventional appliances, which feature "black stainless steel" as a premium, durable, luxury metal finish.

260.   Mr. Roscoe relied on these representations of quality and premium design in deciding to purchase the Black Stainless Steel Appliances, and in doing so, paid a significant premium for the "black stainless steel" finish.

261.   However, the Black Stainless Steel Appliances are fundamentally defective because they are prone to peeling, chipping, flaking, discoloring, or otherwise prematurely degrading, ruining the aesthetic appeal of the products, while also risking contamination of food products.

262.   Defendant concealed and omitted that the "black stainless steel" finish is a thin plastic coating—rather than a sturdy metal finish—and that the finish was prone to peel, chip, flake, and prematurely degrade through the ordinary use of the Black Stainless Steel Appliances.

263.   Defendant intended that Mr. Roscoe and the members of the South Carolina Class would rely upon Defendant's misrepresentations and failures to disclose the true nature of the Black Stainless Steel Appliances' propensity to experience peeling, chipping, flaking, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and expected use of the Black Stainless Steel Appliances.

264.   Defendant knew of the risk of peeling, chipping, flaking, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and

expected use of the Black Stainless Steel Appliances, yet it continued to sell, market, and distribute them to members of the South Carolina Class while concealing the true nature of the Black Stainless Steel Appliances' functionality.

265.    Defendant thus violated the provisions of the UTPA by, at a minimum: (1) representing that the Black Stainless Steel Appliances have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Black Stainless Steel Appliances are of a particular standard, quality, and grade when they are not; (3) advertising the Black Stainless Steel Appliances with the intent not to sell them as advertised; (4) failing to disclose information concerning the Black Stainless Steel Appliances with the intent to induce consumers to purchase the Black Stainless Steel Appliances.

266.    Defendant intentionally and knowingly misrepresented material facts regarding the Black Stainless Steel Appliances with intent to mislead Mr. Roscoe and the South Carolina Class.

267.    Defendant knew or should have known that its conduct violated the UTPA.

268.    The reliability of the "black stainless steel" finish and aesthetic appeal of the Black Stainless Steel Appliances were material to Mr. Roscoe and the South Carolina Class, as Mr. Roscoe and the South Carolina Class members paid a premium specifically for the "black stainless steel" finish.

269.    Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the UTPA in the course of its business.

270.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Mr. Roscoe and the members of the South Carolina Class have suffered actual damages in the form of the full or partial retail price paid for the Black Stainless Steel Appliances.

271.     Had Mr. Roscoe known that the Black Stainless Steel Appliances are prone to peeling, chipping, flaking, discoloring, or otherwise prematurely degrading, ruining the aesthetic appeal of the products, while also risking contamination of food products, he would not have purchased the Black Stainless Steel Appliances.

272.     As such, Mr. Roscoe and the members of the South Carolina Class are entitled to actual damages, treble damages for willful and knowing violations, punitive damages, an order enjoining Defendant's deceptive acts or practices, and attorneys' fees, costs, and any other just and proper relief available under the UTPA pursuant to S.C. Code § 39-5-140(a).

**COUNT X**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Mass. Gen. Laws. c. 106 § 2-314**
**(On behalf of the Massachusetts Class)**

273.     Ms. Danilova repeats and re-alleges each and every factual allegation contained in paragraphs 1-123.

274.     At the time of sale, on each purchase and installation date, and currently, Defendant has been or is in the business of manufacturing and selling the Black Stainless Steel Appliances.

275.     Defendant was at all relevant times a "merchant" with respect to household appliances under M.G.L. c. 106 § 2-104(1), and a "seller" of household appliances under § 2-103(1)(d).

276.     The Black Stainless Steel Appliances were at all relevant times "goods" within the meaning of M.G.L. c. 106 § 2-105(1).

277.     A warranty that the Black Stainless Steel Appliances were in merchantable condition and fit for the ordinary purpose for which kitchen appliances are used is implied by law pursuant to M.G.L. c. 106 § 2-314.

278.     Defendant impliedly warranted to Ms. Danilova and Massachusetts Class members

that the Black Stainless Steel Appliances were of merchantable quality and fit for the ordinary purposes for which they are used.

