**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ADAM LEE, KIMBERLY EINIGER, HOWARD ROSCOE, and ANASTASIA DANILOVA, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendant. | Civil Action No. 4:21-cv-01321 |

**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ............................................ 2

NATURE AND STAGE OF PROCEEDINGS ............................................................................. 2

STATEMENT OF FACTS ............................................................................................................ 2

    A.    SEA Sells Black Stainless Steel Kitchen Appliances ............................................. 2

    B.    The Express Warranties and Disclaimers for Plaintiffs' Purchases ...................... 4

    C.    Plaintiffs Purchase Samsung Kitchen Appliances Based on Their Research and Positive Experiences with Samsung Appliances ................................................ 4

    D.    SEA's Marketing ................................................................................................... 5

    E.    Internet Comments About Issues with Other Kitchen Appliances ........................ 5

ARGUMENT ............................................................................................................................... 6

I.    Plaintiffs' Consumer Fraud and Fraudulent Concealment Claims Fail (Counts I, V, VII, IX, XI) ........................................................................................................................ 6

    A.    The Fraud Claims Must Be Pleaded with Particularity ........................................ 6

    B.    Plaintiffs Do Not Plausibly Allege Any Misrepresentations ................................ 7

    C.    Plaintiffs Do Not Plausibly Allege Actionable Omissions .................................... 9

        1.    *Plaintiffs Do Not Adequately Allege that the Appliances Are Defective* ....................................................................................................... 9

        2.    *Plaintiffs Have Failed to Allege Pre-Sale Knowledge* ............................ 13

        3.    *Plaintiffs' Reliance on Popular and Publicly Available Sources Refute Their Allegations that SEA Concealed Anything* .......................... 14

    D.    Plaintiffs Do Not Plausibly Allege Reliance or Causation ................................... 16

II.    Plaintiffs' Breach-of-Implied Warranty and MMWA Claims Must Be Dismissed (Counts II, IV, VI, VIII, and X) ........................................................................................... 17

    A.    Plaintiffs' Appliances Were Merchantable at the Time of Sale .......................... 17

B.      The Express Written Warranty Bars Lee's, Einiger's, and Roscoe's
        Implied Warranty Claims ................................................................................ 18

C.      Plaintiffs Failed to Provide SEA with the Required Pre-Suit Notice ................... 20

D.      Lee and Roscoe Cannot Recover for Defects that Have Not Manifested ............. 21

E.      Plaintiffs' MMWA Claims Fail for Lack of Jurisdiction and on the Merits ........ 22

III.    Plaintiffs' Claims for Unjust Enrichment Also Fail (Count III) ....................................... 22

IV.     Lee's and Danilova's Claims Are Time-Barred ............................................................... 24

CONCLUSION ................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Adams v. Nissan N. Am., Inc.*,
395 F. Supp. 3d 838 (S.D. Tex. 2018) ............................................................ *passim*

*Albemarle Corp. v. MEMC Elec. Materials, Inc.*,
685 F. Supp. 2d 652 (S.D. Tex. 2010) ...............................................................24

*Allstate Ins. Co. v. Belsky*,
No. 15-CV-2265, 2017 WL 7199651 (D. Nev. Mar. 31, 2017) .................6, 13, 16

*Anderson v. Comcast Corp.*,
500 F.3d 66 (1st Cir. 2007) ...............................................................................25

*Ardis v. Cox*,
431 S.E.2d 267 (S.C. Ct. App. 1993) .................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................2

*ASI Lloyds v. Newman*,
No. 12-CV-1451, 2012 WL 13042502 (S.D. Tex. Nov. 27, 2012) ..................6, 23

*Barnett v. Coppell N. Tex. Ct., Ltd.*,
123 S.W.3d 804 (Tex. App. 2003) ......................................................................23

*Barrett v. Miller*,
321 S.E.2d 198 (S.C. Ct. App. 1984) .................................................................23

*Barrett v. Milwaukee Elec. Tool, Inc.*,
No. 14-CV-1804, 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016) ...........................8

*Berenblat v. Apple, Inc.*,
No. 08-CV-4969, 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ...........................14

*Berry v. Indianapolis Life Ins. Co.*,
600 F. Supp. 2d 805 (N.D. Tex. 2009) .................................................................7

*Bianchi v. Haier U.S. Appliance Sols., Inc.*,
No. 20-ADCV-22, 2020 WL 6547132 (Mass. Dist. Ct. Sept. 30, 2020) ...............14

*BMG Direct Mktg., Inc. v. Peake*,
178 S.W.3d 763 (Tex. 2005) ..............................................................................23

*Boelens v. Redman Homes, Inc.*,
748 F.2d 1058 (5th Cir. 1984) ...........................................................................22

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*,
748 F.3d 631 (5th Cir. 2014) ..........................................................................3, 19

*Brodsky v. Match.com, LLP*,
No. 09-CV-2066, 2010 WL 3895513 (N.D. Tex. Sept. 30, 2010) .........................16

*Brooks v. GAF Materials Corp.*,
284 F.R.D. 352 (D.S.C. 2012) ...........................................................................19

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*,
448 F. Supp. 2d 244 (D. Mass. 2006), *aff'd*, 510 F.3d 77 (1st Cir. 2007)..............25

*Carlson v. Gen. Motors Corp.*,
883 F.2d 287 (4th Cir. 1989) .............................................................................22

*Carlson v. Gillette Co.*,
No. 14-CV-14201, 2015 WL 6453147 (D. Mass. Oct. 23, 2015) ....................11, 12

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) ..........................................................................7, 16

*Chandler v. Gene Messer Ford, Inc.*,
81 S.W.3d 493 (Tex. App. 2002) ........................................................................17

*Chenlen v. Philips Elecs. N. Am.*,
No. 05-525, 2006 WL 696568 (Mass. Super. Mar. 1, 2006), *modified on
reconsideration on other grounds*, 2006 WL 4756706 (Mass. Super. Mar. 30, 2006) ..........17

*Click v. Gen. Motors LLC*,
No. 18-CV-455, 2020 WL 3118577 (S.D. Tex. Mar. 27, 2020).......................14, 25

*Cordova v. Johnson*,
993 F. Supp. 473 (W.D. Tex. 1998).....................................................................15

*Costa v. FCA US LLC*,
No. 20-CV-11810, 2021 WL 2338963 (D. Mass. June 8, 2021).......................10, 25

*Cruz v. Kate Spade & Co., LLC*,
No. 19-CV-952, 2020 WL 5848095 (D. Nev. Sept. 30, 2020)..............................23

*Davis v. Citimortgage, Inc.*,
No. 15-CV-4643, 2016 WL 4040084 (D.S.C. July 28, 2016).......................6, 10, 16

*Deburro v. Apple, Inc.*,
No. 13-CA-784, 2013 WL 5917665 (W.D. Tex. Oct. 31, 2013)..........17, 19, 20, 24

*Durso v. Samsung Elecs. Am., Inc.*,
No. 12-CV-5352, 2013 WL 5947005 (D.N.J. Nov. 6, 2013) .................................................20

*Electrolux v. Black*,
No. 20-CV-2125, 2021 WL 2832971 (S.D. Tex. June 8, 2021)............................................22

*Elson v. Black*,
No. 20-CV-2125, 2021 WL 2832971 (S.D. Tex. June 8, 2021)............................................22

*Everett v. TK-Taito, L.L.C.*,
178 S.W.3d 844 (Tex. App. 2005)...............................................................................10, 22

*Ferranti v. Hewlett-Packard Co.*,
No. 13-CV-3847, 2014 WL 4647962 (N.D. Cal. Sept. 16, 2014) .........................................15

*Ford v. Hotwire, Inc.*,
No. 07-CV-1312, 2007 WL 6235779 (S.D. Cal. Nov. 19, 2007) ...........................................7

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000).............................................................................................24

*Frith v. Guardian Life Ins. Co. of Am.*,
9 F. Supp. 2d 734 (S.D. Tex. 1998) ...................................................................................6

*Garcia v. Deere & Co.*,
No. 20-CV-95, 2021 WL 3745188 (S.D. Tex. Mar. 23, 2021)...............................................6

*Gedalia v. Whole Foods Mkt. Servs., Inc.*,
53 F. Supp. 3d 943 (S.D. Tex. 2014) ..................................................................................8

*Gen. Motors Corp. v. Brewer*,
966 S.W.2d 56 (Tex. 1998)...............................................................................................18

*Griggs v. State Farm Lloyds*,
181 F.3d 694 (5th Cir. 1999) .............................................................................................9

*Guerra v. Dematic Corp*,
No. 18-CV-376, 2020 WL 5995496 (D. Nev. Oct. 8, 2020) .................................................16

*Harris v. BMW of N. Am., LLC*,
No. 19-CV-16, 2020 WL 7081808 (E.D. Tex. Dec. 3, 2020).................................................25

*Hauck v. Advanced Micro Devices, Inc.*,
No. 18-CV-447, 2019 WL 1493356 (N.D. Cal. Apr. 4, 2019),
*aff'd*, 816 F. App'x 39 (9th Cir. 2020)...............................................................................15

*Henry Schein, Inc. v. Stromboe*,
102 S.W.3d 675 (Tex. 2002)............................................................................................16

v

*Hugh Symons Grp., plc v. Motorola, Inc.*,
    292 F.3d 466 (5th Cir. 2002) ...................................................................................... *passim*

*Iannacchino v. Ford Motor Co.*,
    888 N.E.2d 879 (Mass. 2008) ............................................................................10, 16

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*,
    No. 12-CV-87, 2013 WL 1194851 (D.S.C. Mar. 22, 2013) ....................................17

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    540 F. Supp. 2d 759 (S.D. Tex. 2007) ....................................................................7

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ................................................................................19

*In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*,
    No. 08-CV-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ................................15

