United States District Court
Southern District of Texas
**ENTERED**
July 06, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ADAM LEE, *et al.*, | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 4:21-cv-1321 |
| | § | |
| SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO STRIKE

Before the Court is Samsung Electronics America, Inc.'s ("Defendant") second motion to strike class allegations. Second Mot. Strike, ECF No. 92.[1] Plaintiffs filed a class action based on their purchases of Defendant's black stainless steel kitchen appliances, asserting claims under state consumer protection laws with six state sub-classes and claims for unjust enrichment with three state sub-classes.[2] Pl.'s

---

[1] The District Judge to whom this case is assigned referred this case for all pretrial proceedings in accordance with 28 USC § 636(b). Ref. Order, ECF No. 31. A motion to strike class allegations is a dispositive motion appropriate for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A); *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016).

[2] Plaintiffs assert the following class causes of action: (1) violation of the Texas Deceptive Trade Practices Act ("TDTPA") under TEX. BUS. & COM. CODE ANN. §§ 17.01–.63 (West 2023); (2) violation of the Nevada Deceptive Trade Practices Act ("NDTPA") under NEV. REV. STAT. ANN. §§ 598.0903–.0999 (West 2021); (3) violation of the Massachusetts Regulation of Business Practices for Consumer Protection ("Chapter 93A") under MASS. GEN. LAWS ANN. ch. 93A (West

Consol. Third Am. Compl., ECF No. 87 ("complaint"). Defendant asserts that on the face of the complaint, individual issues predominate common questions for Plaintiffs' class claims, such that they cannot meet Rule 23's requirements—because the complaint's class allegations are facially deficient, there is no reason to postpone deciding these issues. ECF No. 92 at 8. In response, Plaintiffs contend that their complaint sufficiently shows that class treatment of their claims is appropriate, and that Defendant's motion is premature. Pls.' Resp., ECF No. 98 at 12–34. Based on a careful review of the complaint, the filings, and the law, the Court concludes individual issues predominate common questions as to the Texas DTPA, Nevada DTPA, Massachusetts Chapter 93A class claims, and all unjust enrichment class claims, but on their face, the consumer protection class claims under California, New York,[3] and Florida law are susceptible to class-wide proof. Therefore, the Court recommends that the motion should be granted in-part and denied in-part.[4]

---

2023); (4) violation of the California Consumer Legal Remedies Act ("CLRA") under CAL. CIV. CODE §§ 1750–84 (West 2023); (5) violation of the California Unfair Competition Law ("UCL") under CAL. BUS. & PROF. CODE §§ 17200–10 (West 2023); (6) violation of the California False Advertising Law ("FAL") under CAL. BUS. & PROF. CODE §§ 17500–09 (West 2023); (7) the New York Deceptive Practices Act ("GBL § 349") under N.Y. GEN. BUS. LAW §§ 349–350-F-1 (McKinney 2014); (8) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") under FLA. STAT. ANN. § 501.201–.213 (West 2023); (9) unjust enrichment under California law; (10) unjust enrichment under New York law; and (11) unjust enrichment under Florida law. ECF No. 87.

[3] Because Mendez's claims are time-barred, the New York class lacks a class representative and therefore, the Court recommends that the New York class claims be stricken.

[4] Defendant also argues that the statute of limitations precludes class treatment of Plaintiffs' claims, but the Court finds this inquiry is more appropriate for the certification stage.

Because no Texas class claims remain, the Court finds it appropriate to sever the claims of the remaining non-Texas Plaintiffs and transfer them to their home states.

## I.   BACKGROUND.

Plaintiffs Adam Lee, Kimberly Einiger, Howard Roscoe, Anastasia Danilova, Keith Covington, Myra Mendez, Paula Murray, and Gregory Elliot (collectively "Plaintiffs"), bring this action on behalf of themselves and all others similarly situated who purchased Samsung kitchen appliances with a "black stainless steel" finish. ECF No. 87 ¶¶ 1–4, 25. The gravamen of Plaintiffs' complaint is that they each selected and paid an additional cost for the "black stainless steel" finish out of four finish options based on Defendant's representation that their appliances' finish was made of durable "black stainless steel." *Id.* ¶¶ 5, 17, 20, 23, 24. Plaintiffs claim that the appliances do not have a black stainless steel finish as represented, but instead are coated with a thin plastic, which is prone to peel, chip, flake, discolor, and prematurely degrade. *Id.* ¶¶ 5, 21.

Plaintiffs allege that although their independent research, prior favorable experiences, and desired color scheme led them to Defendant's black stainless steel appliances, they ultimately relied on Defendant's representation that the finish was "black stainless steel" in making their selection. ECF No. 87 ¶¶ 60, 61, 74, 75, 83, 84, 90, 91, 96, 98, 119. Plaintiffs allege that "Defendant heavily promotes its Black

Stainless Steel Appliances as a premium kitchen product with a superior aesthetic," specifically advertising these appliances "as a premium, durable, luxury metal finish." *Id.* ¶¶ 2–3, 16–17, 20–21. Plaintiffs allege that had they known the "black stainless steel" finish was actually a thin plastic coating, they would not have selected and paid a premium for the finish or they would not have purchased the appliance at all. *Id.* ¶¶ 56, 59.

## A.   Procedural History.

Lee originally filed this action individually and on behalf of a proposed national class and Texas subclass. Pls.' Compl., ECF No. 1. Lee amended to add Danilova, Einiger, and Roscoe and their individual and Massachusetts, Nevada, and South Carolina subclass claims. Pls.' First Am. Compl., ECF No. 13. Defendant filed a motion to dismiss the first amended complaint. Pls.' Mot. Dismiss First Am. Compl., ECF No. 23. After the Court issued the Report and Recommendation on the motion to dismiss, Plaintiffs sought leave to amend their complaint. R&R, ECF No. 47; Mot. Leave Am. Compl., ECF No. 59. Judge Ellison granted the motion for leave to amend, mooting the motion to dismiss. Order, ECF No. 60 (granting leave to amend); Order, ECF No. 71 (mooting Defendant's motion to dismiss).

At the same time, Defendant also filed its first motion to strike class allegations. First Mot. Strike, ECF No. 24. Upon review, the Court recommended striking: (1) all class claims based on fraudulent concealment and consumer fraud; (2) all

national class claims; and (3) the SCUTPA class claims. R&R, ECF No. 50 at 25. The Court also recommended that Plaintiffs be given leave to amend "their Texas, Nevada, and Massachusetts Class claims" "[t]o the extent the consumer fraud claims do not require proof of reliance or causation," noting that this issue was inadequately briefed by the parties. R&R, ECF No. 50 at 25. The recommendations were adopted. *See* Order Adopting R&R, ECF No. 54.

Plaintiffs again amended, adding Covington and Mendez and their individual claims and California and New York subclass claims—Plaintiffs did not include any national class or South Carolina subclass claims. Second Am. Compl., ECF No. 61. Plaintiffs thereafter filed a joint motion to consolidate *Lee, et al. v. Samsung Electronics America, Inc*., No. 4:21-cv-1321 (S.D. Tex.) and *Murray v. Samsung Electronics America, Inc*., No. 4:22-cv-0037 (S.D. Tex.) and a motion to file a consolidated complaint. Pls. Mot. Consol., ECF No. 41. The Court granted the motion to consolidate. Order, ECF No. 79. Plaintiffs again amended the complaint to add Murray and her individual and California subclass claims. ECF No. 87.

## B.    Class Allegations.

Plaintiffs define the sub-classes as "[a]ll persons in [the respective state] who purchased one or more Samsung-branded appliance featuring a 'black stainless steel' finish." *Id.* ¶ 122. For their class claims, Plaintiffs assert deceptive and unconscionable practices under the TDTPA, as well as deceptive and unfair practices

under Chapter 93A, NDTPA, CLRA, UCL, FAL, GBL § 349, and FDUTPA, and claims for unjust enrichment under California, Florida, and New York law. In a separate Report and Recommendation, the Court recommended that Lee's inadequately pleaded TDTPA unconscionability claim and Mendez's untimely New York unjust enrichment and GBL § 349 claims be dismissed.