279.    Defendant knowingly and/or recklessly sold a defective product without informing consumers about the defect.

280.    Defendant possessed actual superior knowledge of the problems with its Black Stainless Steel Appliances based on, among other things, Ms. Danilova's and Massachusetts Class members' complaints and/or calls to customer service, and reviews and complaints posted on the internet.

281.    Ms. Danilova's Black Stainless Steel Appliances became unfit for the ordinary purpose for which they are used—including, but not limited to, cooking food and maintaining Samsung's signature aesthetics—because of chipping, flaking, discoloring, bubbling, and premature degradation of the "black stainless steel" finish.

282.    Ms. Danilova paid a premium specifically for the "black stainless steel" finish.

283.    Ms. Danilova was the intended third-party beneficiary of the implied warranty made by Defendant, because Defendant knew that the retailers to whom it sold the Black Stainless Steel Appliances were not going to own the Black Stainless Steel Appliances any longer than it took to sell them to Ms. Danilova, and Defendant intended that any implied warranties that applied to the Black Stainless Steel Appliances were for the benefit of Ms. Danilova and Massachusetts Class members.

284.    Defendant knew Ms. Danilova and Massachusetts Class members were, and intended that they be, the ultimate beneficiaries of Defendant's implied warranties, as they are the owners of the Black Stainless Steel Appliances.

285.    Defendant, who manufactures and markets the Black Stainless Steel Appliances,

knew that Ms. Danilova and Massachusetts Class members were the end users of the Black Stainless Steel Appliances when Defendant entered into any and all sales contracts and subcontracts for the Black Stainless Steel Appliances, and Defendant's intent to benefit Ms. Danilova and Massachusetts Class members arises by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the Black Stainless Steel Appliances entered into by Defendant.

286. As a proximate result of Defendant's breach of implied warranty, Ms. Danilova and Massachusetts Class members have sustained damages and other losses in an amount to be determined at trial.

287. As a result, Ms. Danilova and the Massachusetts Class members are entitled to recover damages and attorneys' fees, costs, rescission, and other relief as is provided by statute or deemed appropriate by the Court.

**COUNT XI**
**VIOLATIONS OF THE MASSACHUSETTS REGULATION OF BUSINESS**
**PRACTICES FOR CONSUMER PROTECTION**
**Mass. Gen. Laws. c. 93A *et seq.***
**(On behalf of the Massachusetts Class)**

288. Ms. Danilova repeats and re-alleges each and every factual allegation contained in paragraphs 1-123.

289. Ms. Danilova brings this claim on behalf of herself and the Massachusetts Class.

290. Ms. Danilova, each member of the Massachusetts Class, and Defendant are "persons" within the meaning of Mass. Gen. Laws. c. 93A § 1(a).

291. Defendant is engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws. c. 93A § 1(b).

292.     The Massachusetts Regulation of Business Practices for Consumer Protection law ("Massachusetts DTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Mass. Gen. Laws. c. 93A § 2.

293.     Samsung heavily promotes its Black Stainless Steel Appliances as premium kitchen products with a superior aesthetic to conventional appliances, which feature "black stainless steel" as a premium, durable, luxury metal finish.

294.     Ms. Danilova relied on these representations of quality and premium design in deciding to purchase the Black Stainless Steel Appliances, and in doing so, paid a significant premium for the "black stainless steel" finish.

295.     However, the Black Stainless Steel Appliances are fundamentally defective because they are prone to peeling, chipping, flaking, bubbling, discoloring, or otherwise prematurely degrading, ruining the aesthetic appeal of the products, while also risking contamination of food products.

296.     Defendant concealed and omitted that the "black stainless steel" finish is a thin plastic coating—rather than a sturdy metal finish—and that the finish was prone to peel, chip, flake, bubble, and prematurely degrade through the ordinary use of the Black Stainless Steel Appliances.

297.     Defendant intended that Ms. Danilova and the members of the Massachusetts Class would rely upon Defendant's misrepresentations and failures to disclose the true nature of the Black Stainless Steel Appliances' propensity to experience peeling, chipping, flaking, bubbling, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and expected use of the Black Stainless Steel Appliances.