*Kahn v. FCA US LLC*,
    No. 19-CV-127, 2019 WL 3955386 (C.D. Cal. Aug. 2, 2019).................................15

*Kaur v. World Bus. Lenders, LLC*,
    440 F. Supp. 3d 111 (D. Mass. 2020) ...................................................................16

*King v. Stryker Corp.*,
    No. 10-CV-3069, 2012 WL 12981763 (D.S.C. Apr. 3, 2012) ...............................10

*Lasao v. Stearns Lending Co.*,
    No. 10-CV-1864, 2011 WL 3273923 (D. Nev. July 29, 2011) ..............................10

*Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*,
    942 P.2d 182 (Nev. 1997) ....................................................................................24

*Lighthouse Grp., LLC v. Strauss*,
    No. 15-CV-2463, 2016 WL 562100 (D.S.C. Feb. 12, 2016)....................................7

*Lopes v. Commonwealth*,
    811 N.E.2d 501 (Mass. 2004) ...............................................................................23

*MAN Engines & Components, Inc. v. Shows*,
    434 S.W.3d 132 (Tex. 2014)..................................................................................17

*Martin v. Equifax Info. Servs., LLC*,
    No. 19-CV-3691, 2020 WL 1904496 (S.D. Tex. Apr. 17, 2020)..............................2

*Miller v. DePuy Synthes Sales, Inc.*,
    No. 17-CV-325, 2019 WL 4016207 (D. Nev. Aug. 26, 2019),
    *aff'd*, 837 F. App'x 472 (9th Cir. 2020)................................................................10

*Milliken v. Jacono*,
    103 A.3d 806 (Pa. 2014) ...................................................................................15

*Morgan v. Medtronic, Inc.*,
    172 F. Supp. 3d 959 (S.D. Tex. 2016) .................................................................21

*Morris v. BAC Home Loans Servicing, L.P.*,
    775 F. Supp. 2d 255 (D. Mass. 2011) ...................................................................7

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
    No. 20-CV-674A, 2021 WL 1147149 (D. Nev. Mar. 25, 2021) ...........................16

*Mulder v. Kohl's Dep't Stores, Inc.*,
    865 F.3d 17 (1st Cir. 2017) ..................................................................................6

*Munch v. Sears, Roebuck and Co.*,
    No. 06-CV-7023, 2008 WL 4450307 (N.D. Ill. Sept. 30, 2008) ........................12

*Murphy Oil USA, Inc. v. Love's Travel Stops & Country Stores, Inc.*,
    No. 18-CV-1345, 2021 WL 824647 (N.D. Tex. Mar. 3, 2021) ...........................23

*Palmetto Health Credit Union v. Open Sols. Inc.*,
    No. 08-CV-3848, 2010 WL 2710551 (D.S.C. July 7, 2010) ................................24

*Phillips v. S.C. State Univ.*,
    No. 2005-UP-320, 2005 WL 7084045 (S.C. Ct. App. May 12, 2005) .................10

*Platten v. HG Bermuda Exempted Ltd.*,
    437 F.3d 118 (1st Cir. 2006) ..............................................................................24

*Poole v. Nev. Auto Dealership Invs., LLC*,
    449 P.3d 479 (Nev. App. 2019) ..........................................................................13

*Ray v. Samsung Elecs. Am., Inc.*,
    No. 15-CV-8540, 2016 WL 3406127 (S.D.N.Y. June 17, 2016) .........................20

*Salinas v. Ford Motor Co.*,
    No. 15-CV-11, 2015 WL 13121265 (S.D. Tex. Sept. 3, 2015) ...........................19

*Sandviks v. PhD Fitness, LLC*,
    No. 17-CV-744, 2018 WL 1393745 (D.S.C. Mar. 20, 2018) ..............................21

*Santagate v. Tower*,
    833 N.E.2d 171 (Mass. App. Ct. 2005) ..............................................................23

*Santos v. SANYO Mfg. Corp.*,
    No. 12-CV-11452, 2013 WL 1868268 (D. Mass. May 3, 2013)..........................24

*Sattari v. Wash. Mut.*,
    475 F. App'x 648 (9th Cir. 2011) ........................................................................7

*Scarlott v. Nissan N. Am., Inc.*,
    771 F.3d 883 (5th Cir. 2014) ............................................................................22

*Schnellmann v. Roettger*,
    645 S.E.2d 239 (S.C. 2007) ..............................................................................16

*Sciacca v. Apple, Inc.*,
    362 F. Supp. 3d 787 (N.D. Cal. 2019) ............................................................10

*Sergeant Oil & Gas Co. v. Nat'l Maint. & Repair, Inc.*,
    861 F. Supp. 1351 (S.D. Tex. 1994) ................................................................13

*Shafer v. LG Elecs. U.S.A., Inc.*,
    No. 09-CV-105, 2010 WL 8757823 (N.D. Tex. Sept. 30, 2010) .........................11

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., Inc.*,
    890 F.2d 108 (9th Cir. 1989) ............................................................................18

*Spera v. Samsung Elecs. Am., Inc.*,
    No. 12-CV-5412, 2014 WL 1334256 (D.N.J. Apr. 2, 2014) ................................20

*Stolzoff v. Waste Sys. Int'l, Inc.*,
    792 N.E.2d 1031 (Mass. App. Ct. 2003) .........................................................25

*Strauss v. Ford Motor Co.*,
    439 F. Supp. 2d 680 (N.D. Tex. 2006) ......................................................17, 18

*Taliaferro v. Samsung Telecomms. Am., LLC*,
    No. 11-CV-1119, 2012 WL 169704 (N.D. Tex. Jan. 19, 2012) .........................22

*Underwood v. Risman*,
    605 N.E.2d 832 (Mass. 1993) ..........................................................................13

*United Teacher Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*,
    414 F.3d 558 (5th Cir. 2005) ............................................................................10

*VeroBlue Farms USA, Inc. v. Wulf*,
    465 F. Supp. 3d 633 (N.D. Tex. 2020) ............................................................23

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ..............................................................9

*Walters v. Maytag Corp.*,
    No. 07-CV-3669, 2008 WL 11349737 (D.S.C. June 17, 2008) .....................17, 18

*Walters v. Pella Corp.*,
   No. 14-CV-544, 2015 WL 2381335 (D.S.C. May 19, 2015) .................................................9

*Weske v. Samsung Elecs., Am., Inc.*,
   42 F. Supp. 3d 599 (D.N.J. 2014) .....................................................................................20

*Williams v. VMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) .............................................................................................6

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ..........................................................................................13

## **Statutes**

15 U.S.C. § 2310(d)(3) .....................................................................................................22

15 U.S.C. § 2310(d)(3)(C) ................................................................................................22

Mass. Gen. Laws Ann. ch. 106, § 2-314(2)(c) ..................................................................17

Mass. Gen. Laws Ann. ch. 106, § 2-607(3)(a) ..................................................................21

Nev. Rev. Stat. Ann. § 104.2314(2)(c) ..............................................................................17

Nev. Rev. Stat. Ann. § 104.2607(3)(a) ..............................................................................21

S.C. Code Ann. § 36-2-314(2)(c) ......................................................................................17

S.C. Code Ann. § 36-2-607(3)(a) ......................................................................................21

Tex. Bus. & Com. Code Ann. § 2.314(b)(3) ......................................................................17

Tex. Bus. & Com. Code Ann. § 2.607(c)(1) ......................................................................21

Tex. Bus. & Com. Code Ann. § 2.607 cmt. 4 ....................................................................21

Tex. Bus. & Com. Code Ann. § 17.565 .............................................................................25

## **Other Authorities**

Fed. R. Civ. P. 12(b) ..........................................................................................................1

Restatement (Second) of Torts § 551 (1977) ....................................................................10

*Features, Pros & Cons*, Bellingham Electric (Sept. 10, 2020),
   https://blog.bellinghamelectric.com/blog/bosch-black-stainless-steel-features-pros-cons ........4

Kimberly Janeway, *The Appeal of Black Stainless Steel Appliances*, Consumer
Reports (Feb. 11, 2018), https://www.consumerreports.org/kitchen-
appliances/the-appeal-of-black-stainless-appliances/ ....................................................3, 15, 16

*Media*, Consumer Reports, https://www.consumerreports.org/cro/about-us/what-
we-do/media-page/index.htm (last visited Aug. 25, 2021).......................................................3

Defendant Samsung Electronics America, Inc. ("SEA") moves to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b).  Defendants also submit with this motion an Appendix summarizing each Plaintiff's claims and the arguments in this motion applicable to each Plaintiff.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Four purchasers of Samsung kitchen appliances with a finish known as black stainless steel accuse SEA of fraudulently "concealing and omitting that the finish is a thin plastic coating—rather than a sturdy metal finish," and allege a miscellany of cosmetic issues with their appliances.  But Plaintiffs' own complaint demonstrates there was no fraud or concealment, as years-old news publications state that the finish consists of an "acrylic coating."  Plaintiffs have pleaded themselves out of their claims with their brazen contradictions.

That is just the first of a long series of fatal flaws in Plaintiffs' claims.  Plaintiffs have failed to adequately allege any actionable misstatement by SEA, a universal defect, or knowledge by SEA of such a defect.  Plaintiffs also allege no facts supporting reliance or transaction causation.  On the contrary, Plaintiffs allege that they "researched" their purchases—which would have sent them straight to the information they falsely allege was concealed from them.

Plaintiffs' implied warranty claims are equally meritless.  It is undisputed that SEA's limited warranty both excludes coverage for cosmetic issues and conspicuously disclaims implied warranties.  Plaintiffs cannot circumvent that exclusion by suing in implied rather than express warranty.  Plaintiffs' implied warranty claims also fail because they did not provide the requisite pre-suit notice and have not adequately pleaded that the aesthetic imperfections they complain about render their kitchen appliances unusable for their ordinary purposes.  Plaintiffs' two other claims, under the Magnuson-Moss Act and unjust enrichment, are predicated respectively on their warranty and fraud claims, and so fall together with those claims.