## II.  THE LEGAL STANDARD FOR A MOTION TO STRIKE CLASS ALLEGATIONS.

Rule 23(c) provides:

> At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

FED. R. CIV. P. 23(c)(1)(A). Under Rule 23(c), either a plaintiff or defendant may seek a ruling on the class claims; plaintiff may file a motion for class certification, and defendant may file a motion to dismiss or strike.

The Fifth Circuit has stated that "[w]here it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) ("District courts are permitted to make such determinations on the pleadings and before discovery is complete when it is apparent from the complaint that a class action cannot be maintained."). "A defendant may move to strike class allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for

maintaining a class action cannot be met." *Lee v. Samsung Elecs. Am., Inc*., No. 4:21-CV-1321, 2022 WL 4663878, at *2 (S.D. Tex. Sept. 21, 2022), *report and recommendation adopted*, 2022 WL 7757471 (S.D. Tex. Oct. 12, 2022) (quoting *Delarue v. State Farm Lloyds*, No. 1:09-CV-237, 2010 WL 11530499, at *2 (E.D. Tex. Mar. 10, 2010)).

A district court has broad discretion over whether to certify a class; however, in exercising that discretion, it must rigorously analyze Rule 23's prerequisites. *Prantil v. Arkema Inc*., 986 F.3d 570, 574 (5th Cir. 2021). On a motion for class certification, the court's analysis may require it to go beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law. *Id.* at 574 (quoting *Cole v. Gen. Motors Corp*., 484 F.3d 717, 724 (5th Cir. 2007)). In contrast, when ruling on a motion to strike class allegations, the court examines, but does not go beyond, the pleadings in analyzing Rule 23's requirements. *Lee*, 2022 WL 4663878, at *2 (citing *John*, 501 F.3d at 445).

## III.   RULE 23'S REQUIREMENTS FOR CLASS CERTIFICATION.

Rule 23 requires that several preliminary conditions be met before a proposed class may be certified. *Angell v. GEICO Advantage Ins. Co*., No. 22-20093, 2023 WL 3411186, at *4 (5th Cir. May 12, 2023). Under Rule 23(a), the plaintiff must establish numerosity, commonality, typicality, and adequacy of class representation. *Id.* (citing FED. R. CIV. P. 23(a)).

Once Rule 23(a) is satisfied, the plaintiff must also satisfy one of three provisions within Rule 23(b). *Lee*, 2022 WL 4663878, at *3 (citing *Cole*, 484 F.3d at 723). Relevant herein, under Rule 23(b)(3), the plaintiff must demonstrate "both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Id.* (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)).

"The predominance requirement of Rule 23(b)(3), though redolent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2019 WL 4572799, at *20 (S.D. Tex. Sept. 20, 2019) (Rosenthal, J.) (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008)). "Determining whether legal issues common to the class predominate . . . requires that this court inquire how the case will be tried," which "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'" *Id.* (cleaned up).

## IV. DEFENDANT'S MOTION TO STRIKE SHOULD BE GRANTED IN PART AND DENIED IN PART.

Defendant raises three arguments as to why Plaintiffs' class allegations should be stricken. First, Defendant asserts that the consumer fraud statutes are improper

for class treatment due to reliance and/or causation requirements, which Plaintiffs can only meet with individualized proof. ECF No. 92 at 13–21. Second, Defendant identifies two additional issues with Plaintiffs' consumer fraud claims: (1) Plaintiffs' complaints about physical flaws in their appliances require "individualized discovery and fact-finding"; and (2) the "statute of limitations and discovery rule issues [] require extensive individual fact-finding." ECF No. 92 at 21–24. Finally, Defendant argues that Plaintiffs' remaining claims for unconscionable or unfair practices under the consumer fraud statutes and unjust enrichment under Florida, New York, and California law "suffer from the same overarching predominance problems" as their consumer protection claims. ECF No. 92 at 24–32.

Plaintiffs respond that they can develop common evidence to establish reliance and causation, unjust enrichment, and unfairness; that the statute of limitations is "not grounds to strike;" that it is premature to strike their class allegations without discovery; and that should the Court find Rule 23(b)(3)'s requirements unmet, certification is appropriate under Rule 23(b)(2) or (c)(4).  ECF No. 98 at 16–22; 30–34.

The Court finds, as it previously found in its prior Report and Recommendation, that Plaintiffs' class claims under the TDTPA, NDTPA, and Chapter 93A should be stricken because individualized reliance issues predominate over common questions. Plaintiffs' unjust enrichment class claims should be stricken for the same reason. However, Plaintiffs' class claims under the UCL, FAL, CLRA, GBL § 349,

and FDUTPA should remain at this time. The Court finds it improper to strike all class allegations on the basis of the statute of limitations. Finally, the Court finds potential certification under Rule 23(b)(2) or (c)(4) inappropriate in these circumstances.

### A.   Plaintiffs' Third Amended Complaint Fails to Remedy TDTPA, Chapter 93A, and NDTPA Class Claims' Predominance Issues.

Defendant argues that Plaintiffs' Third Amended Complaint failed to remedy any of the prior issues pointed out in the Court's prior Report and Recommendation, namely that each of Plaintiffs' consumer fraud claims as pled still require individualized proof of reliance and/or causation. ECF No. 92 at 13–21. Plaintiffs respond generally that their consumer protection claims "either do not require individualized reliance as an element or allow reliance to be established by reference to common evidence." ECF No. 98 at 16–17. Plaintiffs also assert that there is no *per se* rule against bringing consumer protection claims in a class action, arguing that "[c]ourts generally recognize class-wide presumptions of reliance and causation where the defendant's unfair or deceptive conduct was uniform and material to the class, as has been alleged here." ECF No. 98 at 17.

The Court's prior Report and Recommendation addressed Plaintiff's class claims under the TDTPA, NDTPA, and Chapter 93A.  The Court struck these class claims because Plaintiffs' reliance and causation elements required individualized proof, thereby precluding predominance of common issues. R&R, ECF No. 50 at

10–13. Specifically, the Court noted that "Plaintiffs have alleged they engaged in research before purchasing their Samsung appliances and had prior experience with this brand; thus, they have failed to sufficiently allege their misrepresentation claims to eliminate variations in the misrepresentations made to each class member such that reliance could be inferred." *Id.* at 12.

Under the TDTPA, a plaintiff must prove detrimental reliance on the alleged false or misleading statement. *See Gordon*, 2019 WL 4572799, at *21 (citing *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 387 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Daugherty v. Jacobs*, 187 S.W.3d 607, 615 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). To state a claim under the NDTPA, a plaintiff must allege that she relied on the misrepresentation which caused the harm. *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1178 (D. Nev. 2021), *reconsideration denied*, No. 220CV00674APGEJY, 2022 WL 834790 (D. Nev. Mar. 21, 2022) (citing *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009)). And finally, "[a] plaintiff's failure to establish both factual causation and proximate causation is fatal to her Chapter 93A claim." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 14 (1st Cir. 2017) (quoting *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016)); *see also Rovinelli v. Trans World Entm't Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at *12 (D. Mass. Feb. 2, 2021) ("The question of causation for Chapter 93A purposes must . . . be decided in the context of the total

mix of information available to the purchaser"), *appeal dismissed*, No. 21-1160, 2021 WL 3772017 (1st Cir. May 12, 2021).

Here, each TDTPA, NDTPA, and Chapter 93A class member must establish: (1) when selecting and purchasing a "black stainless steel" appliance, they relied on Defendant's "black stainless steel" misrepresentation; and (2) they would not have entered into the transaction had they known that the "black stainless steel" finish was actually a thin, plastic coating. *See Gordon*, 2019 WL 4572799, at *21; *Motogolf.com*, 528 F. Supp. 3d at 1178; *Shaulis*, 865 F.3d at 14.