298.     Defendant knew of the risk of peeling, chipping, flaking, bubbling, discoloration, and premature degradation of the "black stainless steel" finish during the course of the ordinary and expected use of the Black Stainless Steel Appliances, yet it continued to sell, market, and distribute them to members of the Massachusetts Class while concealing the true nature of the Black Stainless Steel Appliances' functionality.

299.     Defendant thus violated the provisions of the Massachusetts DTPA by, at a minimum: (1) representing that the Black Stainless Steel Appliances have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Black Stainless Steel Appliances are of a particular standard, quality, and grade when they are not; (3) advertising the Black Stainless Steel Appliances with the intent not to sell them as advertised; (4) failing to disclose information concerning the Black Stainless Steel Appliances with the intent to induce consumers to purchase the Black Stainless Steel Appliances.

300.     Defendant intentionally and knowingly misrepresented material facts regarding the Black Stainless Steel Appliances with intent to mislead Ms. Danilova and the Massachusetts Class.

301.     Defendant knew or should have known that its conduct violated the Massachusetts DTPA.

302.     The reliability of the "black stainless steel" finish and aesthetic appeal of the Black Stainless Steel Appliances were material to Ms. Danilova and the Massachusetts Class, as Ms. Danilova and the Massachusetts Class members paid a premium specifically for the "black stainless steel" finish.

303.     Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Massachusetts DTPA in the course of its business.

304.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Ms. Danilova and the members of the Massachusetts Class have suffered actual damages in the form of the full or partial retail price paid for the Black Stainless Steel Appliances.

305.    Had Ms. Danilova known that the Black Stainless Steel Appliances are prone to peeling, chipping, flaking, bubbling, discoloring, or otherwise prematurely degrading, ruining the aesthetic appeal of the products, while also risking contamination of food products, she would not have purchased the Black Stainless Steel Appliances.

306.    Accordingly, Ms. Danilova and the members of the Massachusetts Class seek their actual damages, punitive damages, an order enjoining Defendant's deceptive acts or practices, attorney's fees and costs, and all other appropriate and available remedies under the Massachusetts DTPA. N.R.S. § 41.600.

307.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Ms. Danilova and the Massachusetts Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for Ms. Danilova and the members of the Massachusetts Class.

308.    Because Defendant's conduct was committed willfully and knowingly, Ms. Danilova is entitled to recover, for herself and the members of the Massachusetts Class, up to three times actual damages, but no less than two times actual damages.

309.    Defendant does not maintain a place of business in Massachusetts or keep assets in Massachusetts, and so Ms. Danilova is not required to send a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). Notwithstanding that issue, Ms. Danilova should be excused from the requirement of Mass. Gen. Laws ch. 93A, § 9(3) because it is unnecessary and/or futile, in light of

Defendant's refusal to repair, replace, compensate, or otherwise assist consumers affected by the defective "black stainless steel" finish on the Black Stainless Steel Appliances.

## Prayer for Relief

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.  Adjudging and declaring that Defendant made fraudulent misrepresentations, violated the Magnuson-Moss Warranty Act, the Texas Deceptive Trade Practices Act, the Nevada Deceptive Trade Practices Act, the South Carolina Unfair Trade Practices Act, and the Massachusetts breached implied warranties to Plaintiffs and the classes, and was unjustly enriched by the wrongful conduct alleged;

C.  Declaring that Defendant has engaged in the wrongful conduct alleged;

D.  Awarding Plaintiffs and members of the classes actual, consequential, punitive and/or compensatory damages, and pre-judgment and post-judgment interest;

E.  Awarding injunctive relief, including but not limited to restitution to Plaintiffs and members of the classes;

F.  Awarding Plaintiffs and the members of the classes their reasonable fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure; and

G.  Awarding other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: July 19, 2021                  */s/ Aaron D. Radbil*
                                     Aaron D. Radbil
                                     Alexander D. Kruzyk (to seek admission)
                                     Greenwald Davidson Radbil PLLC
                                     400 Congress, Ave., Ste. 1540
                                     Austin, TX 78701
                                     (561) 826-5477
                                     aradbil@gdrlawfirm.com
                                     akruzyk@gdrlawfirm.com

                                     *Counsel for Plaintiff and the proposed classes*

## CERTIFICATE OF SERVICE

I certify that on July 19, 2021, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to all counsel of record.

                                     */s/ Aaron D. Radbil*
                                     Aaron D. Radbil