1

Samsung's black stainless steel kitchen appliances are popular and highly rated. Dissatisfied with the fact that SEA's warranty excludes coverage for cosmetic issues, Plaintiffs cherry-picked anecdotes from the internet, and now assert demonstrably false fraud allegations—refuted by the very documents on which their complaint relies—in an effort to parlay their dissatisfaction into a nationwide class action lawsuit.  The Court should dismiss all claims.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

**Issue:**  Whether Plaintiffs allege sufficient facts to survive a motion to dismiss their claims for fraudulent concealment; violations of Texas, Massachusetts, Nevada, and South Carolina consumer fraud statutes; implied warranty; Magnuson-Moss Warranty Act; and unjust enrichment.

**Standard of Review:**  Under Rule 12(b)(6), courts must dismiss a complaint that fails to contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  Well-pleaded factual allegations must be taken as true, but "[c]ourts do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Martin v. Equifax Info. Servs., LLC*, No. 19-CV-3691, 2020 WL 1904496, at *1 (S.D. Tex. Apr. 17, 2020) (quotation marks omitted).  Plaintiffs' claims sounding in fraud must also be pled with particularity under Rule 9(b), as discussed below.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Adam Lee filed his original complaint on April 21, 2021.  On July 19, 2021, Lee and three additional plaintiffs (Kimberly Einiger, Howard Roscoe, and Anastasia Danilova) filed a First Amended Complaint ("FAC") asserting 11 claims on behalf of putative nationwide classes and four state classes.  SEA now moves to dismiss all claims.

## STATEMENT OF FACTS

### A.    SEA Sells Black Stainless Steel Kitchen Appliances

SEA sells household kitchen appliances, which are available in a number of different

finishes.  FAC ¶¶ 3, 5.  This lawsuit involves the black stainless steel finish, which SEA and other companies offer for a range of kitchen appliances, including refrigerators, ovens, gas ranges, gas cooktops, electric cooktops, range hoods, microwaves, and dishwashers.  *Id.* ¶ 3.

The black stainless steel finish is a coating applied over ordinary stainless steel, a fact that is widely understood, both in the home appliance industry and in the consumer market for home appliances.  *See id.* ¶¶ 4, 75.  For example, Plaintiffs themselves specifically cite a February 2018 article in the popular and nationally-recognized publication *Consumer Reports*, whose website boasts 13 million monthly unique visitors,[1] explaining that Samsung's black stainless finish consists of an "acrylic coating" over stainless steel.[2]  The article further quotes, at length, a Samsung spokesperson disclosing that the black color finish is a coating:

> "There are two coating layers," Samsung says.  "The first layer is for color, and the second is for resisting fingerprints and smudges."  That makes it easier to maintain than regular stainless, but scratches can be seen more easily because of the dark color, the manufacturer says.  The transparent coating can protect the scratch, but if it's very deep, the stainless underneath will show through.  Touch-up paint may be used.  However, because the color coating is semitransparent, exact color recovery is difficult.

Decl. of Elie Salamon ("Salamon Decl."), Ex. A.  The article also explains that other home appliance companies' black stainless steel appliances are "[s]tainless coated with a special material" or "[a] tinted coating over steel" or "[s]tainless with a protective coating of polymer." *Id.*  Another publication cited by the FAC makes a similar observation:  "Although each manufacturer has a slightly different take on the black stainless steel finish, their technique for

---

[1] *Media*, Consumer Reports, https://www.consumerreports.org/cro/about-us/what-we-do/media-page/index.htm (last visited Aug. 25, 2021).

[2] Kimberly Janeway, *The Appeal of Black Stainless Steel Appliances*, Consumer Reports (Feb. 11, 2018), https://www.consumerreports.org/kitchen-appliances/the-appeal-of-black-stainless-appliances/ (attached as Ex. A to Decl. of Elie Salamon).  Plaintiffs reference this article throughout the FAC (at ¶¶ 39, 51, 60, 67), and the Court may therefore consider it in deciding this motion because it is "referred to in the pleadings and [is] central to [Plaintiffs'] claims."  *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014); *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 852 n.12 (S.D. Tex. 2018).

3

creating the finish is pretty similar:  the black finish is applied over the stainless steel base as a type of foil."[3]

### B.   The Express Warranties and Disclaimers for Plaintiffs' Purchases

All of Samsung's black stainless steel kitchen appliances are sold with a one-year express Limited Warranty, which is prominently displayed in the product's user manual.  *See* Decl. of Eduardo Turi Batazim ¶¶ 4, 6 ("Batazim Decl.").  The user manual's warranty section contains large text at the top of the page, offset from the surrounding text, alerting the purchaser to the "Limited Warranty."  *See id.* ¶ 7.  That text is either bold, capitalized, or both.  *Id.*

The Limited Warranty warrants against various defects for one year following purchase. *See id.* ¶ 8.  With the exception of one plaintiff's product, the Limited Warranty expressly excludes coverage of "cosmetic damage" to the "finish."  *See id.* ¶ 9.  And depending on the product and model, each Limited Warranty either (1) expressly disclaims "ALL WARRANTIES . . . INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES . . . OF MERCHANTABILITY," or (2) limits implied warranties to one year.  *See id.* ¶¶ 11, 13.

### C.   Plaintiffs Purchase Samsung Kitchen Appliances Based on Their Research and Positive Experiences with Samsung Appliances

Plaintiffs are individuals in four states who purchased various Samsung black stainless steel kitchen appliances between 2016 and 2020.  FAC ¶¶ 29-32.  Lee (Texas), Roscoe (South Carolina), and Danilova (Massachusetts) allege that they "began researching kitchen appliances" before purchasing them and were "drawn to Samsung's appliances, based in part upon [their prior] favorable experiences with Samsung products."  *Id.* ¶¶ 36, 57, 64.  Einiger (Nevada) alleges that

---

[3] Meredith Czymmek, *Bosch Black Stainless Steel - Features, Pros & Cons*, Bellingham Electric (Sept. 10, 2020), https://blog.bellinghamelectric.com/blog/bosch-black-stainless-steel-features-pros-cons  (attached as Ex. B to Salamon Decl.).  The Court may consider this webpage because Plaintiffs refer to and rely on it (at FAC ¶ 75). *See supra* note 2.

she "began researching kitchen appliances and found that she was drawn to Samsung's appliances, based in large part upon their unique 'black stainless steel' finish and her belief that Samsung was a reliable brand." *Id.* ¶ 48.  Lee ultimately purchased a microwave in February 2016, a dishwasher in September 2016, and a gas range on April 17, 2017.  *Id.* ¶ 37.  Danilova bought a dishwasher and refrigerator in August 2016.  *Id.* ¶ 65.  Einiger bought a refrigerator and gas range on June 26, 2020.  *Id.* ¶ 49.  And Roscoe bought a refrigerator, oven, and microwave in May 2020.  *Id.* ¶ 58.

Plaintiffs allege experiencing different issues at different times with different appliances. Lee alleges that, three years after purchasing his appliances, he noticed "peeling" and "flaking" on his gas range—though he does not allege noticing anything of the sort on his earlier-purchased microwave or dishwasher.  *Id.* ¶¶ 7, 41.  Einiger alleges that she discovered "discoloring" on her gas range after her first time using it, and saw the same discoloring on her refrigerator a few months later.  *Id.* ¶¶ 9, 53-54.  Roscoe alleges that "in late 2020," a few months after his purchase, he discovered the finish on his oven and refrigerator (but not microwave) was "peeling off" and "flaking."  *Id.* ¶¶ 12, 62.  Danilova alleges that in "mid-2021," "after about four years of use," the finish on her dishwasher and fridge began "peeling off" and "flaking."  *Id.* ¶¶ 13, 69.

## D. SEA's Marketing

Plaintiffs allege that SEA knowingly and falsely advertised its black stainless steel kitchen appliances as a "premium design" and "premium-looking finish," when, in fact, these products use "a thin plastic coating—rather than a colored metal finish"—and are "defective" in that "the exterior finish of the appliances will peel, chip, flake, discolor, bubble, and prematurely degrade during the course of the ordinary and expected use of the appliances."  FAC ¶¶ 39, 60, 76, 99.  No Plaintiff alleges reviewing any advertisement prior to making a purchase.

## E. Internet Comments About Issues with Other Kitchen Appliances

Plaintiffs also allege that SEA "fraudulently concealed" the alleged defect in the black

stainless steel finish.  FAC ¶ 130.  In support, the FAC includes scattered internet comments about issues with the black stainless steel finish on different Samsung kitchen appliances.  *See id.* ¶¶ 42-44.  These unverified comments are mined from publicly available online sources and span a three-year period beginning in July 2018.  *Id.*

## ARGUMENT

**I.     Plaintiffs' Consumer Fraud and Fraudulent Concealment Claims Fail (Counts I, V, VII, IX, XI)**

Plaintiffs assert claims under the Texas Deceptive Trade Practices Act ("DTPA"), the Nevada Deceptive Trade Practices Act ("NDTPA"), the South Carolina Unfair Trade Practices Act ("SCUTPA"), and the Massachusetts consumer protection law ("Chapter 93A"), as well as common-law "fraudulent concealment" claims.  These claims, all of which sound in fraud, fail at every step.  Plaintiffs fail to identify a misrepresentation or omission, a necessary element of any fraud claim.  They fail to plausibly allege the existence of a defect SEA could have concealed, fail to plausibly allege that SEA had pre-sale knowledge of the purported defect, and admit that their (deficient) allegations of pre-sale knowledge depend entirely on public information on the internet, to which they also had access.  Plaintiffs also fail to plausibly allege reliance or causation.