Despite several opportunities and a directive from the Court to amend their complaint so their class claims did not require individualized proof of reliance or causation, Plaintiffs have pled nearly identical allegations in their complaint as what was previously addressed. Again, Plaintiffs' allegations underscore the individualized inquiries required to establish reliance and causation for their TDTPA, NDTPA, and Chapter 93A class claims.  Plaintiffs allege that although they initially looked at Defendant's black stainless steel appliances based on their own independent research, preferred color schemes, and prior favorable experiences, each Plaintiff ultimately relied upon Defendant's misrepresentation and omission in choosing to purchase the "black stainless steel" finish. *See id.* ¶¶ 61, 63, 74, 77, 78, 83, 86, 87, 90, 93, 94, 96, 99, 100, 104, 107, 108, 112, 113 119, 120.

Without these individual representations, reliance and causation are unmet

under the TDTPA, NDTPA, and Chapter 93A. *See Mewhinney v. London Wineman, Inc.*, 339 S.W.3d 177, 183 (Tex. App.—Dallas 2011, pet. denied) (reliance established where consumer specifically relied on the defendant's misrepresentation in decision to purchase product); *see also Tsao v. Ferring Pharm., Inc.*, No. 4:16-CV-01724, 2017 WL 746451, at *9–10 (S.D. Tex. Jan. 4, 2017), *report and recommendation adopted*, No. 4:16-CV-1724, 2017 WL 749009 (S.D. Tex. Feb. 24, 2017) (under the TDTPA, "before any misrepresentation can be said to be actionable, it must have induced the purchase."); *Motogolf.com*, 528 F. Supp. 3d at 1178 (under the NDTPA, the plaintiff "must allege that it relied on the misrepresentation which caused the harm."); *Shaulis*, 865 F.3d at 10 (under Chapter 93A, "the plaintiff must allege that she has suffered an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself.").

Therefore, to reach the same conclusion for each putative class member, the Court would have to inquire whether the individual ultimately relied on Defendant's misrepresentation in selecting and purchasing the "black stainless steel" finish. Although the named Plaintiffs have sufficiently alleged individual, detrimental reliance on Defendant's misrepresentation and omission in making their selection and purchase, this cannot be imputed to every purchaser of a black stainless steel appliance. As the class is currently defined, Plaintiffs include purchasers who relied on their independent research, prior favorable experiences, preferred color schemes,

and/or were aware of the acrylic coating and selected the "black stainless steel" finish anyway.[5]

### B. Plaintiffs' Common Course of Conduct and Price Premium Arguments are Unavailing as to Their TDTPA, NDTPA, and Chapter 93A Class Claims.

Plaintiffs argue that because they can establish Defendant's uniformly deceptive conduct as to each member of the class, then reliance and causation may be inferred class-wide for their TDTPA, NDTPA, and Chapter 93A class claims.  ECF No. 98 at 16–17. Plaintiffs specifically contend that Defendant "sold, advertised, and marketed its Black Stainless Steel Appliances as 'Black Stainless Steel' when they are merely finished with a temporary, thin plastic coating and, as a result of [Defendant]'s deception, Plaintiffs and Class members overpaid." ECF No. 98 at 14.

### 1. TDTPA reliance.

To establish class-wide reliance for a TDTPA claim, each class member must actually rely on the misrepresentation "so uniformly that common issues of reliance predominate over individual issues." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d

---

[5] Also, noticeably absent from their alleged "[i]ssues of law and fact common to all members of the classes" is any allegation as to whether class members relied on Defendant's misrepresentation or whether Defendant's misrepresentation caused damages or harm to each class member. *See* ECF No. 87 at 54–55.

675, 694 (Tex. 2002).[6]  The court in *Fid. & Guar. Life Ins. Co. v. Pina*, 165 S.W.3d

416, 423 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.), discussed *Schein*:

> In the *Henry Schein* opinion, the Texas Supreme Court severely limited
> the ability of potential plaintiffs to form a class when the issue of reli-
> ance is of importance to the resolution of the class claim. . . . Class-
> wide evidence requires that there be no differences in how individual
> members of the class relied on the misrepresentation. The court did not
> entirely preclude class actions in which reliance was an issue, but it did
> make such cases a near-impossibility.

*Pina*, 165 S.W.3d at 423 (TDTPA reliance "can be shown only by demonstrating

the person's thought processes in reaching the decision. Proof of reliance or lack of

reliance necessarily requires an *individualized* determination because, under all the

same facts and circumstances, one person may have relied on the misrepresentation

in reaching a decision while another did not rely on it in reaching the same deci-

sion.").

The court in *Texas South Rentals, Inc. v. Gomez* rejected an argument like

Plaintiffs' argument. *Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 235 (Tex.

App.—Corpus Christi–Edinburg 2008, no pet.). There, the plaintiffs brought a

TDTPA claim alleging that the defendant misrepresented that a rental car's "fuel and

---

[6] Plaintiffs offer *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 568–69 (S.D. Tex. 2000) as support
for their argument that a defendant's uniform course of conduct can establish class-wide evidence
of their TDTPA claims. ECF No. 98 at 14, 16. In *Henry*, the court found that because the TDTPA
did not require individualized reliance, the plaintiffs met the predominance requirement where
"Defendants allegedly engaged in the same deceptive trade practices with regard to all potential
class members." *Id.* at 572. This holding in *Henry*, decided two years before *Schein*, contradicts
more recent Texas law that actual reliance is required for a TDTPA claim.

service charge (FSC)" did not yield a hidden profit; the plaintiffs contended that this claim was subject to class-wide treatment because "it [was] based upon a uniform, written misrepresentation," and reliance was evidenced by each class member's payment of the misleading charge. Relying on the holding in *Schein*, the court found that merely paying the deceptive fuel and service charge did not amount to class-wide reliance on the defendant's misrepresentation because "it is not hard to imagine how individual issues of reliance could arise," given that "[t]here are numerous circumstances in which a customer might choose the convenience of the FSC regardless of his or her knowledge of the FSC's composition." *See id.* at 238.

Here, like in *Gomez*, other factors could have influenced each purchaser's selection of the "black stainless steel" finish and payment of the premium, such as independent research, dependence on a certain color scheme, and prior favorable experience with Defendant's products. *See id.* at 238; *see also Gordon*, 2019 WL 4572799, at *21 (the court struck the plaintiff's TDTPA class allegations because reliance hinged on individual inquiries into whether each class member relied on the defendant's misleading statement in purchasing the product, making "the Texas Deceptive Trade Practices Act claim of false or misleading statements ill-suited for class treatment.") (citing *Schein*, 102 S.W.3d at 693–94).

Plaintiffs cite several cases in support of their argument, but each case is

distinguishable. [7]

In *Southwestern Bell*, the defendant overbilled their customers by misrepresenting certain fees in customers' monthly bills. *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 922 (Tex. 2010). The court certified their TDTPA class claims, finding that "[t]he class has met its burden of establishing class-wide proof of reliance because the plaintiffs had no choice but to rely on the misrepresentation." *Id.* But here, every purchaser selected the "black stainless steel" finish instead of the other available finish options. Why they made this choice is integral to the TDTPA class claim because it establishes whether each class member detrimentally relied on Defendant's misrepresentation and omission in selecting and paying for the "black stainless steel" finish. [8]

Plaintiffs also cite to *Vine v. PLS Fin. Services, Inc.*, 331 F.R.D. 325, 338

---

[7] Several of Plaintiffs' cases do not involve TDTPA claims or claims which even require a showing of detrimental reliance. In each of these cases, the courts found common issues predominated because liability centered on the defendant's course of conduct, which could be established on a class-wide basis. *See City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2008 WL 2486043, at *9–10 (W.D. Tex. May 27, 2008) (the central issue in a claim for not paying hotel occupancy tax was whether the defendants exercised control over hotel operations, which could be established with class-wide evidence); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 746 (E.D. Tex. 2007*), stay granted, order amended sub nom. Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295 (5th Cir. 2007) (the court certified a settlement class for violations of the Federal Odometer Act, where the plaintiffs established that their claims arose out of a single course of conduct, *i.e.*, that all class vehicles contained a defective odometer that overstated mileage).