### A.     The Fraud Claims Must Be Pleaded with Particularity

Plaintiffs' state statutory claims and fraudulent concealment claims sound in fraud.  *See* FAC ¶¶ 130, 193, 197, 228, 232, 262, 266, 296, 300.  They must therefore satisfy the particularity requirements of Rule 9(b), which "appl[ies] to all cases where the gravamen of the claim is fraud." *ASI Lloyds v. Newman*, No. 12-CV-1451, 2012 WL 13042502, at *4 (S.D. Tex. Nov. 27, 2012) (quotation marks omitted).[4]  Under Rule 9(b), "articulating the elements of fraud with particularity

---

[4] *See also, e.g., Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21 (1st Cir. 2017) (Chapter 93A); *Allstate Ins. Co. v. Belsky*, No. 15-CV-2265, 2017 WL 7199651, at *7 (D. Nev. Mar. 31, 2017) (NDTPA); *Davis v. Citimortgage, Inc.*, No. 15-CV-4643, 2016 WL 4040084, at *2 (D.S.C. July 28, 2016) (SCUTPA); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (DTPA and common law fraud).

requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. VMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

Rule 9(b) fully applies in the fraud-by-omission context. *See Berry v. Indianapolis Life Ins. Co*., 600 F. Supp. 2d 805, 821 (N.D. Tex. 2009). Plaintiffs therefore must allege facts showing, among other things, that a defendant had a duty to disclose under Rule 9(b). *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 771 (S.D. Tex. 2007). "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll v. Fort James Corp*., 470 F.3d 1171, 1174 (5th Cir. 2006) (quotation marks omitted).

### B.    Plaintiffs Do Not Plausibly Allege Any Misrepresentations

All four state consumer fraud statutes require an affirmative misrepresentation or omission.[5] Plaintiffs  allege that the "black stainless steel" label is itself misleading because SEA did not disclose that the finish was actually a plastic coating. *See* FAC ¶¶ 4, 193, 228, 262, 296. This theory is flawed many times over. First, Plaintiffs' own sources—including the nationally-acclaimed *Consumer Reports* publication cited in Paragraphs 39, 51, 60, 67 of the FAC—plainly *disclose* that Samsung's black stainless steel consists of an "acrylic" coating on top of stainless steel. *See* Exs. A, B. Other sources relied on by Plaintiffs also *disclose* that "each manufacturer" shares the same basic "technique for creating" a black stainless steel appliance: "the black finish is applied over the stainless steel base as a type of foil." Ex. B; *see* FAC ¶ 75. It is implausible

---

[5] *See Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (DTPA); *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 258-59 (D. Mass. 2011) (Chapter 93A); *Lighthouse Grp., LLC v. Strauss*, No. 15-CV-2463, 2016 WL 562100, at \*3 (D.S.C. Feb. 12, 2016) (SCUTPA); *Sattari v. Wash. Mut.*, 475 F. App'x 648, 648 (9th Cir. 2011) (NDTPA).

that a *reasonable* consumer—and particularly consumers like Plaintiffs who admit to undertaking extensive pre-purchase "research[]," *see* FAC ¶¶ 36, 48, 57, 64—could have been deceived by that label.  *See, e.g.*, *Ford v. Hotwire, Inc.*, No. 07-CV-1312, 2007 WL 6235779, at *4 (S.D. Cal. Nov. 19, 2007) (statement not deceptive because "complaint acknowledges that both the amount and mandatory nature of the resort fee . . . is readily available public information disclosed on the hotel's own website"); *Barrett v. Milwaukee Elec. Tool, Inc.*, No. 14-CV-1804, 2016 WL 4595947, at *5 (S.D. Cal. Jan. 26, 2016) (relying on disclosures in "video . . . posted on defendant's website" and cited in plaintiff's complaint to reject claim that plaintiff was deceived by defendant's ad).

Moreover, the "black stainless steel" label is factually accurate and consistent with the sources cited in the FAC:  the appliances are black in color, and they are made of stainless steel. Plaintiffs nonetheless appear to take the position that the phrase somehow connotes that the steel used to make the appliance is black in its natural state as a raw material, rather than having a coating or finish.  *See* FAC ¶¶ 4, 193, 228, 262, 296.  But Plaintiffs do not suggest that SEA ever said there was no coating or finish.  To the contrary, the Samsung websites they cite state that "black stainless steel" is a "color" option.[6]  And this allegation flies in the face of publicly available materials, such as the February 2018 *Consumer Reports* article Plaintiffs rely upon, which also confirms that SEA's use of the term "black stainless steel" for its kitchen appliances is consistent with the industry standard.  *See Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943, 958 (S.D. Tex. 2014) ("Plaintiffs do not show how Whole Foods's use of the term ['All Natural'] is any different from other organic food providers.").  Plaintiffs' contorted understanding is not a plausible misrepresentation (or omission), any more than offering a blue wood door implies that the wood was blue in its natural state rather than painted.

---

[6] This is apparent from clicking on any product link in each of the Samsung websites cited at footnotes 1 (black stainless steel refrigerators), 2 (black stainless steel ranges), and 8 (black stainless steel dishwashers) of the FAC.

The FAC alleges two other purported misrepresentations: a Samsung website that lists black stainless steel appliances as one of many "premium designs" that Samsung offers, and the *Consumer Reports* article quoting an unidentified Samsung spokesperson calling black stainless steel a "premium-looking finish."   FAC ¶¶ 39, 51, 60, 67.   But words like "superior" or "premium"—without any comparator—fall squarely into the category of statements that courts consider nonactionable "puffery," not deception.  *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (rejecting consumer fraud theory when statements amounted to "non-actionable puffery [rather] than actionable representations of specific material fact"); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013) ("The term 'premium,' however, is mere puffery . . . .").  The cited website simply lists black stainless steel appliances alongside a variety of other "premium designs," such as the "Fingerprint Resistant Tuscan Stainless Steel" design. *See, e.g.*, FAC ¶ 39 n.13.  Indeed, words like "premium" contain no factual representation at all.  They cannot support a fraud or deception claim because they "obviously" are "not specific and measurable claims of product superiority." *Walters v. Pella Corp.*, No. 14-CV-544, 2015 WL 2381335, at *5 (D.S.C. May 19, 2015).

### C.   Plaintiffs Do Not Plausibly Allege Actionable Omissions

Evidently recognizing the weakness of their theory that they were duped notwithstanding SEA's express disclosures, Plaintiffs assert an equally spurious fraud-by-omission claim based on SEA's alleged failure to affirmatively disclose a "defect" that caused the black stainless steel to chip, flake, discolor, bubble, or peel. *See, e.g.*, FAC ¶¶ 24, 71, 76, 80, 82.  This theory fails because Plaintiffs do not allege any facts, let alone particularized ones, suggesting that the appliances actually have a defect, dooming Plaintiffs' statutory fraud and fraudulent concealment claims.

#### 1.   *Plaintiffs Do Not Adequately Allege that the Appliances Are Defective*

To establish that SEA fraudulently failed to disclose a defect, Plaintiffs first must

adequately allege that there is one.[7]  But the FAC merely asserts in conclusory terms that SEA "failed to adequately design and/or manufacture the Black Stainless Steel Appliances to ensure that they were and are free from the defect that causes peeling, chipping, flaking, discoloration, and premature degradation of the 'black stainless steel' finish."  FAC ¶ 80.  This offers no clues as to the nature of the alleged "defect":  it neither identifies a particular design or manufacturing defect, nor alleges how such defect caused any of the widely varying issues Plaintiffs experienced.

Inherent in virtually any product with an applied coating or finish is the potential for exterior deterioration over time due to wear and tear, environmental factors, friction and physical contact, failure to follow the product user manual general care instructions, or any number of other factors—none of which involves a universal defect.  On this note, Plaintiffs' own complaint is inconsistent, vacillating between allegations of a "design" defect and "manufacturing" defect, and sometimes both.  *Id.* ¶¶ 6, 80, 130.  This impressionistic pleading approach does not even satisfy Rule 8(a), let alone Rule 9(b).  *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 797, 800 (N.D. Cal. 2019) (dismissing consumer fraud claim where "Plaintiff's description of the alleged defect identifies only the consequences of the alleged defect (*i.e.*, cracking, shattering, or detaching), but is notably silent on identifying the defect that causes such consequences").[8]

---

[7] Each of the relevant jurisdictions requires proof of a defect under these circumstances.  *King v. Stryker Corp.*, No. 10-CV-3069, 2012 WL 12981763, at *6 (D.S.C. Apr. 3, 2012) (rejecting SCUTPA claim because plaintiff did not show product was defective); *Phillips v. S.C. State Univ.*, No. 2005-UP-320, 2005 WL 7084045, at *6 (S.C. Ct. App. May 12, 2005) (similar); *Iannacchino v. Motor Co.*, 888 N.E.2d 879, 888 (Mass. 2008) (dismissing Chapter 93A claim against car manufacturer because plaintiffs failed to allege non-compliance with a specific test that would render its car doors defective); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 858-59 (Tex. App. 2005) (dismissing DTPA claim because plaintiffs failed to show a defect in seatbelt manufacture); *see also Miller v. DePuy Synthes Sales, Inc.*, No. 17-CV-325, 2019 WL 4016207, at *6 (D. Nev. Aug. 26, 2019) (granting summary judgment on strict products liability and negligent products liability where plaintiff failed to plead a defect in orthopedic implant), *aff'd*, 837 F. App'x 472 (9th Cir. 2020).

[8] *See also, e.g.*, *Stewart v. Electrolux Home Prods.*, 304 F. Supp. 3d 894, 907 (E.D. Cal. 2018) (dismissing fraudulent concealment claim where plaintiffs alleged oven "burns out" during self-cleaning, but oscillated between varying defect concepts making it "difficult to know the specific nature of *what* defect or defects Electrolux allegedly concealed from Plaintiffs"); *Carlson v. Gillette Co.*, No. 14-CV-14201, 2015 WL 6453147, at *7 (D. Mass. Oct. 23, 2015) ("general allegations that Duracell batteries 'leak' (or had the 'potential to' leak) under certain conditions" did not adequately allege a defect).