[8] Plaintiffs also rely on *Southwestern Bell* for their contention that Defendant must "produce 'evidence of individual variation' to establish that individual issues will predominate." ECF No. 98 at 17 (citing *Sw. Bell Tel. Co.*, 308 S.W.3d at 921–22). *Southwestern Bell* does not stand for that proposition. *See Sw. Bell Tel. Co.*, 308 S.W.3d at 921–22.

(E.D. Tex. 2019), *aff'd*, 807 F. App'x 320 (5th Cir. 2020). There, the plaintiffs proposed a class action of borrowers, who in exchange for a payday loan from short-term lenders, provided an undated personal check for their loan amounts. *Vine*, 331 F.R.D. at 338. In each borrower's contract, the lender represented that it would not pursue criminal charges against the borrower, but when the borrower missed a payment and their undated check bounced, the lender sought criminal prosecution. *Id.* The plaintiffs brought TDTPA and fraud claims against the lender. *Id.*

The court considered reliance in reference to the plaintiffs' fraud claims. The court noted that individual inquiries would predominate in determining reliance insofar as the fraud claim was based "on PLS's alleged misrepresentation that it would not threaten or pursue criminal charges in relation to the post–dated check a borrower must provide to secure a loan, or its failure to disclose PLS's alleged practice of sending bounced post–dated checks to the District Attorney." *Id.* at 339. This was because "[t]he way each class member would have responded to these misrepresentations may vary widely from person to person. While one member may have decided not to secure a payday loan through PLS, another may have decided to do so anyways." *Id.* Here, Plaintiffs' theory closely corresponds with the theory rejected by the *Vine* court. Plaintiffs' TDTPA claim relies on "[t]he way each class member would have responded to these misrepresentations," which "may vary widely from person to person," such that "[w]hile one member may have decided not to [select

the "black stainless steel" finish], another may have decided to do so anyways." *Id.* at 339.[9]

On its face, Plaintiffs' TDTPA class claim requires individualized inquiries into each class member's reliance on the misrepresentation and omission, and therefore, Plaintiffs' TDTPA class claim should be stricken.

## 2.    NDTPA reliance.

Plaintiffs fail to defend their NDTPA class claims in their response—within the body of their response, they only mention the NDTPA once in a footnote, asserting that "Plaintiffs are only seeking issue-class certification under the Nevada DTPA," ECF No. 98 at 22, n. 10. As the Court discusses below, issue-class certification is inappropriate here. In their attached exhibit, Plaintiffs state that the NDTPA does not allow for a presumption of class-wide reliance or causation, but also cite two cases where courts granted class certification of NDTPA claims, without any analysis to the instant case. ECF No. 98-1 at 6. Even so, these cases are distinguishable. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 98 (D. Mass. 2008) (accepting the parties' agreement, without independent analysis, that

---

[9] Plaintiffs also urge that the Court should rely on *Dzielak v. Whirlpool Corp.*, No. CV 2:12-89 (KM)(JBC), 2017 WL 6513347, at *9 (D.N.J. Dec. 20, 2017). Plaintiffs offer no explanation for how this case applies to their case other than a New Jersey court permitted TDTPA class claims to proceed. The *Dzielak* court did not discuss detrimental reliance specifically under the TDTPA or the holding in *Schein*. *See id.* The Court declines to find *Dzielak* as a basis for finding class-wide reliance and causation.

NDTPA class claims did not require a showing of reliance); *Watkins v. Rapid Fin. Sols., Inc.*, No. 320CV00509MMDCSD, 2022 WL 16964808, at *8 (D. Nev. Nov. 15, 2022) (finding predominance met where all putative class members "had no choice" and common issues implicated the defendant's standardized practices).

Plaintiffs' NDTPA class claim should be stricken.

### 3.      Chapter 93A causation.

Similar to their NDTPA class claim, Plaintiffs only cite to one Massachusetts case in support of their conclusion that causation under Chapter 93A can be established class-wide, but do not offer any analysis of that case. In *Lannan v. Levy & White*, 186 F. Supp. 3d 77 (D. Mass. 2016), the plaintiffs sought to bring a Chapter 93A class claim on behalf of individuals who were sued by the defendant—in its settlement demands to the class members, the defendant included undifferentiated prejudgment interest to the demanded lump sum or calculated prejudgment interest from the services provided date instead of the payment demand date payment. *Lannan*, 186 F. Supp. 3d at 84–85. The court found that the defendant's liability hinged on whether its conduct violated Chapter 93A because the defendant's conduct affected every class member in a virtually identical manner. *Id.* at 86, 90. But here, the circumstances alleged by Plaintiffs do not demonstrate that Defendant's deceptive action affected every class member in an identical manner. Plaintiffs' Chapter 93A class claim should be stricken.

### C.     Plaintiffs' TDTPA, NDTPA, and Chapter 93A Class Claims are Facially Deficient.

Although Plaintiffs contend that it is premature to strike their class claims without discovery, the Court finds that Plaintiffs' theories of liability under the TDTPA, NDTPA, and Chapter 93A are properly stricken as improper for class certification at this stage of proceedings. *See Gordon*, 2019 WL 4572799, at *20 (S.D. Tex. Sept. 20, 2019) ("While the class scope as to purchase date, subsequent sale, and Voluntary Upgrade Program participation can be addressed at class certification, some of Gordon's claims on behalf of the putative Texas and nationwide classes are properly stricken as improper for class certification, even at this early stage."). As alleged, no amount of discovery would alter the necessity for individual inquiries into each class member's reliance under the TDTPA, NDTPA, and Chapter 93A.

Because Plaintiffs' TDTPA, NDTPA, and Chapter 93A theories of liability and their own allegations demonstrate that putative class members could have relied upon something other than Defendant's misrepresentation or omission in deciding to select and purchase a black stainless steel appliance, the Court finds that these claims should be stricken as to the putative class members.[10]

---

[10] This does not impact the conclusion reached in the Court's R&R addressing Defendant's most recent motion to dismiss. Therein, the Court relied upon each individual Plaintiff's allegation that despite prior experience and research, they relied on Defendant's misrepresentation in selecting the "black stainless steel" finish, which was further shown by their payment of a premium directly tied to the selection.

### D. Reliance Issues Do Not Predominate Over Plaintiffs' California, New York, or Florida Consumer Protection Claims. [11]

Defendant argues that Plaintiffs' claims under the CLRA, UCL, FAL, GBL § 349, and FDUTPA also require finding reliance and causation, and therefore, common issues do not predominate over individual inquiries. ECF No. 92 at 16–20. Plaintiffs respond that consumer protection laws in these states do not require individual inquiries; instead, class-wide reliance and causation may be inferred because every class member was exposed to the same misrepresentation or course of conduct. ECF No. 98 at 16–17; 18–19, 28–29.

### 1. Plaintiffs' California class claims should survive.[12]

California has a more permissive standard for proving reliance in a class action than Texas. *See Kabbash v. Jewelry Channel, Inc. USA*, No. A-16-CA-212-SS, 2017 WL 2473262, at *4 (W.D. Tex. June 7, 2017) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009) ("relief under the UCL is available without individualized proof of deception, reliance and injury."); *Mass. Mut. Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282, 1292–93 (2002) ("[I]f the trial court finds

---

[11] Defendant contends that the Court's prior R&R held that no claim with a reliance or causation element could be added to Plaintiffs' class claims. Reading the R&R as a whole, the Court did not forbid claims with reliance or causation elements, but rather cautioned against alleging claims which would require individualized proof of such elements. *See* R&R, ECF No. 50 at 10–13.

[12] Defendant also argues that Plaintiffs waived this argument because they did not include it in the body of their brief. ECF No. 99 at n.1. To the contrary, Plaintiffs did include this argument, with case citations and parentheticals, in the body of their response. *See* ECF No. 98 at 18–19.

material misrepresentations were made to the class members (for a CLRA case), at least an inference of reliance would arise as to the entire class.")).