Plaintiffs' allegations that their own anecdotal experiences suggest a global defect in every Samsung black stainless steel kitchen appliance ever sold also fail.  The "law does not generally recognize a product failure standing alone as proof of a product defect."  *Garcia v. Deere & Co.*, No. 20-CV-95, 2021 WL 3745188, at *2 (S.D. Tex. Mar. 23, 2021); *see also Shafer v. LG Elecs. U.S.A., Inc.*, No. 09-CV-105, 2010 WL 8757823, at *4 (N.D. Tex. Sept. 30, 2010) (microwave's malfunction did not indicate product defect under DTPA).  Here, material differences in Plaintiffs' experiences undercut rather than support their allegations that all Samsung black stainless kitchen products share a common defect.  Plaintiffs do not explain how the same alleged universal "defect" could cause "discoloration" in some appliances, FAC ¶¶ 9, 53-54, but "peeling" or "flaking" in others, *id.* ¶¶ 7-8, 62, 69, and even "bubbl[ing]" or "rusting" in others, *id.* ¶¶ 6, 44.  Nor do they allege facts to explain why Einiger purportedly experienced her "discoloration" after her first week owning the stove, *id.* ¶ 9, while Lee's range did not peel or flake for nearly three years, *id.* ¶ 41.  And while Lee and Roscoe each bought three appliances, they allege that only certain ones—Lee's range and Roscoe's oven and refrigerator—ever peeled or flaked.  *Id.* ¶¶ 7, 12.  These allegations are inconsistent with, and do not plead with particularity, the existence of a universal defect.

Plaintiffs' citation to 26 undated and unverified internet posts does not make their "defect" allegations any more plausible.  *Id.* ¶ 42.  In *Carlson v. Gillette Co.*, No. 14-CV-14201, 2015 WL 6453147, at *2 (D. Mass. Oct. 23, 2015), the court rejected a similar claim where the plaintiff relied on "at least thirty" public complaints to support a Chapter 93A claim for defects in Duracell batteries.  The court held that "[a]n indication that 'numerous' batteries leaked over a period of years, . . . without any other datapoints, such as the total amount of batteries sold, or the leakage rates of comparable batteries sold by other manufacturers, hardly supports an inference that any substantial leakage problem existed."  *Id.* at *7.

Similarly, here, the low number of reported incidents renders a uniform defect across Samsung black stainless kitchen appliances implausible.  SEA sells over 80 different product lines with black stainless steel.  FAC ¶ 3.  The mere fact that a tiny fraction of consumers over a period of years observed anecdotal "chipping," "flaking," "bubbling," or "discoloration" on their appliances does not plausibly suggest a "defect," especially since these issues can manifest for any number of reasons unrelated to a defect.  *See Munch v. Sears, Roebuck and Co.*, No. 06-CV-7023, 2008 WL 4450307, at *3, *6 (N.D. Ill. Sept. 30, 2008) (dismissing claims alleging washing machine defects because plaintiffs did not provide "any standard by which to measure the alleged failure rate" and "the numbers of repairs alleged . . . are a small portion of the 1.5 million machines sold").  Moreover, the FAC does not identify a single internet comment until 2018, more than three years after SEA launched the black stainless steel finish in the United States.  *See* FAC ¶ 42.

Plaintiffs thus fail to identify a single fact to suggest that their individualized problems—combined with a few other reports of physical damage to the exterior of kitchen appliances on the internet—infected every black stainless steel kitchen appliance ever sold by SEA.  That inference is implausible under any standard, and especially under the lens of Rule 9(b).

And even if all this information was not available publicly, Plaintiffs' fraudulent concealment claims would still fail because Plaintiffs have failed to adequately allege a "special circumstance" supporting a duty to disclose, as is required under each state's law.[9]

---

[9] *See Costa v. FCA US LLC*, No. 20-CV-11810, 2021 WL 2338963, at *11-12 (D. Mass. June 8, 2021) (duty to disclose only where (i) "fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction" (quotation marks omitted)); *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 849-50 (S.D. Tex. 2018) (duty to disclose arises only where "fiduciary or confidential relationship"); *Lasao v. Stearns Lending Co.*, No. 10-CV-1864, 2011 WL 3273923, at *6 (D. Nev. July 29, 2011) (duty to disclose exists only where "parties enjoy a 'special relationship'"); *Ardis v. Cox*, 431 S.E.2d 267, 270-71 (S.C. Ct. App. 1993) (duty to disclose only where (i) "preexisting definite fiduciary relation between the parties," (ii) "one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question," and (iii) transaction "is intrinsically fiduciary (quotation marks omitted)); *see also* Restatement (Second) of Torts § 551 (1977) (explaining "[l]iability for [n]ondisclosure" and when "duty to disclose" arises).

### 2. *Plaintiffs Have Failed to Allege Pre-Sale Knowledge*

Even assuming a defect, Plaintiffs' claims fail because Plaintiffs do not allege facts establishing that SEA knew of any such defect at the time of their purchases.  "There is no liability for failing to disclose what a person does not know," *Underwood v. Risman*, 605 N.E.2d 832, 835 (Mass. 1993); *accord Sergeant Oil & Gas Co. v. Nat'l Maint. & Repair, Inc.*, 861 F. Supp. 1351, 1362 (S.D. Tex. 1994) ("the failure to disclose facts by one who has no knowledge of those facts . . . cannot serve as a basis for liability under the DTPA"); *Poole v. Nev. Auto Dealership Invs., LLC*, 449 P.3d 479, 483 (Nev. App. 2019) (NDTPA claim requires that defendant be "aware that the facts exist that constitute the act or omission").

Plaintiffs rely exclusively on the aforementioned internet posts to plead SEA's supposed knowledge of the purported defect in each appliance.  FAC ¶ 18.  The FAC, however, makes no effort to identify the dates on which any of the 26 comments was posted online.  That failure alone dooms Plaintiffs' claims because, without that information, there is no basis to determine whether the comments were posted before Plaintiffs' purchases.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1139 (9th Cir. 2012) ("[C]ourts have rejected undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect *at the time of sale*.").  The four corners of the FAC thus do not establish pre-sale knowledge, and certainly not under Rule 9(b).

Despite this deficiency, SEA has endeavored to assemble and date the 26 internet comments identified in the FAC.  *See* Salamon Decl. ¶ 5, Ex. C ("Ex. C").  The dates only confirm the FAC's failure to plead pre-sale knowledge.  As an initial matter, the earliest of the 26 comments was posted in July 2018, years after Lee and Danilova purchased their appliances.  FAC ¶¶ 37, 42, 65.  There are no allegations in the FAC that SEA knew of any internet comments—much less any

defects—when Lee and Danilova purchased their appliances in 2016 and 2017.

Einiger's and Roscoe's allegations fare no better. Only 12 of the 26 comments were posted before their May and June 2020 purchases. *See id.* ¶¶ 49, 58; Ex. C. *None* of those internet comments concern "discoloration," the problem that Einiger alleges she experienced. FAC ¶ 9. Moreover, 6 of the 12 internet comments that predate Roscoe's and Einiger's purchases were published on either "houzz.com" (a public consumer forum discussing black stainless steel appliances generally) or BestBuy.com, not on Samsung's website. *See* Ex. C. Plaintiffs offer no plausible basis to infer that SEA monitored either website and plead no facts to plausibly establish that SEA saw those comments prior to Einiger's or Roscoe's purchases. *See id.*; FAC ¶ 42.

Even if all six comments concerned the same problem Einiger and Roscoe experienced, such a small number of anecdotal and unverified internet posts cannot plausibly put SEA on notice of a defect in every single one of its black stainless steel kitchen appliances. "Generally, consumer complaints by themselves do not establish a manufacturer's knowledge," unless they appear in an "unusually high volume" and are pleaded with "facts showing how the defendant [received and] responded to those complaints." *Click v. Gen. Motors LLC*, No. 18-CV-455, 2020 WL 3118577, at *7 (S.D. Tex. Mar. 27, 2020); *see Bianchi v. Haier U.S. Appliance Sols., Inc.*, No. 20-ADCV-22, 2020 WL 6547132, at *3 (Mass. Dist. Ct. Sept. 30, 2020) (rejecting argument that "defendant knew [its oven igniter] was defective, based upon nothing more than seven consumer complaints about the same model oven out of over 66,000 it manufactured"); *Berenblat v. Apple, Inc.*, No. 08-CV-4969, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (allegations about "complaints posted on Apple's consumer website merely establish the fact that some consumers were complaining").

### 3. Plaintiffs' Reliance on Popular and Publicly Available Sources Refute Their Allegations that SEA Concealed Anything

Even if six unverified internet comments could establish pre-sale knowledge (they cannot),

those comments cannot support an omission-based fraud claim here because they were public, posted and available on popular consumer-facing webpages, *including Samsung's website*, and not concealed from anyone.  FAC ¶¶ 42-43.  Plaintiffs admit as much:  "*Based on publicly available information*, Defendant has known of the defect for several years, *by way of consumer complaints . . . .*"  *Id.* ¶ 18 (emphases added).  Plaintiffs identify no other source of pre-sale knowledge, and this concession directly undercuts their conclusory assertion that SEA "had *exclusive* knowledge of the material facts not known to Plaintiffs."  *Id.* ¶ 77 (emphasis added); *see Kahn v. FCA US LLC*, No. 19-CV-127, 2019 WL 3955386, at *4 (C.D. Cal. Aug. 2, 2019) (emphasizing incoherence of fraud claim based on "complaints posted on publicly-accessible websites").