Class-wide reliance is presumed in cases where the named plaintiff has established his individual and actual reliance, the misrepresentation's materiality, and that "the same material misrepresentations have been actually communicated to each member of a class." *See Tobacco II*, 46 Cal. 4th at 320; *Bennett v. N. Am. Bancard, LLC*, No. 17-CV-00586-AJB-KSC, 2022 WL 1667045, at *9 (S.D. Cal. May 25, 2022); *Kabbash*, 2017 WL 2473262, at *10 (quoting *Knapp v. AT & T Wireless Servs., Inc.,* 195 Cal. App. 4th 932, 946 (2011)). Materiality is demonstrated "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Tobacco II*, 46 Cal. 4th at 327 (cleaned up); *see also Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015).

This presumption can be overcome where the plaintiff "cannot show that members of the class were exposed to the same misrepresentations or omissions." *McVicar v. Goodman Glob., Inc.*, No. SACV131223DOCRNBX, 2015 WL 4945730, at *11 (C.D. Cal. Aug. 20, 2015). Also, "if the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject

to common proof, and the action is not certified as a class action." *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 103 Cal. Rptr. 3d 83, 95 (2009).

Here, Plaintiffs' allegations sufficiently give rise to an inference of class-wide reliance as to Plaintiffs' CLRA, UCL, and FAL claims. The named Plaintiffs both alleged that they personally relied on Defendant's misrepresentation and omission in selecting and purchasing their appliance's "black stainless steel" finish. ECF No. 87 ¶¶ 99, 112, 228, 237, 258, 268, 270. Plaintiffs also sufficiently alleged materiality. Plaintiffs alleged as a common issue of law and fact amongst all class members, "whether ordinary, reasonable consumers . . . would be deceived by Defendant's conduct alleged herein," and also allege that "they, like all ordinary, reasonable consumers, would not have purchased the Black Stainless Steel Appliances or paid a premium price for the 'black stainless steel' finish if they had known that it was simply a temporary, thin, black plastic coating capable of peeling, flaking, and discoloration." *Id.* ¶¶ 22, 151(e). As further support, Plaintiffs pointed to Defendant's advertising and marketing of a premium, durable, luxury "black stainless steel" finish that, because it is an upgrade, costs more than the other finishes. *Id.* ¶¶ 41–45, 55, 57, 59. And finally, Plaintiffs alleged that the same material misrepresentation was communicated to each putative class member. Plaintiffs have defined the class—purchasers of black stainless steel appliances—so that every member had to

view the misrepresentation prior to selecting and purchasing their "black stainless steel" finish. *Id.* ¶ 125.

Defendant argues that reliance in this case will be "particularly dependent on individualized facts" because "each putative class member would need to establish that they personally believed the black color of their appliances derived from the original steel manufacturing process," even though that is not the standard industry practice. ECF No. 92 at 20. This argument, although valid about other consumer statutes, is not relevant to Plaintiffs' California class claims. None of the cases Defendant cites support its argument—instead, in each case, the court refused to presume class-wide reliance because the plaintiff either failed to establish the named plaintiff's reliance, demonstrate that each class member was exposed to a uniform misrepresentation, or disprove that each class member was not exposed to a very public disclosure of the alleged misrepresentation or omission. ECF No. 92 at 16–17.[13]

On the face of the pleadings, reliance can be established class-wide for

---

[13] *See Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1236 (11th Cir. 2016) (individual issues predominated where the record showed that "the class members were not exposed to a uniform misrepresentation."); *Bennett v. N. Am. Bancard, LLC*, No. 17-CV-00586-AJB-KSC, 2022 WL 1667045, at *10 (S.D. Cal. May 25, 2022) (the plaintiff failed to assert that each consumer was required to view the misrepresentation before relying on it); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (same); *Roley v. Google LLC*, 2020 WL 8675968, at *9–10 (N.D. Cal. July 20, 2020) (court would have to determine whether each putative class member was aware of the defendant's disclosure on Twitter, Facebook, and Google+ prior to purchase); *Caro v. Procter & Gamble Co.*, 22 Cal. Rptr. 2d 419, 433 (Cal. Ct. App. 1993) (class representative failed to establish his actual, individual reliance on misrepresentation).

Plaintiffs' UCL, CLRA, and FAL claims. Defendant's motion to strike Plaintiffs' CLRA, UCL, and FAL class allegations for predominance issues should be denied.

### 2.   Plaintiffs' New York class claims should be stricken.

#### a.   The New York class lacks a representative.

In its Report and Recommendation addressing Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint, the Court recommended dismissing Myra Mendez's GBL § 349 claim and unjust enrichment claim under New York law as time-barred. "Where . . . a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *Hanson v. MGM Resorts Int'l*, No. C16-1661-RAJ, 2017 WL 3085694, at *2 (W.D. Wash. July 20, 2017) (quoting *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009)); *see also Pickaree v. Eli Lily Pharm. Co.*, No. CIV.A. H-14-3481, 2015 WL 1800481, at *4, n.1 (S.D. Tex. Apr. 16, 2015) (Rosenthal, J.) (class claims failed as a matter of law where class representative's individual claims were time-barred) (citing *Kelley v. Galveston Autoplex,* 196 F.R.D. 471, 478 n. 3 (S.D. Tex. 2000) ("[I]f a sole class representative is time barred, he cannot represent a class."); *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.,* 120 F.3d 893, 899 (8th Cir.1997) (class "cannot be certified and its claims cannot survive" without a representative)).

Because they lack a class representative, the New York class claims should

be stricken.[14]

**b.**  ***Plaintiffs' pleadings establish class-wide reliance for GBL § 349 class claims.***

"Under GBL § 349, a plaintiff must show that he or she was injured as a result of the defendant's deceptive acts or practices." *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 738 (W.D.N.Y. 2020) (quoting *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019)). A plaintiff may "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). A "price premium" theory may suffice if the plaintiff alleges that she "paid more than [she] would have for the good but for the deceptive practices of the defendant-sellers." *Id.* But, "[w]here the link between the defendant's alleged deception and the injury suffered by plaintiffs is too attenuated and requires too much individualized analysis, courts will not certify a class." *Fero*, 502 F. Supp. 3d at 738 (quoting *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 513 (S.D.N.Y. 2011) (denying certification because the plaintiff had "adduced absolutely no evidence that he could demonstrate on a classwide [basis] that consumers would have paid less for their [vehicles] if they had known that the tires were susceptible to puncture")).

In *Kurtz v. Costco Wholesale Corp.*, the plaintiffs sought to bring a class claim

---

[14] For the sake of completeness, the Court considers the merits of Defendant's motion to strike the New York class claims.

under GBL § 349, alleging that the defendants "falsely represented that their wipes were 'flushable' and that purchasers of these supposedly 'flushable' wipes had paid a price premium attributable to that misrepresentation." 818 F. App'x 57, 59 (2d Cir. 2020). The court found that plaintiffs' claim was conducive to class-wide proof of causation and injury because the plaintiffs demonstrated that defendants charged a price premium directly attributable to the "flushable" nature of the wipes. *Id.* at 61.

Like in *Kurtz*, Plaintiffs' complaint alleges causation and injury in the form of an "overcharge"—Plaintiffs have alleged that Defendant's misrepresentation and omission directly caused purchasers to pay "hundreds of dollars more" in a premium for the "black stainless steel" finish. ECF No. 87 ¶¶ 3, 56–59. Such allegations are susceptible to class-wide proof of causation under GBL § 349. *See Kurtz*, 818 F. App'x at 61.

Defendant argues that New York law requires Plaintiffs to demonstrate that Defendant's materially deceptive act caused injury to Plaintiffs. ECF No. 92 at 16. Defendant asserts that like Plaintiffs' TDTPA, NDTPA, and Chapter 93A claims, "GBL § 349 claims cannot proceed on a class basis because determining whether 'injuries were proximately caused by Defendants' scheme will require individualized proof." *Id.* But, Defendant's cited cases do not stand for that proposition.