Plaintiffs' allegations also ignore the FAC's own sources, which identify a Samsung representative explaining in *Consumer Reports* that the black stainless steel is an "acrylic" finish that may be more susceptible to scratches.  Ex. A.  To the extent the existence of a thin plastic coating is a "defect," information about the "defect" was readily available to anyone who researched Samsung appliances, as each Plaintiff did before purchasing their appliances.  FAC ¶¶ 36, 48, 57, 64.  Put simply, "[o]ne cannot withhold or conceal what has already been made a matter of public record."  *Cordova v. Johnson*, 993 F. Supp. 473, 515 (W.D. Tex. 1998); *accord In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, No. 08-CV-939, 2009 WL 2940081, at *12 (D.N.J. Sept. 11, 2009) ("[T]he notion that [the defendant] could 'conceal' something that was so well covered in the media defies logic.").[10]

---

[10] *See also, e.g.*, *Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-447, 2019 WL 1493356, at *13 (N.D. Cal. Apr. 4, 2019) (plaintiff "cannot plausibly allege that AMD is liable for failing to disclose to [plaintiff] information that was already public"), *aff'd*, 816 F. App'x 39 (9th Cir. 2020); *Ferranti v. Hewlett-Packard Co.*, No. 13-CV-3847, 2014 WL 4647962, at *5 (N.D. Cal. Sept. 16, 2014) (dismissing nondisclosure claim relying on "consumer complaints posted on HP Support Forums and poor reviews on other websites"); *Milliken v. Jacono*, 103 A.3d 806, 811 (Pa. 2014) (no duty to disclose "well-publicized" information).

### D.       Plaintiffs Do Not Plausibly Allege Reliance or Causation

Plaintiffs also fail to allege reliance or causation, central elements of all their fraud claims.[11] None of the Plaintiffs allege that they viewed any specific SEA advertisement, nor do they identify any "type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Carroll*, 470 F.3d at 1174.

Rather, Plaintiffs allege that they bought their products because of generalized "prior favorable experiences" with SEA products and a "belief" in the "reliab[ility]" of Samsung's "brand." *Id.* ¶¶ 36, 48, 57, 64.  That is the opposite of relying on alleged misrepresentations or omissions by SEA pertaining specifically to black stainless steel products.  Plaintiffs' allegations that they researched their appliances before purchasing them also cut against reliance.  Plaintiffs' own sources, *e.g.*, the popular consumer information repository *Consumer Reports*, make clear that the black stainless steel finish is an "acrylic" coating that is not indestructible.  *See* Ex. A. Likewise, Plaintiffs point to publicly-available online comments pre-dating their purchases, including *Houzz*, the leading home renovation and improvement website for homeowners.  *See* FAC ¶ 42.  If Plaintiffs had put a modicum of research into their purchase decisions, they would have seen the same type of consumer allegations regarding miscellaneous issues on public websites that they now rely upon to accuse SEA of defrauding them.

Courts in each of the relevant jurisdictions routinely dismiss consumer fraud claims for lack of reliance or causation.[12]  The same outcome is warranted here.

---

[11] Reliance is an element of the DTPA, NDTPA, SCUTPA, and fraudulent concealment claims.  *See Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002); *Guerra v. Dematic Corp*, No. 18-CV-376, 2020 WL 5995496, at *2 (D. Nev. Oct. 8, 2020); *Schnellmann v. Roettger*, 645 S.E.2d 239, 241 (S.C. 2007).  And the Massachusetts statute requires plaintiffs to allege "a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception."  *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 886 n.12 (Mass. 2008).

[12] *See, e.g.*, *Brodsky v. Match.com, LLP*, No. 09-CV-2066, 2010 WL 3895513, at *2 (N.D. Tex. Sept. 30, 2010); *Motogolf.com, LLC v. Top Shelf Golf, LLC*, No. 20-CV-674A, 2021 WL 1147149, at *7 (D. Nev. Mar. 25, 2021); *Kaur v. World Bus. Lenders, LLC*, 440 F. Supp. 3d 111, 124 (D. Mass. 2020).

16

## II. Plaintiffs' Breach-of-Implied Warranty and MMWA Claims Must Be Dismissed (Counts II, IV, VI, VIII, and X)

Plaintiffs assert that SEA breached their respective states' implied warranties of merchantability based on the alleged "chipping, flaking, discoloring, bubbling, and premature degradation of the black stainless steel finish."  FAC ¶¶ 175, 214, 247, 281.  These claims all fail.

### A. Plaintiffs' Appliances Were Merchantable at the Time of Sale

All Plaintiffs' implied warranty claims fail because Plaintiffs do not allege that their appliances were unmerchantable at the time of sale.  To be merchantable, a good must be, among other things, "fit for the ordinary purposes for which such goods are used."  Tex. Bus. & Com. Code Ann. § 2.314(b)(3); Nev. Rev. Stat. Ann. § 104.2314(2)(c); S.C. Code Ann. § 36-2-314(2)(c); Mass. Gen. Laws Ann. ch. 106, § 2-314(2)(c); *see Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 854 (S.D. Tex. 2018).  Merchantability is assessed at the time the product leaves the seller.  *See MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 139-40 (Tex. 2014).  Courts nationwide routinely hold that there is no breach of the implied warranty where an alleged defect does not render the product incapable of carrying out its ordinary purpose.[13]

Plaintiffs do not allege that any of their appliances is failing to perform its basic function (heating, cooking, refrigeration, or dishwashing) right *now*, much less at the time of sale.  *See Deburro v. Apple, Inc.*, No. 13-CA-784, 2013 WL 5917665, at *7 (W.D. Tex. Oct. 31, 2013).  They assert that their appliances "became unfit" for these purposes because "of chipping, flaking,

---

[13] *See e.g.*, *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 12-CV-87, 2013 WL 1194851, at *4 (D.S.C. Mar. 22, 2013) (no warranty claim where plaintiffs alleged "only that the shingles are exhibiting cracking," because the roofs still worked); *Walters v. Maytag Corp.*, No. 07-CV-3669, 2008 WL 11349737, at *3 (D.S.C. June 17, 2008) (no warranty claim where plaintiff failed to allege defect in washing machine prevented machine from "washing clothes"); *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 685-86 (N.D. Tex. 2006) (no warranty claim where car did not come with pre-attached mechanism for holding license plate because plaintiff did not allege that bumper was "wholly incapable of accommodating a front license plate"); *Chenlen v. Philips Elecs. N. Am.*, No. 05-525, 2006 WL 696568, at *2 (Mass. Super. Mar. 1, 2006) (no warranty claim where some, but not plaintiff's, light bulbs failed before their rated life), *modified on reconsideration on other grounds*, 2006 WL 4756706 (Mass. Super. Mar. 30, 2006); *Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493, 503 (Tex. App. 2002) (vehicle met ordinary purpose of providing transport even though airbags did not perform as well as plaintiffs hoped).

discoloring, and premature degradation of the black stainless steel finish," *see* FAC ¶¶ 15, 175,

214, 247, 281, but that assertion is devoid of factual content.  In reality, Plaintiffs object to their

appliances' "aesthetic[s]," *see* FAC ¶ 8; but a "product which performs its ordinary function

adequately does not breach the implied warranty of merchantability merely because it does not

function as well as the buyer would like, or even as well as it could." *Gen. Motors Corp. v. Brewer*,

966 S.W.2d 56, 57 (Tex. 1998); *see also Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 686

(N.D. Tex. 2006) (no implied warranty claim where complaints amounted to "inconvenience[s]").

Plaintiffs also speculate about a "*risk* [of] . . . having the defect contaminate the food

cooked . . . and *potentially* cause related harm" through "the *potential* ingestion of flakes."  FAC

¶¶ 14-15 (emphases added).  But Plaintiffs do not allege that this has ever happened to them, much

less that it was happening at the time of sale.  And these allegations, in any event, are implausible:

Plaintiffs allege the peeling/flaking occurs exclusively on the *exterior* finish of the products, not

on the *interior* where food or dishes are stored or cooked.  And food on a stove top is cooked inside

a pot or pan, so it is not clear how flakes on the oven door could cause contamination.  Einiger,

moreover, merely alleges "discoloration," not flaking.  *See* FAC ¶¶ 9-11, 53-54.  Further, the mere

*possibility* that a defect might manifest in the future is insufficient to state a claim for breach of

the implied warranty of merchantability.  *See, e.g.*, *Walters v. Maytag Corp.*, No. 07-CV-3669,

2008 WL 11349737, at *3 (D.S.C. June 17, 2008).

### B.     The Express Written Warranty Bars Lee's, Einiger's, and Roscoe's Implied Warranty Claims

Lee's, Einiger's, and Roscoe's implied warranty claims also fail based on the conspicuous

terms of their appliances' express written warranty.  It is well-settled that Texas, Nevada, and

South Carolina "law allow[] sellers or manufacturers to disclaim or limit implied warranties."

*Adams*, 395 F. Supp. 3d at 852; *see Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., Inc.*,

890 F.2d 108, 113 (9th Cir. 1989); *Brooks v. GAF Materials Corp.*, 284 F.R.D. 352, 358 (D.S.C. 2012) (subsequent history omitted).  Courts routinely enforce limitations of implied warranties "to the duration of [the manufacturers'] express warranties."  *Adams*, 395 F. Supp. 3d at 852.  Courts must dismiss an implied warranty claim for a defect that "arose outside the warranty period."  *Id.*

Here, SEA's one-year express warranty validly disclaimed and limited any implied warranty.  *See* Batazim Decl. ¶ 10.[14]  The user manual prominently identifies the warranty section with the heading "Warranty" or "Limited Warranty" in large font.  *Id.* ¶ 7.  The Limited Warranty accompanying Lee's range and dishwasher explicitly " DISCLAIMS ALL WARRANTIES . . . INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES . . . OF MERCHANTABILITY."  *Id.* ¶ 11.  The Limited Warranty accompanying the other products bought by Lee, Einiger, and Roscoe similarly states that "IMPLIED WARRANTIES . . . ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW," or that "NO WARRANTIES WHETHER EXPRESS OR IMPLIED . . . SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE," which are one year.  *Id.* ¶¶ 12, 13.  The manual for each product except Lee's range also prominently advised that the warranty excluded "cosmetic damage" to the product "finish."  *Id.* ¶ 9.