For example, in *Pelman v. McDonald's Corp.*, plaintiffs sought to bring a

class action under GBL § 349 for physical harm caused by the defendant's misrepresentation regarding the nutritional value of its food. 272 F.R.D. 82, 92 (S.D.N.Y. 2010). The court found individualized issues predominated the determination of the plaintiffs' injury "with regard to, at the very least, the nutritional composition of food products consumed by each plaintiff from sources other than Defendant's facilities, as well as the level of regular physical activity engaged in by each plaintiff." *Id.* Here, Plaintiffs do not allege physical harm, but instead economic harm: that their very purchase of a black stainless steel appliance was harmful because it resulted in a price premium, and so the same individual inquiries would not be necessary.

Accordingly, although the Court finds that Plaintiffs' GBL § 349 claims should be stricken for lack of a class representative, they should not be stricken for individualized issues with causation.

### 3.    Plaintiff's FDUTPA class claims should not be stricken.

To recover under the FDUTPA, a party must show that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983–84 (11th Cir. 2016). "As with [GBL § 349], a party asserting a FDUTPA claim need 'not show actual reliance on the representation or omission at issue.'" *Id.* at 984. Because liability is assessed under an objective standard, most FDUTPA class claims are susceptible to class-

wide proof. *Id.* at 985–86). Additionally, FDUTPA damages may be recovered where "the plaintiff 'paid a price premium' for the allegedly deceptive product." *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 257 (E.D.N.Y. 2019) (quoting *Carriuolo*, 823 F.3d at 986).

In *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1281 (11th Cir. 2011), the plaintiff purchased probiotic yogurt, for which she paid an average of 44% more than regular yogurt, even though the probiotic yogurt provided no additional health benefit. The court permitted her FDUTPA class claim, holding that "recovery under the FDUTPA does not hinge on whether a particular plaintiff actually relied on [the defendant's] claims about [the probiotic yogurt's] alleged digestive health benefits," but rather, "whether that allegedly deceptive conduct would deceive an objective reasonable consumer [is a] common issue[ ] for all the putative class members, amenable to classwide proof." *Id.* at 1282–83. The court continued that "should the class prevail on the liability issue, each putative class member would only need to show that he or she paid a premium for [the probiotic yogurt] to be entitled to damages under the FDUTPA." *Id.* at 1283.

Here, Plaintiffs' allegations are substantially similar. Plaintiffs have alleged that Defendant's misrepresentation and omission would deceive a reasonable consumer, and also allege that in order to purchase a black stainless steel appliance, each purchaser paid a premium directly tied to the "black stainless steel" finish, upwards

of "hundreds of dollars more." ECF No. 87 ¶¶ 3, 56–59. Accordingly, Plaintiffs'
FDUTPA class claims are susceptible to class-wide proof. *See Fitzpatrick*, 635 F.3d
at 1283.

Defendant argues that individual issues predominate Plaintiffs' FDUTPA
class claims because "showing causation—that the loss was the 'result' of the
allegedly deceptive practice—necessarily involves an individualized inquiry into
whether a plaintiff or class member was exposed to, and influenced by, that practice,
as well as what else they knew or allegedly believed." ECF No. 92 at 18. But the
Defendant's cited cases are inapposite—at this stage of proceedings, the Court
cannot look outside of the pleadings, and within the pleadings, there are no
allegations of a disclaimer provided to consumers or special circumstances that
demonstrate a significant likelihood that class members did not view the
misrepresentation prior to purchase.[15]

Defendant also argues that certain Florida courts have found individualized
issues in determining whether "the complained-of practice be one likely to deceive

---

[15] *See Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1093 (Fla. Ct. App. 2002) (individual
inquiries necessary to determine whether each class member read disclaimer); *Justice v. Rheem
Mfg. Co.*, 318 F.R.D. 687, 696 (S.D. Fla. 2016) (court determined that it was likely that many
members of the class never viewed the alleged misrepresentation prior to purchase); *Pop's
Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 685 (S.D. Fla. 2008) (individual inquiries were
necessary to determine whether each class member read disclaimer); *Green v. McNeil Nutritionals,
LLC*, 2005 WL 3388158, *7 (Fla. Cir. Ct. Nov. 16, 2005) (court relied on evidence outside of the
pleadings demonstrating that individual inquiries were necessary).

a consumer acting reasonably in the same circumstances as plaintiff" because of "situations where class members were acting in a range of different circumstances in terms of the background information available to them." ECF No. 92 at 19–20. Here, Plaintiffs' allegations establishing the circumstances within which a reasonable consumer would be misled do not encompass the varying "range of circumstances" that those courts considered in denying certification.[16]

The Court finds that on its face, Plaintiffs' FDUTPA class allegations are susceptible to class-wide proof, and therefore, Defendant's motion to strike on this basis should be denied.

### E.   Plaintiffs' Unjust Enrichment Class Claims Should Be Stricken.

Defendant argues that Plaintiffs' unjust enrichment claims under Florida, California, and New York law "suffer from the same overarching predominance problems" because "whether [Defendant] was unjustly enriched such that equity warrants the claimed damages turns on what each individual purchaser believed when they made their purchase and why the purchase was made—rendering these claims inherently unsuitable for class treatment." ECF No. 92 at 24–28. Plaintiffs

---

[16] *See In re Motions to Certify Classes Against Court Reporting Firms*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010) (enough class members were obviously aware of the alleged misrepresentation and even utilized their knowledge in their negotiation of the price premium that consumers' circumstances were not similar enough to derive a reasonable consumer's circumstances); *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 2016 WL 8542540, *3-4 (S.D. Fla. Dec. 1, 2016) (same).

respond that because they have alleged a class-wide theory of unjustness, predominance is not defeated. ECF No. 98 at 31.

### 1.      Common questions rarely predominate a Florida unjust enrichment class claim.

The Eleventh Circuit Court of Appeals, interpreting Florida law, has held that "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). "[A] claim for unjust enrichment requires the court to assess whether the individual circumstances of each particular claim would result in inequity." *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 640 (S.D. Fla. 2010). "Nevertheless, some Florida courts have determined that common questions can predominate in unjust enrichment claims when the 'defendant's conduct is the same as to all class members of the putative class.'" *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 65 (D.N.H. 2015) (quoting *James D. Hinson Elec. Contracting Co. v. BellSouth Telecommunications, Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011)).

### 2.      Common questions do not predominate California unjust enrichment class claims if individual inquiries are required to demonstrate injustice.

There is a "disagreement among courts in [California] as to the general amenability of unjust enrichment claims to class certification." *Hart v. TWC Prod. & Tech. LLC*, No. 20-CV-03842-JST, 2023 WL 3568078, at *11 (N.D. Cal. Mar. 30,

2023) (*comparing Smith v. Keurig Green Mountain, Inc.*, No. 18-cv-06690-HSG, 2020 WL 5630051, at *6 (N.D. Cal. Sept. 21, 2020) ("The majority view is that unjust enrichment claims usually are not amenable to class treatment because the claim requires evaluation of the individual circumstances of each claimant to determine whether a benefit was conferred on defendant and whether the circumstances surrounding each transaction would make it inequitable for the Defendant to fail to return the benefit to each claimant."); *with In re JUUL Labs, Inc., Mktg. Sales Pracs. and Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 997 (N.D. Cal. 2022) ("unjust enrichment claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members"), *appeal filed.*

Courts find predominance lacking in unjust enrichment claims where individualized inquiries were necessary to determine the equitable circumstances between each class member and the defendant. *Hart*, 2023 WL 3568078, at *12 (citing *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017)).