These disclaimers are conspicuous, and courts have repeatedly enforced similar disclaimers and limitations on the duration of implied warranties.  *See, e.g.*, *Adams*, 395 F. Supp. 3d at 852-53; *Salinas v. Ford Motor Co.*, No. 15-CV-11, 2015 WL 13121265, at *4 (S.D. Tex. Sept. 3, 2015); *Deburro*, 2013 WL 5917665, at *6-7.  Indeed, courts considering the disclaimers accompanying

---

[14] The Court may consider Samsung's Limited Warranty when ruling on the motion to dismiss because the FAC repeatedly references the warranty, FAC ¶¶ 42, 46, 55, 73, and it "[is] central to [Plaintiffs'] claims."  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (considering contracts that "were referred to in the complaints" and "are central to the plaintiffs' claims"); *Adams*, 395 F. Supp. 3d at 852 n.12 (considering "applicable warranty booklets" that had been attached to a motion to dismiss).

Samsung appliances have uniformly concluded that they are conspicuous as a matter of law and effectively disclaim liability for the implied warranty of merchantability.[15]

SEA's Limited Warranty thus validly disclaimed any implied warranties for Lee's gas range and dishwasher, and any warranty after one year from the date of his microwave purchase. Because Lee purchased all of his appliances four or more years ago, *see* FAC ¶¶ 37, all of his implied warranty claims must be dismissed. *See Deburro*, 2013 WL 5917665, at *7 (dismissing implied warranty claim when plaintiffs "d[id] not complain of any defect or problem [until] nearly four years after their warranties expired"); *Adams*, 395 F. Supp. 3d at 853.

Nor can Einiger or Roscoe state a warranty claim. Their implied warranty claims concern issues that fall within the scope of the Limited Warranty's express prohibition against warranty coverage for "cosmetic damage including scratches, dents, chips, and other damage to the product's finishes." *See* Batazim Decl. ¶ 9. The FAC itself describes the alleged defect as "aesthetic," *i.e.*, cosmetic. FAC ¶ 8. "Courts have consistently held that where there is an express written warranty, the seller will not be bound beyond the terms of the warranty." *Deburro*, 2013 WL 5917665, at *7.

### C.     Plaintiffs Failed to Provide SEA with the Required Pre-Suit Notice

Plaintiffs' implied warranty claims each independently fail because Plaintiffs did not provide SEA with the requisite pre-suit notice. A "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tex. Bus. & Com. Code Ann. § 2.607(c)(1); S.C. Code Ann. § 36-2-607(3)(a); Nev. Rev. Stat. Ann. § 104.2607(3)(a); Mass. Gen. Laws Ann. ch. 106, § 2-607(3)(a).

---

[15] *See, e.g.*, *Ray v. Samsung Elecs. Am., Inc.*, No. 15-CV-8540, 2016 WL 3406127, at *4 (S.D.N.Y. June 17, 2016); *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 616 (D.N.J. 2014); *Spera v. Samsung Elecs. Am., Inc.*, No. 12-CV-5412, 2014 WL 1334256, at *8 (D.N.J. Apr. 2, 2014); *Durso v. Samsung Elecs. Am., Inc.*, No. 12-CV-5352, 2013 WL 5947005, at *11–12 (D.N.J. Nov. 6, 2013).

Danilova does not allege that she *ever* contacted SEA, *see* FAC ¶¶ 64-69, and the remaining Plaintiffs' allegations fall far short of pleading facts that support pre-suit notice.   Courts "consistently hold that failure to provide pre-suit notice is fatal to a plaintiff's warranty claim." *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 970 (S.D. Tex. 2016) (dismissing warranty claims with prejudice where plaintiff failed to notify defendant "of his belief that Medtronic breached any alleged warranty"); *see also, e.g.*, *Sandviks v. PhD Fitness, LLC*, No. 17-CV-744, 2018 WL 1393745, at *3 (D.S.C. Mar. 20, 2018) (dismissing warranty claims for failure to provide pre-suit notice and noting demand letter sent two days before filing of complaint does not "constitute[] any form of reasonable notice of claims to be filed").   While Lee, Einiger, and Roscoe allege that they "contacted [SEA's] customer service" line "to seek assistance with" a problem with their appliances (FAC ¶¶ 45, 55, 63), and Lee and Einiger allege they sought "review" of their warranty coverage (*id.* ¶¶ 46, 55), they do not allege any facts suggesting they put SEA on notice that they believed their transaction involved a breach of the implied warranty of merchantability and gave rise to claims for money damages.   This omission deprived SEA of its statutory right to cure by failing to "open[] the way for normal settlement through negotiation."   Tex. Bus. & Com. Code Ann. § 2.607 cmt. 4.

Plaintiffs allege without any explanation that pre-suit notice was "unnecessary and/or futile."   FAC ¶ 151.   But there is no futility exception in the statutory pre-suit notice provisions. All of Plaintiffs' claims should accordingly be dismissed for failure to provide pre-suit notice.

### D.    Lee and Roscoe Cannot Recover for Defects that Have Not Manifested

Several of Lee's and Roscoe's warranty claims also fail because the purported defect has not manifested at all in Lee's dishwasher or microwave (now used by Lee for *five times* the one-year warranty period), or in Roscoe's microwave.   FAC ¶¶ 7, 12, 37, 41, 45, 58, 62.   Texas and South Carolina law make clear that plaintiffs may not recover for a defect that never manifested

in their products.  *See Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297-98 (4th Cir. 1989); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854-55 (Tex. App. 2005).

### E.      Plaintiffs' MMWA Claims Fail for Lack of Jurisdiction and on the Merits

Plaintiffs also bring claims under the MMWA, which "does not provide an independent basis for liability, but instead provides a federal cause of action for state law express and implied warranty claims."  *Taliaferro v. Samsung Telecomms. Am., LLC*, No. 11-CV-1119, 2012 WL 169704, at *10 (N.D. Tex. Jan. 19, 2012) (quotation marks omitted).  "MMWA claims succeed or fail with the underlying state warranty claims."  *Elson v. Black*, No. 20-CV-2125, 2021 WL 2832971, at *4 (S.D. Tex. June 8, 2021).  Because Plaintiffs' state law warranty claims fail, the MMWA claims fail as well.

In any event, the Court lacks jurisdiction over the MMWA claims for two reasons.  First, "federal question jurisdiction under the MMWA is limited to breach-of-warranty claims for which the amount in controversy is at least $50,000."  *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (citing 15 U.S.C. § 2310(d)(3)).  Second, "if an [MMWA] action is brought as a class action, there must be at least 100 named plaintiffs."  *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 n.13 (5th Cir. 1984); *see* 15 U.S.C. § 2310(d)(3)(C).

The FAC involves four named plaintiffs and alleges a maximum amount in controversy of $13,173.31 (the total purchase price of all Plaintiffs' appliances).  *See* FAC ¶¶ 37, 49, 58, 65; *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 888 (5th Cir. 2014) (amount in controversy for breach-of-warranty claims generally equals the "diminished value").  The Court should dismiss the MMWA claims for lack of jurisdiction.  *See, e.g.*, *Boelens*, 748 F.2d at 1071.

### III.   Plaintiffs' Claims for Unjust Enrichment Also Fail (Count III)

Plaintiffs' unjust enrichment claims cannot proceed either.  As a threshold matter, Texas and Massachusetts do not recognize unjust enrichment as an independent cause of action as it is

pleaded here. *See Barnett v. Coppell N. Tex. Ct., Ltd.*, 123 S.W.3d 804, 816 (Tex. App. 2003); *Lopes v. Commonwealth*, 811 N.E.2d 501, 509 (Mass. 2004).

Moreover, Plaintiffs premise their unjust enrichment claims on the same allegations underlying their fraud-based claims—*i.e.*, that SEA knowingly "sold the defective Black Stainless Steel Appliances to Plaintiffs . . . and benefited financially from the sale of such appliances," FAC ¶¶ 161, 165. Thus, Plaintiffs' unjust enrichment claims are subject to Rule 9(b), and they fail for the same reasons as the fraud claims. *See, e.g.*, *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 653-54 (N.D. Tex. 2020) (equitable claims relying on fraud allegations subject to Rule 9(b)); *ASI Lloyds*, 2012 WL 13042502, at *4 (Rule 9(b) "appl[ies] to all cases where the gravamen of the claim is fraud" (quotation marks omitted)). Because Plaintiffs' claims that SEA "conceal[ed] and omit[ed] that the finish is a thin plastic coating" (FAC ¶ 4) is belied by the FAC's own leading source, and Plaintiffs have plausibly alleged neither a defect nor pre-sale knowledge of such a defect, the notion that SEA "knowingly accepted unjust benefits" is utterly groundless.

To the extent Plaintiffs' unjust enrichment claims are construed as a claim in quasi-contract for restitution, such claims are "unavailable" if "an adequate legal remedy" may exist. *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005).[16] "The mere availability of these remedies renders the equitable theory of unjust enrichment unavailable." *Murphy Oil USA, Inc. v. Love's Travel Stops & Country Stores, Inc.*, No. 18-CV-1345, 2021 WL 824647, at *3 (N.D. Tex. Mar. 3, 2021). Because Plaintiffs have access to other remedies, as evidenced by their other claims predicated on the same factual allegations, their unjust enrichment claims should be dismissed.