### 3. Common questions rarely predominate a New York unjust enrichment class claim.

New York courts frequently find that unjust enrichment classes cannot be certified because these kinds of claims lend themselves to individualized inquiries. *See, e.g., Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC, 2010 WL 3119452,

at *11 (S.D.N.Y. Aug. 5, 2010) (individual inquiries necessary to determine "whether the benefits that putative class members received were 'less than what they bargained for.'"); *Vaccariello v. XM Satellite Radio, Inc.,* 295 F.R.D. 62, 75–76 (S.D.N.Y. 2013) ("plaintiff cannot demonstrate through classwide evidence that it was unjust for XM to collect fees from all of the customers whose service was renewed"); *see also Whalen v. Pfizer, Inc.*, 9 Misc. 3d 1124(A), 862 N.Y.S.2d 812 (Sup. Ct. 2005) ("[I]f the plaintiff, acting with knowledge of the facts, pays for the product and continues to use the product, there is no unjust enrichment and recovery is barred.").

Predominance cannot be established for unjust enrichment claims where individualized inquiries are necessary to determine whether the benefits received were less than what the putative class members bargained for. *See Weiner*, 2010 WL 3119452, at *11.

### 4. Individualized issues are required for determination of Plaintiffs' unjust enrichment class claims.

The instant case closely resembles *Dial*, where the court found that the plaintiffs' unjust enrichment class claims under Florida and California law were not subject to class-wide proof. 312 F.R.D. at 65.[17] The *Dial* plaintiffs filed suit against the

---

[17] Although the *Dial* court found the unjust enrichment claims required individualized inquiries, the court held that the plaintiffs' class claims under the FDUTPA, UCL, CLRA, and FAL were susceptible to class-wide proof. *Id.* at 46, 61.

defendant for misleading labels on its soap, namely misrepresentations that the defendant's soap killed more germs than other hand soap and was "#1 Doctor Recommended." *Id.* at 46. The court reasoned that although the defendant's alleged misconduct was common to all members:

> [C]ases in which plaintiffs assert that they were misled by a misrepresentation in advertising or on a product label and that they purchased a product they otherwise would not have are the type that require individualized inquiries . . . . Where individualized inquiries concerning the reasons class members purchased a product are required, Florida courts find that those inquiries predominate over common questions, and that class certification is inappropriate.

*Id.* at 65 (quoting *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 994 (C.D. Cal. 2015) (same)[18], *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)). The court also found that the plaintiffs' California unjust enrichment claim was not susceptible to class-wide proof because the plaintiffs "defined the

---

[18] The *ConAgra* court distinguished several of the cases Plaintiffs cited in support of their contention that unjust enrichment claims under Florida law survive class certification upon establishing a common misrepresentation:

> These deceptive labeling cases are distinguishable from *In re Checking Account Overdraft Litigation* and *BellSouth Telecommunications.* In those cases, . . . the courts concluded that unjust enrichment classes could be certified because defendants' business practice affected each putative class member in the same way, and individual class members had no way to learn of the practice or its "true nature" so as to formulate an individualized reaction to it. By contrast, . . . unjust enrichment claims premised on representations in product advertising or labeling often involve situations in which individual class members have varying levels of knowledge regarding the nature of the product and/or the defendant's allegedly misleading conduct, and also understand the representations in different ways.

*ConAgra*, 90 F. Supp. 3d at n. 210. The instant case is more like the latter scenario, where each consumer made a selection or decision in reliance on some information, either the alleged misrepresentation and omission or other factors.

purported class in such a way that, by definition, it includes consumers with a variety of motivations for purchasing [the product]," and while "[t]hose varying motivations for purchase do not defeat predominance when the claim asserted is capable of generalized proof," "an 'unjust enrichment' claim would typically require a factual inquiry into the circumstances of each purchase to determine whether it would be 'unjust' for the defendant to retain the alleged benefit." *Id.* at 62.

Here, Plaintiffs have alleged the same misrepresentation and omission as to all putative class members, *i.e.*, that the "black stainless steel" finish consisted of a metal coating and not a plastic coating. But, like the plaintiffs in *Dial*, they have defined the class as *all* purchasers of a black stainless steel appliance, which gives rise to individual inquiries into whether it would be inequitable for Defendant to retain the profit received. *See id.* at 63. Whether Defendant's profit retention is inequitable would therefore be dependent on the individual consumer's "individual motivation, circumstances, and even individualized benefits derived from [the product]." *See id.*; *see also In re McCormick & Co., Inc., Pepper Products Mktg. & Sales Practices Litig.*, 422 F. Supp. 3d 194, 265 (D.D.C. 2019) (permitting certification of CLRA and UCL claims, but denying certification of California unjust enrichment claims because plaintiffs' defined class of all purchasers included purchasers with varying degrees of knowledge and differing motivations).

The same is true of Plaintiffs' New York unjust enrichment class claim. *See*

*Weiner*, 2010 WL 3119452, at *11 (individualized inquiries required for New York unjust enrichment claims to determine whether proposed class of Snapple purchasers were "fully informed about the inclusion of [high fructose corn syrup] in Snapple beverages, whether they believed [high fructose corn syrup] to be natural, and whether they continued to purchase Snapple despite their beliefs concerning [high fructose corn syrup]").

Defining the class as "purchasers" without any additional information necessitates individual inquiries into the purchaser's motivations and knowledge about the "black stainless steel" finish. Plaintiffs' own allegations demonstrate that they were exposed to independent research, prior favorable experiences with Defendant's products, and a desired color scheme, but ultimately selected their finish based on Defendant's misrepresentation and omission. The Court would have to determine whether the same was also true of each class member.

Thus, Defendant's motion to strike Plaintiffs' proposed unjust enrichment class claims under Florida, California, and New York law should be granted.[19]

---

[19] Defendant also argues that although Plaintiffs no longer proceed with their defect-related allegations, the complaint still raises issues that the plastic coating on the black stainless steel appliances peel, chip, flake, and discolor, and therefore, Defendant "would have every right to test them by, for example, taking discovery into whether a blemish on a plaintiff's or class member's appliance could have resulted from substandard installation or transportation, cleaning with caustic or abrasive agents, long-term wear and tear, or any number of myriad other causes." ECF No. 92 at 22. Plaintiffs argue that physical inspection would be "useless discovery." ECF No. 98 at 29 (cleaned up). This argument is inappropriate for a motion to strike as it necessarily asks the Court to look outside of the complaint's allegations.

### F.      Plaintiffs' Class Allegations Regarding Unconscionability Should Be Stricken.

Defendant argues that the individualized issues in Plaintiffs' unconscionable and unfair act claims under the California, Florida, Massachusetts, and Texas's consumer-fraud statutes are fatal to class treatment. ECF No. 92 at 29.[20] In response, "Plaintiffs concede their Texas DTPA class unconscionability claim can be stricken." ECF No. 98 at 33, n.16.

In the Report and Recommendation addressing Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint, the Court found that Plaintiffs failed to state a claim for unconscionable practices under the TDTPA. "It is well-settled that when a claim fails, the class, as it relates to the claim, also fails." *Vallina v. Mansiana Ocean Residences LLC*, No. 10-CV-21506, 2011 WL 11674441, at *10 (S.D. Fla. June 17, 2011) (citing *Friedlander v. Nims,* 755 F.2d 810 (11th Cir.1985) (dismissing class action when the complaint failed to state a claim for fraud)).

For these reasons, Plaintiffs' class claim for unconscionability under the TDTPA should be stricken.

### G.      Any Predominance Issues Regarding the Statute of Limitations Should be Determined at the Class Certification Stage.

Defendant argues that because the governing statutes of limitation range from

---

[20] Regarding whether Plaintiffs' unfair practices claims under Chapter 93A, FDUTPA, and UCL should be stricken, the Court points to the preceding analysis of those statutes.

two to four years and these appliances have been sold since 2015, "Plaintiffs can be expected to respond that their claims were tolled until they discovered that their appliances had a coating [based on the discovery rule]" and so, "determining when each of the numerous class members who purchased outside an applicable limitations period discovered that their appliances had a coating would be a necessarily individualized inquiry." *Id.*

Any argument related to class scope as to purchase date should be addressed at class certification, instead of in a motion to strike. *See Gordon*, 2019 WL 4572799, at *20 ("the class scope as to purchase date, . . . can be addressed at class certification.").