Plaintiffs' unjust enrichment claims also fail because none of the relevant states permit an

---

[16] *See also, e.g.*, *Cruz v. Kate Spade & Co., LLC*, No. 19-CV-952, 2020 WL 5848095, at *4 (D. Nev. Sept. 30, 2020); *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005); *Barrett v. Miller*, 321 S.E.2d 198, 199 (S.C. Ct. App. 1984).

action in quasi-contract where "a valid, express contract covers the subject matter of the parties' dispute." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Albemarle Corp. v. MEMC Elec. Materials, Inc.*, 685 F. Supp. 2d 652, 658 (S.D. Tex. 2010) (asset purchase agreement barred unjust enrichment claim because it "cover[ed] fully the dispute between the parties").[17]   Based on this principle, courts have repeatedly rejected attempts to use unjust enrichment to supplement or overcome the express terms of limited warranties for consumer products.  *See Deburro*, 2013 WL 5917665, at *8 (laptop computer limited warranty precluded unjust enrichment claim); *Santos v. SANYO Mfg. Corp.*, No. 12-CV-11452, 2013 WL 1868268, at *7 (D. Mass. May 3, 2013) (consumer contract for television sale precluded unjust enrichment claim).   Here, for 9 of the 10 products, the applicable limited warranty expressly disclaims coverage of any "cosmetic damage," including damage to the product's exterior "finish."  *See* Batazim Decl. ¶ 9.  And for Lee's range, the limited warranty provides coverage for one year after purchase.  *See id.* ¶ 8.  Because SEA's limited warranty is a binding agreement that sets forth Plaintiffs' rights and precludes alternate theories of contract, Plaintiffs may not recover under a claim in quasi-contract, such as unjust enrichment.

## IV.   Lee's and Danilova's Claims Are Time-Barred

Plaintiff Lee's and Plaintiff Danilova's claims are all time-barred because they purchased their appliances in 2016, or for one of Lee's appliances on April 17, 2017, *see* FAC ¶¶ 37, 65, and their claims are governed by two, three, or four-year limitations periods.  Those periods all expired by the time the complaint was filed (April 21, 2021 for Lee, and July 19, 2021 for Danilova).

- *Implied Warranty and MMWA*.  Texas and Massachusetts both have four-year limitations periods accruing at the time of delivery, and the MMWA borrows state-law warranty

---

[17] *See also, e.g.*, *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006); *Palmetto Health Credit Union v. Open Sols. Inc.*, No. 08-CV-3848, 2010 WL 2710551, at *4 (D.S.C. July 7, 2010); *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997).

limitations periods.[18]

- *Fraud-based Claims.*  The statute of limitations for common-law fraud is four years in Texas and three years in Massachusetts, and is two years for DTPA claims and four years for Chapter 93A claims.[19]

- *Unjust Enrichment.*  An unjust enrichment/restitution claim has a two-year limitations period under Texas law and equitable claims in Massachusetts whose "gist" is tort have a three-year limitations period, and begin to accrue when the money is paid.[20]

## CONCLUSION

The FAC fails to state viable claims under any of its asserted legal theories.  Plaintiffs' fraud claims rest on the contradiction that SEA "concealed" the true nature of the black stainless steel finish, when the very documents on which Plaintiffs rely to assert this spurious theory reveal the truth: that SEA and other public sources disclosed that the finish is an acrylic coating, a manufacturing process universally employed by appliance manufacturers nationwide.  Under any lens, Plaintiffs' dissatisfaction with the cosmetics of their appliances does not equate to fraud or indeed a claim of any kind.  Nor can Plaintiffs use an implied warranty theory to eviscerate conspicuously disclosed exclusions and limitations in SEA's express warranty.  Plaintiffs' failure to provide pre-suit notice and failure to allege that the products were unusable for their ordinary purpose at the time of sale only compound the reasons their implied warranty claims must be dismissed, and their derivative Magnuson-Moss claims fall in tandem.  No amendment can cure these flaws.  The Court should dismiss all of Plaintiffs' claims with prejudice.

---

[18] *See Costa v. FCA US LLC*, No. 20-CV-11810, 2021 WL 2338963, at *13-14 (D. Mass. June 8, 2021); *Harris v. BMW of N. Am., LLC*, No. 19-CV-16, 2020 WL 7081808, at *2 (E.D. Tex. Dec. 3, 2020); *Click*, 2020 WL 3118577, at *13; *Adams*, 395 F. Supp. 3d at 845.

[19] *See* Tex. Bus. & Com. Code Ann. § 17.565 (DTPA); *Adams*, 395 F. Supp. 3d at 845 (Texas common-law fraud); *Anderson v. Comcast Corp.*, 500 F.3d 66, 76 (1st Cir. 2007) (Chapter 93A); *Stolzoff v. Waste Sys. Int'l, Inc.*, 792 N.E.2d 1031, 1038 (Mass. App. Ct. 2003) (Massachusetts common-law fraud).

[20] *See Adams*, 395 F. Supp. 3d at 846 (quotation marks omitted); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 448 F. Supp. 2d 244, 263 (D. Mass. 2006), *aff'd*, 510 F.3d 77 (1st Cir. 2007).

Dated:  September 2, 2021

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Christopher M. Odell*
Christopher M. Odell
Texas Bar No. 24037205
Southern District of Texas Bar No. 33677
700 Louisiana Street
Suite 4000
Houston, TX 77002-2755
Tel.: 713.576.2400
Fax: 713.576.2499
Christopher.Odell@arnoldporter.com

*Attorney-in-charge for Defendant*

*/s/ Robert J. Katerberg*
Robert J. Katerberg (*pro hac vice*)
Elisabeth S. Theodore (*pro hac vice*)
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel.: 202.942.5000
Fax: 202.942.5999
Robert.Katerberg@arnoldporter.com
Elisabeth.Theodore@arnoldporter.com

Elie Salamon (*pro hac vice*)
250 West 55th Street
New York, NY 10019-9710
Tel.: 212.836.8000
Fax: 212.836.8689
Elie.Salamon@arnoldporter.com

*Of Counsel for Defendant*

**APPENDIX**

| Plaintiff | Claims in the FAC | **Applicable Dismissal Arguments for Plaintiffs' Fraud-Based Claims** | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | **Barred by Statute of Limitations** **(MTD § IV)** | **Failure to Allege Misrepresentation** **(MTD § I.B)** | **Conditions Not Present for Duty to Disclose** **(MTD § I.C.3)** | **No Plausibly Pleaded Defect** **(MTD § I.C.1)** | **No Plausibly Pleaded Pre-Sale Knowledge** **(MTD § I.C.2)** | **Reliance on Public Information Bars Omission Claims** **(MTD § I.C.3)** | **Failure to Allege Reliance / Causation** **(MTD § I.D)** |
| **Adam Lee** | DTPA | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ |
| | Fraudulent concealment | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| **Kimberly Einiger** | NDTPA | | ✓ | | ✓ | ✓ | ✓ | ✓ |
| | Fraudulent concealment | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| **Howard Roscoe** | SCUTPA | | ✓ | | ✓ | ✓ | ✓ | ✓ |
| | Fraudulent concealment | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| **Anastasia Danilova** | Chapter 93A | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓[*] |
| | Fraudulent concealment | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

---

[*] Mass. Gen. Laws. ch. 93A does not require "reliance" per se, but requires causation, a similar concept.

| Plaintiff | Claims in the FAC | Applicable Dismissal Arguments for Plaintiffs' Warranty-Based Claims | | | | | |
|---|---|---|---|---|---|---|---|
| | | Barred by Statute of Limitations (MTD § IV) | Failure to Adequately Allege Non-Merchantable at Time of Sale (MTD § II.A) | Barred by Disclaimer / Limitation in Limited Warranty (MTD § II.B) | Failure to Provide Pre-Suit Notice (MTD § II.C) | Lack of Manifestation of Defect (MTD § II.D) | Lack of MMWA Subject Matter Jurisdiction (MTD § II.E) |
| Adam Lee | Breach of implied warranty | ✓ | ✓ | ✓ | ✓ | ✓* | |
| | MMWA | ✓ | ✓ | ✓ | ✓ | ✓* | ✓ |
| Kimberly Einiger | Breach of implied warranty | | ✓ | ✓ | ✓ | | |
| | MMWA | | ✓ | ✓ | ✓ | | ✓ |
| Howard Roscoe | Breach of implied warranty | | ✓ | ✓ | ✓ | ✓* | |
| | MMWA | | ✓ | ✓ | ✓ | ✓* | ✓ |
| Anastasia Danilova | Breach of implied warranty | ✓ | ✓ | | ✓ | | |
| | MMWA | ✓ | ✓ | | ✓ | | ✓ |

---

*Applicable only to claims for certain products, as described in the Motion to Dismiss.

| Plaintiff | Claims in the FAC | Applicable Dismissal Arguments for Plaintiffs' Unjust Enrichment Claims | | | | |
|---|---|---|---|---|---|---|
| | | Barred by Statute of Limitations (MTD § IV) | Not Recognized as Independent Cause of Action (MTD § III) | Failure to Allege Underlying Fraud Claim with Particularity (MTD § III) | Barred by Availability of Other Remedies (MTD § III) | Barred by Existence of Valid Contract (MTD § III) |
| Adam Lee | Unjust enrichment | ✓ | ✓ | ✓ | ✓ | ✓ |
| Kimberly Einiger | Unjust enrichment | | | ✓ | ✓ | ✓ |
| Howard Roscoe | Unjust enrichment | | | ✓ | ✓ | ✓ |
| Anastasia Danilova | Unjust enrichment | ✓ | ✓ | ✓ | ✓ | ✓ |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 2, 2021, a copy of the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Texas, using the CM/ECF system, which will send a Notice of Electronic filing to all parties of record.

*/s/ Christopher M. Odell*
Christopher M. Odell