## H.     Class Treatment Under Rule 23(b)(2) or 23(c)(4) is Inappropriate.

Plaintiffs contend that even if the Court finds Plaintiffs' class allegations unsuitable under Rule 23(b)(3), class treatment is still appropriate under either Rule 23(b)(2) or 23(c)(4). The Court disagrees.

Rule 23(b)(2) is inapplicable here because Plaintiffs primarily seek individualized monetary damages, namely "actual, compensatory, consequential, statutory, and/or punitive damages, and pre-judgment and post-judgment interest." ECF No. 87 ¶¶ 179, 181, 183, 198, 200, 216, 218–20, 242, 304, 308, 309, 341, 343, 344, 375, D. Plaintiffs also request "injunctive relief, including but not limited to,

restitution." *Id.* ¶¶ 200, 218, 242, 260, 308, 343, E.[21]

"Although a request for monetary damages does not automatically defeat a claim for Rule 23(b)(2) certification, monetary relief predominates in Rule 23(b)(2) class actions unless it is 'incidental' to the requested injunctive relief." *Kabbash*, 2017 WL 2473262, at *8 (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). "Monetary damages are incidental where they flow directly from liability to the class as a whole on the claims forming the basis for injunctive or declaratory relief and do not depend on differences in each class member's circumstances." *Id.* (citing *Allison*, 151 F.3d at 415).

Reading the complaint as a whole, monetary relief is the "primary goal of the lawsuit" because Plaintiffs repeatedly request that each class member receive actual damages of the full or partial retail value of their appliance. ECF No. 87 ¶¶ 179, 198, 216, 256, 306, 341, 373. "Such a request for relief is not incidental to a claim for injunctive relief and will greatly vary among class members," and therefore, should Plaintiffs pursue class certification under Rule 23(b)(2), such certification would not

---

[21] Although Plaintiffs characterize their request for restitution as injunctive relief, the whole of the complaint demonstrates that plaintiffs seek individualized awards of monetary restitution which would require individualized assessments of damages based on how many appliances the class member bought, the retail price of each appliance, and how much of a premium, if any, the class member paid for their finish. ECF No. 87 ¶¶ 216, 261, 274. *See In re Flash Memory Antitrust Litig.*, No. 07-0086, 2011 WL 1301527, at *7 (N.D. Cal. Mar. 31, 2011) ("Because the restitution amount is dependent on the particular purchases made . . . monetary relief will dictate the key procedures . . ..").

be appropriate. *See Kabbash*, 2017 WL 2473262, at *8.

Plaintiffs next contend that "[i]f the Court were to decline class certification under Rule 23(b)(3), the proposed classes of consumers are textbook examples of groups amenable to issue class treatment under Rule 23(c)(4), and the Court can certify classes for issues focusing solely on [Defendant's] deceptive, unfair, or unjust conduct." ECF No. 98 at 22. Plaintiffs argue that "[b]ecause such issues classes would focus solely on [Defendant's] conduct, individualized reliance concerns are not a bar to certification." *Id.*

Rule 23(c)(4) states that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." FED. R. CIV. P. 23(c)(4). "Rule 23(c)(4) permits a district court to certify 'a class action with respect to particular issues,' but the Fifth Circuit has explicitly rejected the 'nimble use' of the rule to 'manufacture predominance' for 'the purposes of meeting the (b)(3) re-quirements.'" *Phillips v. Wipro, Ltd.*, No. 4:18-CV-821, 2022 WL 19680717, at *4 (S.D. Tex. Mar. 14, 2022) (citing *Allison*, 151 F.3d at 422). Although Plaintiffs note that other circuits adopt a broader view of Rule 23(c)(4), the Fifth Circuit has main-tained a narrow view:

> while courts often bifurcate class actions by first addressing classwide liability before proceeding with individual proceedings, the Fifth Cir-cuit has made clear that as a prerequisite to certification, courts must first determine whether the predominance requirement is satisfied by "assessing all the issues in a case—including damages—and deciding whether the common ones will be more central than the individual

ones." As such, certification is not independently appropriate based on Rule 23(c)(4).

*Wipro*, 2022 WL 19680717, at *4, n.1 (citing *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016); *In re Deepwater Horizon*, 739 F.3d 790, 807 n.66 (5th Cir. 2014)). Accordingly, the Court cannot proceed independently on Rule 23(c)(4), as Plaintiffs request. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745, n. 21 (5th Cir. 1996) ("Severing the defendants' conduct from reliance under rule 23(c)(4) does not save the class action.").

## V.   PLAINTIFFS' REMAINING CLASS CLAIMS SHOULD BE TRANSFERRED.

In sum, if the Court adopts this Report and Recommendation, Plaintiffs' consumer class claims under California and Florida law remain. Because no Texas claim survives the motion to strike, the Court finds it appropriate to sever the claims of the remaining non-Texas Plaintiffs and to transfer their consumer class claims to their home states.

Under Rule 21, the court has authority to sever parties and claims from an action *sua sponte*. *See, e.g., Banh v. Am. Honda Motor Co., Inc.*, No. 2:19-cv-05984-RKS-AS, 2020 WL 4390371, at *19 (S.D. Cal. Jan. 8, 2021) (citing FED. R. CIV. P. 21, the court exercised its discretion to retain California class action claims and sever non-California plaintiffs' discrete and separate claims). Likewise, a court may transfer a case *sua sponte*. *Id.* Under the venue statute, the court may transfer a civil action

to any other district "in the interest of justice," so long as the transferee district is where the case "may have been brought." *Id.* (citing 28 U.S.C. § 1404(a), transferring the non-California plaintiffs' claims to their home states, finding those plaintiffs could have brought their claims in the judicial districts where they reside).

For the same reasons the *Banh* court found the public interest factors weigh in favor of transfer to the plaintiffs' home courts, the Court finds that the transferee courts have the more compelling interest in these claims than Texas, including the local interest in the lawsuit, the court's familiarity with the governing law, and the cost of resolving a dispute unrelated to a particular forum. *Id.* at 20. Likewise, the private interest factors weigh in favor of transfer, including the residence of the parties and witnesses, convenience to the litigants, access to physical evidence, ability to compel unwilling witnesses to testify, and other practical problems that make trial of a case easier and less expensive. *Id.*

Thus, the Court recommends that the UCL, CLRA, and FAL class claims of the California Plaintiffs and the FDUTPA class claims of the Florida Plaintiffs be severed and transferred to the Plaintiffs' home states. Plaintiff Murray originally filed her claim in the Central District of California, so the California class claims should be returned to that court. However, Plaintiff Elliot from Florida initially filed his claims here. Therefore, no later than July 11, 2023, Plaintiffs' counsel shall file

a one-page notice, stating which district in Florida is most appropriate for transfer. *Id.*

## VI.    RECOMMENDATION AND ORDER.

The Court recommends Defendant's motion, ECF No. 92, should be **GRANTED IN PART AND DENIED IN PART**, as follows:

1.    Plaintiffs' proposed class claims under the Texas DTPA, Nevada DTPA, Massachusetts Chapter 93A, and New York GBL § 349 should be **STRICKEN**.

2.    Plaintiffs' proposed unjust enrichment class claims under California, New York, and Florida laws should be **STRICKEN**.

3.    Since no Texas claims would remain, the remaining consumer class claims under the UCL, CLRA, and FAL of the California Plaintiffs and the FDUTPA class claims of the Florida Plaintiffs should be **SEVERED** and **TRANSFERRED** to the district courts in which those class representatives reside.

4.    All other requested relief should be **DENIED**.

It is further **ORDERED** that, no later than July 11, 2023, Plaintiffs' counsel shall file a one page notice indicating to which district in Florida the remaining claims are most appropriately transferred.

The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).

SIGNED at Houston, Texas, on July 5, 2023.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**

46